IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI

ATORRIA FINLEY

VERSUS CAUSE NO: 21-424

AMBER WHIDDON, GEICO INSURANCE COMPANY

I, GWEN WILKS, CLERK OF THE CIRCUIT COURT, IN AND FOR THE COUNTY OF FORREST, STATE OF MISSISSIPPI, DO HEREBY CERTIFY THAT THIS IS A TRUE COPY OF ALL DOCUMENTS FILED IN THE ABOVE STYLED CASE.

GIVEN UNDER MY HAND AND OFFICIAL SEAL OF OFFICE IN THE CITY OF HATTIESBURG, FORREST COUNTY, MISSISSIPPI, ON THIS THE 11th DAY OF October, 2021.

GWEN WILKS, CIRCUIT CLERK

CIRCUIT CLERK FORREST COUNTY, MS

BY: Kayla LaBove D.C.

## COVER SHEET
**Civil Case Filing Form**
*(To be completed by Attorney/Party Prior to Filing of Pleading)*

Mississippi Supreme Court Administrative Office of Courts — Form AOC/01 (Revised 1/1/2001)

Court Identification Docket Number: County # / Judicial District / Court ID (CH, CI, CO)

Month / Date / Year

This area to be completed by clerk

Case Year: FILED JUN 23 2021 — FORREST COUNTY CIRCUIT CLERK

Docket Number / Local Docket ID

Case Number if filed prior to 1/1/94

IN THE COUNTY COURT OF FORREST COUNTY

Short Style of Case: Atorria Finley v. Amber Whiddon, et. al.

Party Filing Initial Pleading: Type/Print Name Jay Foster, Attorney — MS Bar No. 9830

___Check (✓) if Not an Attorney ___Check (✓) if Pro Hac Vice Signature

Compensatory Damages Sought: $ ______ Punitive Damages Sought: $

***Is Child Support contemplated as an issue in this suit?*** ___Yes ✓ No — If "yes" is checked, please submit a completed Child Support Information Sheet with Final Decree/Judgment

**PLAINTIFF - PARTY(IES) INITIALLY BRINGING SUIT SHOULD BE ENTERED FIRST (FIRST NAME IN SHORT STYLE) - ENTER ADDITIONAL PLAINTIFFS ON SEPARATE FORM**

Individual: Finley (Last Name), Atorria (First Name), ( ) (Maiden Name, if Applicable), D (Middle Init.), ___ (Jr/Sr/III/IV)

Address of Plaintiff: 155 Cross Creek Parkway, Apt 638, Hattiesburg, MS 39402

___Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style: Estate of

___Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity: D/B/A / Agency

Business ______ (Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated)

___Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below: D/B/A:

**DEFENDANT - NAME OF DEFENDANT (FIRST NAME IN SHORT STYLE) - ENTER ADDITIONAL DEFENDANTS ON SEPARATE FORM**

Individual: Whiddon (Last Name), Amber (First Name), ( ) (Maiden Name, if Applicable), M (Middle Init.), ___ (Jr/Sr/III/IV)

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style: Estate of

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity: D/B/A / Agency

Business ______ (Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated)

___Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below: D/B/A:

ATTORNEY FOR THIS DEFENDANT: (If known) ______ Bar No. ______ or Name: ______ *Pro Hac Vice (✓)*___

***In left hand column, check one (1) box that best describes the nature of this suit. In right hand column check all boxes which indicate secondary claims.***

**Business/Commercial**
- Accounting (Business)
- Bankruptcy
- Business Dissolution - Corporation
- Business Dissolution - Partnership
- Debt Collection
- Employment
- Examination of Debtor
- Execution
- Foreign Judgment
- Garnishment
- Pension
- Receivership
- Replevin
- Stockholder Suit
- Other

**Domestic Relations**
- Child Custody/Visitation
- Child Support
- Contempt
- Divorce: Fault
- Divorce: Irreconcilable Differences
- Domestic Abuse
- Emancipation
- Modification
- Paternity
- Property Division
- Separate Maintenance
- Termination of Parental Rights
- UIFSA (formerly URESA)
- Other

**Contract**
- Breach of Contract
- Installment Contract
- Insurance
- Product Liability under Contract
- Specific Performance
- Other

**Probate**
- Accounting (Probate)
- Birth Certificate Correction
- Commitment
- Conservatorship
- Guardianship
- Heirship
- Intestate Estate
- Minor's Settlement
- Muniment of Title
- Name Change
- Power of Attorney
- Testate Estate
- Will Contest
- Other

**Statutes/Rules**
- Bond Validation
- Civil Forfeiture
- Declaratory Judgment
- ERISA
- Eminent Domain
- Extraordinary Writ
- Federal Statutes
- Injunction or Restraining Order
- Municipal Annexation
- Racketeering (RICO)
- Railroad
- Seamen
- Other

**Appeals**
- Administrative Agency
- County Court
- Hardship Petition (Driver License)
- Justice Court
- MS Employmt Security Comm'n
- Municipal Court
- Oil & Gas Board
- Workers' Compensation
- Other

**Children and Minors - Non-Domestic**
- Adoption - Noncontested
- Consent to Abortion for Minor
- Removal of Minority
- Other

**Torts-Personal Injury**
- Bad Faith
- Fraud
- Loss of Consortium
- Malpractice - Legal
- Malpractice - Medical
- Negligence - General
- ✓ Negligence - Motor Vehicle
- Products Liability
- Wrongful Death
- Other

**Mass Tort**
- Asbestos
- Chemical Spill
- Dioxin
- Hand/Arm Vibration
- Hearing Loss
- Radioactive Materials
- Other

**Real Property**
- Adverse Possession
- Ejectment
- Eminent Domain
- Judicial Foreclosure
- Lien Assertion
- Partition
- Receiver Appointment
- Tax Sale: Confirmation/Cancellation
- Title, Boundary &/or Easement
- Other

**Civil Rights**
- Elections
- Habeas Corpus
- Post Conviction Relief
- Prisoner
- Other

**IN THE** COUNTY **COURT OF** FORREST **COUNTY, MISSISSIPPI**

________ **JUDICIAL DISTRICT, CITY OF** ________

Docket No. ____ - ________ ________
File Yr Chronological No. Clerk's Local ID

Docket No. If Filed Prior to 1/1/94 ________

**DEFENDANTS IN REFERENCED CAUSE - Page 1 of ___ Defendants Pages**
**IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET**

**Defendant #2:**

**Individual:** ________ (Last Name) ________ (First Name) ( ________ (Maiden Name, if Applicable) ) ____ (Middle Init.) ____ (Jr/Sr/III/IV)

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of ________

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A ________

**Business** John Doe Insurance Company #1
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A ________

**ATTORNEY FOR THIS DEFENDANT:** ______ Bar # or Name: ________ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

---

**Defendant #3:**

**Individual:** ________ (Last Name) ________ (First Name) ( ________ (Maiden Name, if Applicable) ) ____ (Middle Init.) ____ (Jr/Sr/III/IV)

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of ________

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A ________

**Business** John Doe Insurance Company #2
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A ________

**ATTORNEY FOR THIS DEFENDANT:** ______ Bar # or Name: ________ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

---

**Defendant #4:**

**Individual:** ________ (Last Name) ________ (First Name) ( ________ (Maiden Name, if Applicable) ) ____ (Middle Init.) ____ (Jr/Sr/III/IV)

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of ________

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A ________

**Business** Geico Insurance Company
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:

D/B/A ________

**ATTORNEY FOR THIS DEFENDANT:** ______ Bar # or Name: ________ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

FILED
JUN 23 2021
FORREST COUNTY CIRCUIT CLERK

IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Amber R. Whiddon,
John Doe Ins. Co. #1, John Doe Ins. Co. #2, Geico Insurance Company DEFENDANTS

COMPLAINT

1. The plaintiff, Atorria Finley, files this complaint against the defendants and states as follows:

2. The plaintiff, Atorria Finley lived in Hattiesburg, Mississippi at the time of this wreck.

3. The Court has jurisdiction over the parties and the subject matter and venue is proper in this Court pursuant to Section 11-11-3 of the Mississippi Code.

4. The defendant, Amber R. Whiddon, was properly served with the summons and complaint.

5. The defendant, Amber R. Whiddon, is properly named in this complaint.

6. The defendant, Geico Insurance Company, was properly served with the summons and complaint.

7. The defendant, Geico Insurance Company, is properly named in this complaint.

8. On 5/1/2019, Atorria Finley was driving on Oak Grove Road in Forrest County, Mississippi County and a wreck happened between Atorria Finley's car and the car driven by the defendant. The defendant caused this wreck.

9. The defendant's negligence caused Atorria Finley's injuries and damages.

10. The defendant's negligence contributed to Atorria Finley's injuries and damages.

11. The Defendant pulled out in front of Attoria Finley.

12. The Defendant was not paying attention when the Defendant pulled out in front of Attoria Finley.

13. The Defendant's inattention caused this wreck.

14. The Defendant's inattention caused the wreck which in turned caused Atorria Finley's

injuries and damages.

15.    Atorria Finley did not cause this wreck.

16.    Atorria Finley was following all driving laws at the time of this wreck.

17.    Atorria Finley did not contribute to this wreck.

18.    Atorria Finley was not at fault for this wreck.

19.    Atorria Finley maintained proper control of Atorria Finley's vehicle at all times.

20.    Atorria Finley was keeping a proper lookout at all times before this wreck.

21.    On 5/1/2019, Atorria Finley did not do anything wrong while driving.

22.    There is no evidence that Atorria Finley did anything wrong on 5/1/2019 while driving.

23.    There is no witness who will testify that Atorria Finley did anything wrong while driving on 5/1/2019.

24.    There are no pictures showing that Atorria Finley did anything wrong while driving on 5/1/2019.

25.    There is no video showing Atorria Finley did anything wrong while driving on 5/1/2019.

26.    The wreck caused Atorria Finley to get hurt.

27.    The wreck caused Atorria Finley to have pain.

28.    The wreck caused Atorria Finley to have pain and suffering.

29.    The wreck caused Atorria Finley to have emotional suffering.

30.    The wreck caused Atorria Finley to have right wrist pain.

31.    After the wreck, Atorria Finley was unable to do the things she liked to do before the wreck.

32.    As a result of the wreck, Atorria Finley was treated at Wesley Medical Center.

33.    At Wesley Medical Center, Atorria Finley, told the doctor Finley was hurt in a wreck.

34.    When Atorria Finley told the doctor at Wesley Medical Center about being hurt in a wreck, this was true.

35.    At Wesley Medical Center, the doctor diagnosed Atorria Finley with right wrist pain.

36.    The diagnosis by the doctor at Wesley Medical Center was correct.

37.    On May 6, 2019, Atorria Finley went to Leslie Ethridge for medical treatment.

38.    On May 6, 2019, Atorria Finley told Leslie Ethridge that Finley was injured in a wreck.

39.    When Atorria Finley told Leslie Ethridge that Finley was hurt in a wreck this was true.

40.    On May 6, 2019, Atorria Finley told Leslie Ethridge that Finley hurt the right wrist.

41.    When Atorria Finley told Leslie Ethridge that Finley hurt the right wrist, this was true.

42.    The injury to Atorria Finley's right wrist was from this wreck.

43.    On May 6, 2019, Atorria Finley told Leslie Ethridge that Finley hurt the right shoulder.

44.    When Atorria Finley told Leslie Ethridge that Finley hurt the right shoulder, this was true.

45.    The injury to Atorria Finley's right shoulder was from this wreck.

46.    On May 6, 2019, Atorria Finley told Dr. Leslie Ethridge that Finley had head and back pain.

47.    When Atorria Finley told Leslie Ethridge that Finley had a head and back pain, this was true.

48.    The head and back pain Atorria Finley had was from this wreck.

49.    Carla Holder prescribed medications for Atorria Finley because of the wreck.

50.    Carla Holder prescribed the following medications for Atorria Finley: Toradol, Flexeril.

51.    When Carla Holder prescribed the medications for Atorria Finley, Atorria Finley needed the medications.

52.    Leslie Ethridge diagnosed Atorria Finley with muscle spasms of the back.

53.    When Leslie Ethridge diagnosed Atorria Finley with muscle spasms, this was a correct diagnosis.

54.    Atorria Finley is not a malingerer.

55.    Since the time of the wreck until now, Atorria Finley has told the truth about the injuries

from this wreck.

56. Since the time of the wreck until now, Atorria Finley has told the truth about pain from this wreck.

57. Since the time of the wreck until now, Atorria Finley has told the truth about how this wreck happened.

58. Since the time of the wreck until now, Atorria Finley has not exaggerated injuries from this wreck.

59. Since the time of the wreck until now, Atorria Finley has not shown any signs of somatoform disorder.

60. Atorria Finley is not lying about injuries from this wreck.

61. Atorria Finley is not lying about pain from this wreck.

62. Atorria Finley's doctors are not lying about Atorria Finley's pain from this wreck.

63. Atorria Finley's doctors are not lying about Atorria Finley's injuries from this wreck.

64. When the Defendant caused this wreck, the Defendant violated Section 63-3-201 of the Mississippi Code which makes it a misdemeanor to violate any traffic law.

65. When the Defendant caused this wreck, the Defendant violated Section 63-3-1201 of the Mississippi Code which prohibits wanton disregard for safety of people while driving or the driver is guilty of reckless driving.

66. When the Defendant caused this wreck, the Defendant violated Section 63-3-1213 of the Mississippi Code which prohibits careless driving.

67. When the Defendant caused this wreck, the Defendant was negligent per se.

68. Atorria Finley has not exaggerated the symptoms that Atorria Finley has had from the time of the wreck until now.

69. The defendant has personally read this Complaint.

70. The defendant has personally read the Answer filed by the defendant's lawyer.

71. The defendant agrees with the Answer filed by the defendant's lawyer.

72. The defendant agrees that the defendant's Answer is truthful.

73.     The Defendant Section 63-3-807 of the Mississippi Code required the defendant to yield to Atorria Finley.

74.     The Defendant violated Section 63-3-807 of the Mississippi Code by failing to yield.

75.     Pulling out in front of a car too closely is dangerous.

76.     Pulling out in front of a car too closely is dangerous because this can cause wrecks.

77.     If the Defendant yielded to Atorria Finley at the time of this wreck, then a wreck would not have happened.

78.     The Defendant broke the law by failing to yield.

79.     Atorria Finley is within the class of drivers that the laws about driving protect.

80.     Atorria Finley's injuries and damages are the type that the driving laws are meant to prevent.

81.     The Defendant was negligent per se by violating the driving laws.

82.     The Defendant, Geico Insurance Company, is an insurance company which is qualified to do business in the state of Mississippi and may be served through the registered agent.

83.     The Defendants, John Doe Insurance Company #1 and John Doe Insurance Company #2 are the possible correct names of the insurance company and/or companies which insured Atorria Finley.

84.     On the date of this wreck, Geico Insurance Company and/or John Doe Insurance Company #1 and/or John Doe Insurance Company #2, insured Amber R. Whiddon.

85.     Despite many requests, Geico has refused to allow Atorria Finley to settle this case with it without waiving Atorria Finley's right to pursue an underinsured/uninsured motorist claim with Geico.

86.     This refusal by Geico to allow Atorria Finley to settle this case with it without waiving Atorria Finley's right to pursue an underinsured/uninsured motorist claim with Geico is unreasonable.

87.     This refusal by Geico to allow Atorria Finley to settle this case with it without waiving Atorria Finley's right to pursue an underinsured/uninsured motorist claim with Geico forced Atorria Finley to file a lawsuit against Amber R. Whiddon.

88.     On the date of this wreck, Geico Insurance Company and/or John Doe Insurance Company #1 and/or John Doe Insurance Company #2, insured Atorria Finley and the car Atorria

Finley was driving at the time of this wreck. The insurance policy stated that Atorria Finley had $100,000.00 in uninsured motorist coverage on four different cars.

89. Under the terms of the contract entered into by Atorria Finley and Geico Insurance Company protection for this situation was for $400,000.00 as a result of injuries and damages in a wreck.

90. The defendant has failed to pay the uninsured motorist benefits to the plaintiff and has breached the contract.

91. Geico Insurance Company entered into this contract with Atorria Finley and has breached the contract.

92. Geico Insurance Company breached the duty of good faith.

93. Geico Insurance Company breached the duty of fair dealing.

94. Atorria Finley has complied with all of the policy terms and conditions in the contract with Geico Insurance Company.

95. Atorria Finley paid the policy as required by Geico Insurance Company.

96. Geico Insurance Company has willfully violated the contract that it had with Atorria Finley which was in effect at the time of the wreck.

97. Atorria Finley relied upon Geico Insurance Company to treat the plaintiff fairly and Geico Insurance Company failed to do this.

98. Atorria Finley relied upon Geico Insurance Company to honor the contract and Geico Insurance Company failed to do this.

99. The defendant's insurance carrier paid the liability limits of $25,000.00 and this is less than the uninsured/underinsured motorist coverage available under Atorria Finley's policy so this triggers the plaintiff's coverage in this case.

100. As a result of the damages Atorria Finley has, Atorria Finley was driving an underinsured motor vehicle pursuant to the insurance policies and according to Section 83-11-103 of the Mississippi Code. Therefore, Atorria Finley is making a claim for uninsured/underinsured motorist benefits per the insurance contract.

As a result, Atorria Finley has injuries and damages and requests damages for all injuries caused, including, but not limited to the following: punitive damages, pain, suffering, worry, emotional distress, physical impairment, injury to reputation, humiliation, embarrassment, loss of the enjoyment of life, other nonpecuniary damages, and any other theory of damages such as fear of loss, illness or injury; and past, present, and future mental anguish in an amount not to exceed the

jurisdictional limits of this Court. Furthermore, Atorria Finley requests all court costs, expert fees, witness fees, pre-judgment and post-judgment interest, and/or any other costs associated in any way with this case.


Respectfully Submitted,


Jay Foster

Jay Foster, No. 9830
Law Office of Jay Foster
1019 Legion Lane
Ocean Springs, MS 39564
(228) 872-6000
(228) 875-6687 (fax)
email:   Jay@JayFosterLaw.com

Jury Trial Requested


Service will be issued by process server to:
Geico Insurance Company
One Geico Center
Macon, GA 31296-0001

Amber R. Whiddon
107 Labonon Road
Laurel, MS 39443

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Geico Insurance Company DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Geico Insurance Company, One Geico Center, Macon, GA 31296-0001 OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 23 day of June, 2021.

Gwen Wilks by Chasity Pierce D.C.
CLERK

CIRCUIT CLERK FORREST COUNTY, MISS.

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Amber Whiddon, Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Amber R. Whiddon, 107 Labonon Road, Laurel, MS 39443 OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 23 day of June, 2021.

Gwen Wilks by Charity Pierce D.C.
CLERK



In The County Court of Forrest County

Atorria Finley PLAINTIFF

v. Cause No. 18CO1:21-cv-00424

Geico Insurance Company, et. al. DEFENDANT

NOTICE OF SERVICE OF DISCOVERY

The PLAINTIFF, pursuant to the Mississippi Rules of Civil Procedure has sent the following discovery to THE DEFENDANT, **AMBER WHIDDON**:

1. PLAINTIFF'S Requests for Production of Documents, First Set.
2. PLAINTIFF'S Interrogatories, First Set.
3. PLAINTIFF'S Request for Admissions, First Set.

A copy of the discovery has been faxed to all counsel of record. The originals are maintained in the PLAINTIFF'S file.

Respectfully submitted,

s/Jay Foster

Certificate of Service

I certify that I have mailed a true and correct copy of the above to
Amber Whiddon, 11 Richburg Village Circle, Hattiesburg, MS 39402

So certified, July 19, 2021.

s/Jay Foster

Jay Foster, No. 9830
1019 Legion Lane
Ocean Springs, MS 39564
(228) 872-6000
(228) 875-6687 (fax)
Email: Jay@JayFosterLaw.com

RETURN - PROOF OF SERVICE SUMMONS, COMPLAINT, & DISCOVERY

Atorria Finley v. Amber Whiddon, Geico, et. al.
Cause No. 21-424

Kim Powell
process server

I, the Undersigned process server, served the ***Rule 4 Summons and Complaint*** upon the person or entity named above in the manner set forth below :

(XX ) I personally delivered copies of the ***Rule 4 Summons and Complaint*** on the 15th day of July, 2021, to; **Amber Whiddon (aka) Amber Hill @:**

11 Richburg Village Circle
Hattiesburg, Mississippi 39402 Served @ 7:36pm

At the time of service I was at least 18 years of age and not a party to this action.

Fee for service: $__________

Name: **Kim Powell / Privateyez, LLC.**
**400 Vestavia Parkway Suite 271**

Address: **Vestavia, AL. 35216 (205)951-1034**

Telephone No.:__________

Atorria Finley v. Amber Whiddon, Geico, et. al.
Cause No. 21-424

State of Mississippi
County of Jackson

Personally appeared before me the undersigned authority in and for the state and county aforesaid, the within named Kim Powell who being first by me duly sworn states on oath that the matters and facts set for in the foregoing RETURN - PROOF OF SERVICE SUMMONS, AND COMPLAINT, upon the person or entity named above in the manner are true and correct as therein stated. Again, ***I served the Rule 4 Summons and Complaint as stated in the foregoing Return***.

Kim Powell
Process Server

Sworn to and subscribed before me on this the 20 day of July, 2021.

Rosicler Rodriguez
Notary Public

(Seal) My commission Expires:

Aug. 5, 2023

STATE OF MISSISSIPPI NOTARY PUBLIC ID # 148106 ROSICLER RODRIGUEZ Commission Expires Aug. 5, 2023 JACKSON COUNTY

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Amber Whiddon, Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Amber R. Whiddon, 107 Labonon Road, Laurel, MS 39443 OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 23 day of June, 2021.

Gwen Wilks by Charity Pierce D.C.
CLERK

CIRCUIT CLERK
FORREST COUNTY, MISS.

IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 18CO1:21-cv-00424

Amber R. Whiddon,
John Doe Ins. Co. #1, John Doe Ins. Co. #2, Geico Insurance Company
Geico General Insurance Company
Geico Indemnity Insurance Company
Geico Casualty Insurance Company
Government Employees Insurance Company DEFENDANTS

FIRST AMENDED COMPLAINT

1. The plaintiff, Atorria Finley, files this complaint against the defendants and states as follows:

2. The plaintiff, Atorria Finley lived in Hattiesburg, Mississippi at the time of this wreck.

3. The Court has jurisdiction over the parties and the subject matter and venue is proper in this Court pursuant to Section 11-11-3 of the Mississippi Code.

4. The defendant, Amber R. Whiddon, was properly served with the summons and complaint.

5. The defendant, Amber R. Whiddon, is properly named in this complaint.

6. The defendants, Geico Insurance Company, Geico General Insurance Company Geico Indemnity Insurance Company, Geico Casualty Insurance Company, and Government Employees Insurance Company were properly served with the summons and complaint.

7. The defendants, Geico Insurance Company, Geico General Insurance Company Geico Indemnity Insurance Company, Geico Casualty Insurance Company, Government Employees Insurance Company are properly named in this complaint.

8. On 5/1/2019, Atorria Finley was driving on Oak Grove Road in Forrest County, Mississippi County and a wreck happened between Atorria Finley's car and the car driven by the defendant. The defendant caused this wreck.

9. The defendant's negligence caused Atorria Finley's injuries and damages.

10. The defendant's negligence contributed to Atorria Finley's injuries and damages.

11. The Defendant pulled out in front of Attoria Finley.

12.    The Defendant was not paying attention when the Defendant pulled out in front of Attoria Finley.

13.    The Defendant's inattention caused this wreck.

14.    The Defendant's inattention caused the wreck which in turned caused Atorria Finley's injuries and damages.

15.    Atorria Finley did not cause this wreck.

16.    Atorria Finley was following all driving laws at the time of this wreck.

17.    Atorria Finley did not contribute to this wreck.

18.    Atorria Finley was not at fault for this wreck.

19.    Atorria Finley maintained proper control of Atorria Finley's vehicle at all times.

20.    Atorria Finley was keeping a proper lookout at all times before this wreck.

21.    On 5/1/2019, Atorria Finley did not do anything wrong while driving.

22.    There is no evidence that Atorria Finley did anything wrong on 5/1/2019 while driving.

23.    There is no witness who will testify that Atorria Finley did anything wrong while driving on 5/1/2019.

24.    There are no pictures showing that Atorria Finley did anything wrong while driving on 5/1/2019.

25.    There is no video showing Atorria Finley did anything wrong while driving on 5/1/2019.

26.    The wreck caused Atorria Finley to get hurt.

27.    The wreck caused Atorria Finley to have pain.

28.    The wreck caused Atorria Finley to have pain and suffering.

29.    The wreck caused Atorria Finley to have emotional suffering.

30.    The wreck caused Atorria Finley to have right wrist pain.

31.    After the wreck, Atorria Finley was unable to do the things she liked to do before the wreck.

32.    As a result of the wreck, Atorria Finley was treated at Wesley Medical Center.

33.    At Wesley Medical Center, Atorria Finley, told the doctor Finley was hurt in a wreck.

34.    When Atorria Finley told the doctor at Wesley Medical Center about being hurt in a wreck, this was true.

35.    At Wesley Medical Center, the doctor diagnosed Atorria Finley with right wrist pain.

36.    The diagnosis by the doctor at Wesley Medical Center was correct.

37.    On May 6, 2019, Atorria Finley went to Leslie Ethridge for medical treatment.

38.    On May 6, 2019, Atorria Finley told Leslie Ethridge that Finley was injured in a wreck.

39.    When Atorria Finley told Leslie Ethridge that Finley was hurt in a wreck this was true.

40.    On May 6, 2019, Atorria Finley told Leslie Ethridge that Finley hurt the right wrist.

41.    When Atorria Finley told Leslie Ethridge that Finley hurt the right wrist, this was true.

42.    The injury to Atorria Finley's right wrist was from this wreck.

43.    On May 6, 2019, Atorria Finley told Leslie Ethridge that Finley hurt the right shoulder.

44.    When Atorria Finley told Leslie Ethridge that Finley hurt the right shoulder, this was true.

45.    The injury to Atorria Finley's right shoulder was from this wreck.

46.    On May 6, 2019, Atorria Finley told Dr. Leslie Ethridge that Finley had head and back pain.

47.    When Atorria Finley told Leslie Ethridge that Finley had a head and back pain, this was true.

48.    The head and back pain Atorria Finley had was from this wreck.

49.    Carla Holder prescribed medications for Atorria Finley because of the wreck.

50.    Carla Holder prescribed the following medications for Atorria Finley: Toradol, Flexeril.

51.    When Carla Holder prescribed the medications for Atorria Finley, Atorria Finley needed the medications.

52.    Leslie Ethridge diagnosed Atorria Finley with muscle spasms of the back.

53.     When Leslie Ethridge diagnosed Atorria Finley with muscle spasms, this was a correct diagnosis.

54.     Atorria Finley is not a malingerer.

55.     Since the time of the wreck until now, Atorria Finley has told the truth about the injuries from this wreck.

56.     Since the time of the wreck until now, Atorria Finley has told the truth about pain from this wreck.

57.     Since the time of the wreck until now, Atorria Finley has told the truth about how this wreck happened.

58.     Since the time of the wreck until now, Atorria Finley has not exaggerated injuries from this wreck.

59.     Since the time of the wreck until now, Atorria Finley has not shown any signs of somatoform disorder.

60.     Atorria Finley is not lying about injuries from this wreck.

61.     Atorria Finley is not lying about pain from this wreck.

62.     Atorria Finley's doctors are not lying about Atorria Finley's pain from this wreck.

63.     Atorria Finley's doctors are not lying about Atorria Finley's injuries from this wreck.

64.     When the Defendant caused this wreck, the Defendant violated Section 63-3-201 of the Mississippi Code which makes it a misdemeanor to violate any traffic law.

65.     When the Defendant caused this wreck, the Defendant violated Section 63-3-1201 of the Mississippi Code which prohibits wanton disregard for safety of people while driving or the driver is guilty of reckless driving.

66.     When the Defendant caused this wreck, the Defendant violated Section 63-3-1213 of the Mississippi Code which prohibits careless driving.

67.     When the Defendant caused this wreck, the Defendant was negligent per se.

68.     Atorria Finley has not exaggerated the symptoms that Atorria Finley has had from the time of the wreck until now.

69.     The defendant has personally read this Complaint.

70.    The defendant has personally read the Answer filed by the defendant's lawyer.

71.    The defendant agrees with the Answer filed by the defendant's lawyer.

72.    The defendant agrees that the defendant's Answer is truthful.

73.    The Defendant Section 63-3-807 of the Mississippi Code required the defendant to yield to Atorria Finley.

74.    The Defendant violated Section 63-3-807 of the Mississippi Code by failing to yield.

75.    Pulling out in front of a car too closely is dangerous.

76.    Pulling out in front of a car too closely is dangerous because this can cause wrecks.

77.    If the Defendant yielded to Atorria Finley at the time of this wreck, then a wreck would not have happened.

78.    The Defendant broke the law by failing to yield.

79.    Atorria Finley is within the class of drivers that the laws about driving protect.

80.    Atorria Finley's injuries and damages are the type that the driving laws are meant to prevent.

81.    The Defendant was negligent per se by violating the driving laws.

82.    The Defendants, Geico Insurance Company, Geico General Insurance Company Geico Indemnity Insurance Company, Geico Casualty Insurance Company, and/or Government Employees Insurance Company (hereinafter referred to as Geico), is an insurance company which is qualified to do business in the state of Mississippi and may be served through the registered agent.

83.    The Defendants, John Doe Insurance Company #1 and John Doe Insurance Company #2 are the possible correct names of the insurance company and/or companies which insured Atorria Finley.

84.    On the date of this wreck, Geico and/or John Doe Insurance Company #1 and/or John Doe Insurance Company #2, insured Amber R. Whiddon.

85.    Despite many requests, Geico has refused to allow Atorria Finley to settle this case with it without waiving Atorria Finley's right to pursue an underinsured/uninsured motorist claim with Geico.

86.    This refusal by Geico to allow Atorria Finley to settle this case with it without waiving Atorria Finley's right to pursue an underinsured/uninsured motorist claim with Geico is

unreasonable.

87.    This refusal by Geico to allow Atorria Finley to settle this case with it without waiving Atorria Finley's right to pursue an underinsured/uninsured motorist claim with Geico forced Atorria Finley to file a lawsuit against Amber R. Whiddon.

88.    On the date of this wreck, Geico and/or John Doe Insurance Company #1 and/or John Doe Insurance Company #2, insured Atorria Finley and the car Atorria Finley was driving at the time of this wreck. The insurance policy stated that Atorria Finley had $100,000.00 in uninsured motorist coverage on four different cars.

89.    Under the terms of the contract entered into by Atorria Finley and Geico protection for this situation was for $400,000.00 as a result of injuries and damages in a wreck.

90.    The defendant has failed to pay the uninsured motorist benefits to the plaintiff and has breached the contract.

91.    Geico entered into this contract with Atorria Finley and has breached the contract.

92.    Geico breached the duty of good faith.

93.    Geico breached the duty of fair dealing.

94.    Atorria Finley has complied with all of the policy terms and conditions in the contract with Geico.

95.    Atorria Finley paid the policy as required by Geico.

96.    Geico has willfully violated the contract that it had with Atorria Finley which was in effect at the time of the wreck.

97.    Atorria Finley relied upon Geico to treat the plaintiff fairly and Geico failed to do this.

98.    Atorria Finley relied upon Geico to honor the contract and Geico failed to do this.

99.    The defendant's insurance carrier paid the liability limits of $25,000.00 and this is less than the uninsured/underinsured motorist coverage available under Atorria Finley's policy so this triggers the plaintiff's coverage in this case.

100.    As a result of the damages Atorria Finley has, Atorria Finley was driving an underinsured motor vehicle pursuant to the insurance policies and according to Section 83-11-103 of the Mississippi Code.  Therefore, Atorria Finley is making a claim for uninsured/underinsured motorist benefits per the insurance contract.

As a result, Atorria Finley has injuries and damages and requests damages for all injuries caused,

including, but not limited to the following: punitive damages, pain, suffering, worry, emotional distress, physical impairment, injury to reputation, humiliation, embarrassment, loss of the enjoyment of life, other nonpecuniary damages, and any other theory of damages such as fear of loss, illness or injury; and past, present, and future mental anguish in an amount not to exceed the jurisdictional limits of this Court. Furthermore, Atorria Finley requests all court costs, expert fees, witness fees, pre-judgment and post-judgment interest, and/or any other costs associated in any way with this case.

Respectfully Submitted,

Jay Foster

Jay Foster, No. 9830
Law Office of Jay Foster
1019 Legion Lane
Ocean Springs, MS 39564
(228) 872-6000
(228) 875-6687 (fax)
email:   Jay@JayFosterLaw.com

Jury Trial Requested

Service will be issued by process server to:
Geico Insurance Company
Geico General Insurance Company
Geico Indemnity Insurance Company
Geico Casualty Insurance Company
Government Employees Insurance Company
One Geico Center
Macon, GA 31296-0001

Amber R. Whiddon
107 Labonon Road
Laurel, MS 39443

In The County Court of Forrest County

Atorria Finley PLAINTIFF

v. Cause No. 18CO1:21-cv-00424

Geico Insurance Company, et. al. DEFENDANT

NOTICE OF SERVICE OF DISCOVERY

The PLAINTIFF, pursuant to the Mississippi Rules of Civil Procedure has sent the following discovery to THE DEFENDANT, **AMBER WHIDDON**:

1. PLAINTIFF'S Requests for Production of Documents, First Set.
2. PLAINTIFF'S Interrogatories, First Set.
3. PLAINTIFF'S Request for Admissions, First Set.

The originals are maintained in the PLAINTIFF'S file.

Respectfully submitted,

s/Jay Foster

Certificate of Service

I certify that I have mailed a true and correct copy of the above to Amber Whiddon, 11 Richburg Village Circle, Hattiesburg, MS 39402

So certified, August 9, 2021.

s/Jay Foster

Jay Foster, No. 9830
1019 Legion Lane
Ocean Springs, MS 39564
(228) 872-6000
(228) 875-6687 (fax)
Email: Jay@JayFosterLaw.com

In the County Court of Forrest County, Mississippi
Cause No. 18CO1:21-cv-00424

Atorria Finley PLAINTIFF

v.

Amber R. Whiddon, et. al. DEFENDANTS

Notice

The PLAINTIFF, pursuant to the Mississippi Rules of Civil Procedure has sent the following discovery to GEICO INSURANCE COMPANY, ET. AL.:

1. PLAINTIFF'S Requests for Production of Documents, First Set.

2. PLAINTIFF'S Interrogatories, First Set.

3. PLAINTIFF'S Request for Admissions, First Set.

The originals are maintained in the PLAINTIFF'S file. The defense is put on notice to email Receptionist@JayFosterLaw.com to set any hearing, motion, deposition, etc. and if you need to speak with plaintiff's counsel to send a meeting invitation from your calendar so we can avoid phone and email tag.

Respectfully submitted,

s/Jay Foster

Certificate of Service

I certify that I have faxed a true and correct copy of the above to:

Geico Insurance Company
One Geico Center
Macon, GA 31296-0001
12023544691

So certified August 9, 2021.


s/Jay Foster, No. 9830
1019 Legion Lane
Ocean Springs, MS  39564
228-872-6000
228-875-6687 (fax)

In The County Court of Forrest County

Atorria Finley PLAINTIFF

v. Cause No. 18CO1:21-cv-00424

Geico Insurance Company, et. al. DEFENDANT

NOTICE OF SERVICE OF DISCOVERY

The PLAINTIFF, pursuant to the Mississippi Rules of Civil Procedure has sent the following discovery to THE DEFENDANT, **AMBER WHIDDON**:

1. PLAINTIFF'S Requests for Production of Documents, First Set.
2. PLAINTIFF'S Interrogatories, First Set.
3. PLAINTIFF'S Request for Admissions, First Set.

The originals are maintained in the PLAINTIFF'S file.

Respectfully submitted,

s/Jay Foster

Certificate of Service

I certify that I have mailed a true and correct copy of the above to Amber Whiddon, 11 Richburg Village Circle, Hattiesburg, MS 39402

So certified, August 11, 2021.

s/Jay Foster

Jay Foster, No. 9830
1019 Legion Lane
Ocean Springs, MS 39564
(228) 872-6000
(228) 875-6687 (fax)
Email: Jay@JayFosterLaw.com

**IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI**

ATTORIA FINLEY, PLAINTIFF

vs. Case No.: 18co1:21-cv-00424
**TRIAL BY JURY DEMANDED**

AMBER WHIDDON, GEICO GENERAL INSURANCE COMPANY, DEFENDANTS

**ANSWER OF DEFENDANT AMBER WHIDDON**

COMES NOW Defendant, AMBER WHIDDON, by and through the undersigned counsel, and in Answer to Plaintiff's Complaint states as follows:

**STATEMENT OF THE PARTIES**

1. No response is required of this Defendant.

2. No response is required of this Defendant.

3. No response is required of this Defendant.

4. No response is required of this Defendant.

5. Admitted.

6. No response is required of this Defendant.

7. No response is required of this Defendant.

8. Defendant denies the material allegations of paragraph 8 and demands strict proof thereof.

9. Defendant denies the material allegations of paragraph 9 and demands strict proof thereof.

10. Defendant denies the material allegations of paragraph 10 and demands strict proof thereof.

11.   Defendant denies the material allegations of paragraph 11 and demands strict proof thereof.

12.   Defendant denies the material allegations of paragraph 12 and demands strict proof thereof.

13.   Defendant denies the material allegations of paragraph 13 and demands strict proof thereof.

14.   Defendant denies the material allegations of paragraph 14 and demands strict proof thereof.

15.   Defendant denies the material allegations of paragraph 15 and demands strict proof thereof.

16.   Defendant denies the material allegations of paragraph 16 and demands strict proof thereof.

17.   Defendant denies the material allegations of paragraph 17 and demands strict proof thereof.

18.   Defendant denies the material allegations of paragraph 18 and demands strict proof thereof.

19.   Defendant denies the material allegations of paragraph 19 and demands strict proof thereof.

20.   Defendant denies the material allegations of paragraph 20 and demands strict proof thereof.

21.   Defendant denies the material allegations of paragraph 21 and demands strict proof thereof.

22.    Defendant denies the material allegations of paragraph 22 and demands strict proof thereof.

23.    Defendant denies the material allegations of paragraph 23 and demands strict proof thereof.

24.    Defendant denies the material allegations of paragraph 24 and demands strict proof thereof.

25.    Defendant denies the material allegations of paragraph 25 and demands strict proof thereof.

26.    Defendant denies the material allegations of paragraph 26 and demands strict proof thereof.

27.    Defendant denies the material allegations of paragraph 27 and demands strict proof thereof.

28.    Defendant denies the material allegations of paragraph 28 and demands strict proof thereof.

29.    Defendant denies the material allegations of paragraph 29 and demands strict proof thereof.

30.    Defendant denies the material allegations of paragraph 30 and demands strict proof thereof.

31.    Defendant denies the material allegations of paragraph 31 and demands strict proof thereof.

32.    Defendant denies the material allegations of paragraph 32 and demands strict proof thereof.

33.    Defendant denies the material allegations of paragraph 33 and demands strict proof thereof.

34.    Defendant denies the material allegations of paragraph 34 and demands strict proof thereof.

35.    Defendant denies the material allegations of paragraph 35 and demands strict proof thereof.

36.    Defendant denies the material allegations of paragraph 36 and demands strict proof thereof.

37.    Defendant denies the material allegations of paragraph 37 and demands strict proof thereof.

38.    Defendant denies the material allegations of paragraph 38 and demands strict proof thereof.

39.    Defendant denies the material allegations of paragraph 39 and demands strict proof thereof.

40.    Defendant denies the material allegations of paragraph 40 and demands strict proof thereof.

41.    Defendant denies the material allegations of paragraph 41 and demands strict proof thereof.

42.    Defendant denies the material allegations of paragraph 42 and demands strict proof thereof.

43.    Defendant denies the material allegations of paragraph 43 and demands strict proof thereof.

44.    Defendant denies the material allegations of paragraph 44 and demands strict proof thereof.

45.    Defendant denies the material allegations of paragraph 45 and demands strict proof thereof.

46.    Defendant denies the material allegations of paragraph 46 and demands strict proof thereof.

47.    Defendant denies the material allegations of paragraph 47 and demands strict proof thereof.

48.    Defendant denies the material allegations of paragraph 48 and demands strict proof thereof.

49.    Defendant denies the material allegations of paragraph 49 and demands strict proof thereof.

50.    Defendant denies the material allegations of paragraph 50 and demands strict proof thereof.

51.    Defendant denies the material allegations of paragraph 51 and demands strict proof thereof.

52.    Defendant denies the material allegations of paragraph 52 and demands strict proof thereof.

53.    Defendant denies the material allegations of paragraph 53 and demands strict proof thereof.

54.    Defendant denies the material allegations of paragraph 54 and demands strict proof thereof.

55.    Defendant denies the material allegations of paragraph 55 and demands strict proof thereof.

56.    Defendant denies the material allegations of paragraph 56 and demands strict proof thereof.

57.    Defendant denies the material allegations of paragraph 57 and demands strict proof thereof.

58.    Defendant denies the material allegations of paragraph 58 and demands strict proof thereof.

59.    Defendant denies the material allegations of paragraph 59 and demands strict proof thereof.

60.    Defendant denies the material allegations of paragraph 60 and demands strict proof thereof.

61.    Defendant denies the material allegations of paragraph 61 and demands strict proof thereof.

62.    Defendant denies the material allegations of paragraph 62 and demands strict proof thereof.

63.    Defendant denies the material allegations of paragraph 63 and demands strict proof thereof.

64.    Defendant denies the material allegations of paragraph 64 and demands strict proof thereof.

65.    Defendant denies the material allegations of paragraph 65 and demands strict proof thereof.

66.    Defendant denies the material allegations of paragraph 66 and demands strict proof thereof.

67.    Defendant denies the material allegations of paragraph 67 and demands strict proof thereof.

68.    Defendant denies the material allegations of paragraph 68 and demands strict proof thereof.

69.    Defendant denies the material allegations of paragraph 69 and demands strict proof thereof.

70.    Defendant denies the material allegations of paragraph 70 and demands strict proof thereof.

71.    Defendant denies the material allegations of paragraph 71 and demands strict proof thereof.

72.    Defendant denies the material allegations of paragraph 72 and demands strict proof thereof.

73.    Defendant denies the material allegations of paragraph 73 and demands strict proof thereof.

74.    Defendant denies the material allegations of paragraph 74 and demands strict proof thereof.

75.    Defendant denies the material allegations of paragraph 75 and demands strict proof thereof.

76.    Defendant denies the material allegations of paragraph 76 and demands strict proof thereof.

77.    Defendant denies the material allegations of paragraph 77 and demands strict proof thereof.

78.    Defendant denies the material allegations of paragraph 78 and demands strict proof thereof.

79.    Defendant denies the material allegations of paragraph 79 and demands strict proof thereof.

80.    Defendant denies the material allegations of paragraph 80 and demands strict proof thereof.

81.    Defendant denies the material allegations of paragraph 81 and demands strict proof thereof.

82.    The allegations of paragraph 82 are not directed at this Defendant; therefore, no response is required.

83.    The allegations of paragraph 83 are not directed at this Defendant; therefore, no response is required.

84.    The allegations of paragraph 84 are not directed at this Defendant; therefore, no response is required.

85.    The allegations of paragraph 85 are not directed at this Defendant; therefore, no response is required.

86.    The allegations of paragraph 86 are not directed at this Defendant; therefore, no response is required.

87.    The allegations of paragraph 87 are not directed at this Defendant; therefore, no response is required.

88.    The allegations of paragraph 88 are not directed at this Defendant; therefore, no response is required.

89.    The allegations of paragraph 89 are not directed at this Defendant; therefore, no response is required.

90.    The allegations of paragraph 90 are not directed at this Defendant; therefore, no response is required.

91.    The allegations of paragraph 91 are not directed at this Defendant; therefore, no response is required.

92.    The allegations of paragraph 92 are not directed at this Defendant; therefore, no response is required.

93.    The allegations of paragraph 93 are not directed at this Defendant; therefore, no response is required.

94.    The allegations of paragraph 94 are not directed at this Defendant; therefore, no response is required.

95.    The allegations of paragraph 95 are not directed at this Defendant; therefore, no response is required.

96.    The allegations of paragraph 96 are not directed at this Defendant; therefore, no response is required.

97.    The allegations of paragraph 97 are not directed at this Defendant; therefore, no response is required.

98.    The allegations of paragraph 98 are not directed at this Defendant; therefore, no response is required.

99. The allegations of paragraph 99 are not directed at this Defendant; therefore, no response is required.

100. Defendant denies the material allegations of paragraph 100 to the extent it alleges any wrongful conduct of this Defendant and demands strict proof thereof.

In response to the allegations contained in the last unnumbered paragraph of the Complaint which begins with the words, "AS A RESULT," this Defendant denies same and this Defendant specifically denies that the Plaintiffs are entitled to recover any damages or other relief sought by the Plaintiffs or any other damage relief, whatsoever.

**AFFIRMATIVE DEFENSES**

To the extent applicable, the Defendant pleads the following defenses:

1. The Defendant pleads the general issue and "not guilty."

2. Defendant affirmatively states that the Plaintiff had the last chance to avoid the subject accident, and therefore, Defendant has no liability for Plaintiff's damages, if any.

3. The Defendant denies the Plaintiff was injured to the degree and extent claimed in the Complaint and demands strict proof thereof.

4. Defendant affirmatively pleads that Plaintiff's own negligence or fault contributed, in whole or part, to the accident at issue, and therefore, Plaintiff's damages, if any, should be reduced or barred in relation thereto, and Defendant affirmatively pleads the provisions of Miss. Code Ann. § 11-7-15.

5.    Defendant affirmatively states that Plaintiff's damages, if any, were caused by independent persons or entities over which Defendant had no supervision or control.  As to such parties, Defendant pleads the comparative negligence and apportionment damages as required under Miss. Code Ann. § 85-5-7.

6.    Defendant affirmatively states that some or all of Plaintiff's claims and/or damages are barred by the doctrine of accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, equitable estoppel, judicial estoppel failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

7.    Defendant affirmatively states that he did not breach any duty owed to Plaintiff.

8.    Defendant specifically denies that he is liable to Plaintiff under any theory of negligence, including but not limited to, negligence *per se* and gross negligence; more specifically, Defendant affirmatively states that no negligent act by Defendant was the proximate cause of the accident or Plaintiff's alleged injuries and/or damages.

9.    Defendant denies he was negligent or grossly negligent in the operation of any motor vehicle involved in the subject accident.

10.    Defendant affirmatively states that he is not the cause of Plaintiff's

injuries, and Defendant demands strict proof of a causal link between the accident and Plaintiff's alleged injuries.

11.    Defendant affirmatively states that Plaintiff sustained independent, intervening and/or superseding injuries unrelated to the subject accident for which Defendant is not liable for; therefore, Plaintiff's damages, if any, must be reduced and/or barred.

12.    Defendant affirmatively states that Plaintiff is not entitled to pre-judgment interest under Mississippi law, because the measure of damages, if any damages caused by Defendant exist, is discretionary or unascertainable prior to judgment.

13.    Defendant affirmatively states that Plaintiff is not entitled to attorney's fees, expenses or costs under Mississippi law.

14.    Defendant affirmatively states that it is entitled to all rights of credit, setoff, or contribution, which may be allowed under Mississippi law for any settlement or other payments of monies received by Plaintiff from third parties or from other parties to this action.

15.    Defendant affirmatively denies that Plaintiff is entitled to any recovery of punitive damages whatsoever against it; in the alternative, Defendant pleads all rights and remedies and affirmative defenses available to it pursuant to Miss. Code Ann. §11-1-65.

16.    The Defendant would affirmatively and alternatively state that Plaintiff cannot attribute any wrongdoing to this Defendant.

17.    At all times material hereto, the Defendant acted in a reasonable and prudent manner and was justified in his actions. Therefore, Defendant is not liable to the Plaintiff for any damages.

18.    Defendant would affirmatively show that the Plaintiff's alleged damages, the existence of which are hereby expressly denied, were proximately caused or contributed to by the Plaintiff through negligent acts or omissions.

19.    The negligent and/or intentional acts and/or omissions of parties other than Defendant were the sole proximate cause and/or substantial contributing cause of any alleged incident/injury complained of by Plaintiff, and these activities on the part of the other parties absolve Defendant of any liability whatsoever.

20.    Any damages the Plaintiff may have suffered, the existence of which are hereby expressly denied, are speculative in nature. Therefore, Plaintiff's damages are not recoverable.

21.    The Plaintiff failed to mitigate his damages.

22.    This Defendant is without sufficient knowledge to affirm whether venue is proper at this time, therefore out of an abundance of caution, it reserves its right to challenge venue if and when such facts become known.

23.    Since this matter is in the early stages of litigation, and the Defendant does not have the full benefit of discovery, it pleads all applicable affirmative rights and defenses available under Federal and/or State law, rule or regulation, including but not limited to those defenses set forth in Rules 8 and 12 of the Mississippi Rules of Civil Procedure.

24.    With respect to any claims for punitive damages, Defendant incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damages awards under existing federal law and state case law, together with all such standards applicable under Mississippi and/or federal laws.

25.    Imposition of punitive damages in this case would contravene the due process clauses of the United States Constitution and the Constitution of the State of Mississippi and the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, separately, to the United States Constitution, on each of the following grounds:

(1)    It is a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution to impose punitive damages, which are penal in nature, against a civil defendant upon the Plaintiff's satisfying a burden of proof that is lower that the "beyond a reasonable doubt" burden of proof required in criminal cases;

(2)    The procedure pursuant to which punitive damages are awarded fails to provide a reasonable limit on the amount of the award against a defendant, which hereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(3)    The procedure pursuant to which punitive damages are awarded fails to provide specific standards for the amount of the award of punitive damages, which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(4)    The procedures pursuant to which punitive damages are awarded are unconstitutionally vague;

(5)    The procedure pursuant to which punitive damages are awarded results in the imposition of different penalties for the same or similar acts and, thus, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(6)    The procedure pursuant to which punitive damages are awarded permits the imposition of punitive damages in excess of the maximum

criminal fine and/or administrative penalty for the same or similar conduct, which thereby infringes the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

(7)    The procedure pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing, which violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution;

(8)    The procedures pursuant to which punitive damages are awarded fail to provide a clear appellate standard of review of an award of punitive damages;

(9)    The procedures pursuant to which punitive damages are awarded may permit the admission of evidence relative to punitive damages in the same proceeding during which liability and compensatory damages are determined;

(10)    An award of punitive damages would constitute an arbitrary and capricious taking of property of this defendant without due process of law; and

(11)    The imposition of punitive damages against this Defendant based upon theories of respondent superior, vicarious liability, or joint and several liability violates the due process clause of the Fourteenth Amendment to the United States Constitution.

26.    The allegations with regard to punitive and/or exemplary damages as set forth by the Plaintiff in the Complaint, are subject to the terms, provision and adjudicatory procedures established under Miss. Code Ann. § 11-1-65, as to: the standard for determining the appropriateness, or the appropriate size, of a punitive damages award; the limits of punitive damages; the standard for determining liability for punitive damages; bifurcation; and as to the standards of judicial review (but only to the extent that said statute does not otherwise violate this Defendant's due process and equal protection rights guaranteed by the Fourteenth Amendment of the United States Constitution and the Double

Jeopardy Clause of the Fifth Amendment as incorporated into the Fourteenth Amendment, and by the Mississippi constitutional provisions relative to due process, equal protection, and the guarantee against double jeopardy, as no sufficient standard for the application to Plaintiff exists).

27. The Complaint fails to state grounds upon which relief can be granted against this Defendant.

28. This Defendant states that any injury to the Plaintiff was not caused by this incident but was, in fact, a pre-existing condition.

29. This Defendant states that the incident complained of in Plaintiff's Complaint was in fact caused by the Plaintiff driver in failing to keep a proper lookout, failing to signal, failing to yield the right-of-way, and failing to operate his motor vehicle in a reasonably safe and prudent manner.

30. This Defendant states that the Plaintiff driver violated one or more Rules of the Road of the State of Mississippi and such violation proximately caused or contributed to the injuries complained of in Plaintiff's Complaint.

Without waiving any defenses stated herein, Defendant specifically reserves the right to assert any and all future defenses arising as discovery progresses.

**JURY DEMAND**

Defendant respectfully demands trial by struck jury.

Respectfully submitted,

*/s/ Steven P. Savarese, Jr.*
STEVEN P. SAVARESE, JR. (MS#103171)
*Attorney for Defendant,*
*Amber Whiddon*

OF COUNSEL:

Holtsford Gilliland Higgins
Hitson & Howard, P.C.
Merritt Building II
6483 Van Buren Street
Daphne, AL 36526
ssavarese@hglawpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 16th day of August, 2021, electronically filed the foregoing, using the MEC system, which will send notification of the filing to the following:

Jay Foster
1019 Legion Lane
Ocean Springs, Mississippi 39564
*Attorney for Plaintiff*

*/s/ Steven P. Savarese, Jr.*
OF COUNSEL



**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Re: Finley

CT Corporation System
289 S Culver Street
Lawrenceville GA 30046

9590 9402 6343 0296 7898 27

2. Article Number *(Transfer from service label)*

7020 2450 0000 5101 0407

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X CT Corporation
☐ Agent
☐ Addressee

B. Received by *(Printed Name)* CT CORPORATION

C. Date of Delivery JUL 26 2021

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☒ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 **Domestic Return Receipt**


UNITED STATES
POSTAL SERVICE

August 9, 2021

Dear Postal Customer:

The following is in response to your request for proof of delivery on your item with the tracking number: **7020 2450 0000 5101 0407**.

**Item Details**

| | |
|---|---|
| **Status:** | Delivered, PO Box |
| **Status Date / Time:** | July 24, 2021, 12:07 pm |
| **Location:** | LAWRENCEVILLE, GA 30046 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |

**Shipment Details**

| | |
|---|---|
| **Weight:** | 3.0oz |

**Destination Delivery Address**

| | |
|---|---|
| **Street Address:** | 289 S CULVER ST |
| **City, State ZIP Code:** | LAWRENCEVILLE, GA 30046-4805 |

**Recipient Signature**

| | |
|---|---|
| Signature of Recipient: | Signature X Linda Banks<br>Printed Name L. Banks |
| Address of Recipient: | Delivery Address 284 S Culver |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Geico Insurance Company DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Geico Insurance Company, One Geico Center, Macon, GA 31296-0001 OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written response to the Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 23 day of June, 2021.

Gwen Wilks by Chasity Pierce D.C.
CLERK

CIRCUIT CLERK FORREST COUNTY, MISS.

IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI

ATORRIA FINLEY PLAINTIFF

VS. CAUSE NO. 18CO1:21-CV-00424

AMBER R. WHIDDON, JOHN DOE INS. CO. #1, JOHN DOE INS. CO. #2 AND GEICO INSURANCE COMPANY DEFENDANTS

**DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT**

**JURY TRIAL DEMANDED**

COMES NOW, Defendant Government Employees Insurance Company (hereinafter "GEICO") (incorrectly identified as "GEICO Insurance Company in the Plaintiff's Complaint), by and through its attorneys of record, and files this its Answer and Defenses, and would show unto the Court as follows, to-wit:

**FIRST DEFENSE**

Venue is improper, and this cause should be transferred to Lamar County, Mississippi.

**SECOND DEFENSE**

**ANSWER**

AND NOW, the Defendant would answer the Plaintiff's Complaint, paragraph by paragraph, as follows, to-wit:

1. Admitted.
2. Admitted.
3. Denied.
4. The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.
5. Admitted.
6. Denied.
7. Denied.

8.    The Defendant admits that on or about May 1, 2019, the vehicle operated by Plaintiff Atorria Finley was involved in an automobile accident with the vehicle operated by Defendant Amber R. Whiddon. The Defendant does not have sufficient information to admit or deny this paragraph of the Plaintiff's Complaint.

9.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint..

10.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

11.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

12.    The Defendant does not have sufficient information to form a belief as to the paragraph of the Plaintiff's Complaint.

13.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

14.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

15.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

16.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

17.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

18.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

19.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

20.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

21.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

22.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

23.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

24.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

25.    The Defendant does not have sufficient information to form a belief as to the allegations of this paragraph of the Plaintiff's Complaint.

26.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

27.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

28.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

29.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

30.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

31. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

32. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

33. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

34. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

35. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

36. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

37. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

38. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

39. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

40. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

41. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

42. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

43. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide..

44. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

45. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

46. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

47. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

48. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

49. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

50. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

51. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

52. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

53. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide.

54. The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that Plaintiff's credibility will also be a question for the jury.

55.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that Plaintiff's credibility will also be a question for the jury.

56.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that Plaintiff's credibility will also be a question for the jury.

57.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that Plaintiff's credibility will also be a question for the jury.

58.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that Plaintiff's credibility will also be a question for the jury.

59.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that Plaintiff's credibility will also be a question for the jury.

60.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that Plaintiff's credibility will also be a question for the jury.

61.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that Plaintiff's credibility will also be a question for the jury.

62.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that the credibility of all witnesses will also be a question for the jury.

63.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that the credibility of all witnesses will also be a question for the jury.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied.

68.    The Defendant admits that the Plaintiff suffered some injury in the accident. The extent of her injury and reasonableness of her treatment will be for the jury to decide. The Defendant will further state that Plaintiff's credibility will also be a question for the jury.

69.    The Defendant is not a person.

70.    The Defendant is not a person.

71.    Admitted.

72.    Admitted.

73.    Denied. This paragraph is unintelligible.

74.    Denied.

75.    Admitted.

76.    Admitted.

77.    Denied.

78.    Denied.

79.    Admitted.

80.    Denied. This paragraph requests a legal conclusion.

81.    Denied.

82.    Admitted as to GEICO.

83.    The Defendant does not have sufficient information to form a belief as to this paragraph of the Plaintiff's Complaint and therefore, denies the same.

84.    The Defendant admits that on or about May 1, 2019, the subject policy issued by GEICO was in full force and effect which provided uninsured/underinsured motorist coverage on the subject vehicle at the time of the subject accident, subject to any off-set of liability coverage paid on behalf of Amber R. Whiddon.

85.    Denied.

86.    Denied.

87.    Denied.

88.    The Defendant admits that on or about May 1, 2019, the subject policy issued by GEICO was in full force and effect which provided $100,000 in uninsured/underinsured motorist coverage for four vehicles at the time of the subject accident, subject to any off-set of liability coverage paid on behalf of Amber R. Whiddon.

89.    Admitted, subject to the liability coverage off-set.

90.    Denied.

91.    Denied.

92.    Denied.

93.    Denied.

94.    Admitted. There is a pocketbook dispute between the Plaintiff and GEICO as to the value of her claim.

95.    Admitted.

96.    Denied.

97.    Denied.

98.    Denied.

99. Denied as stated. There is a pocketbook dispute between the Plaintiff and GEICO.

100. Admitted the Plaintiff is making an uninsured motorist claim against GEICO and there is a pocketbook dispute between the Plaintiff and GEICO.

In response to the last paragraph of the Plaintiff's Complaint beginning with "As a result, Atorria Finley," the Defendant denies that the Plaintiff is entitled to a judgment against it in any amount whatsoever.

**THIRD DEFENSE**
**AFFIRMATIVE DEFENSES**

AND NOW, having answered the Plaintiff's Complaint, paragraph by paragraph, and having denied any liability in the premises, the Defendant would raise the following special and affirmative matters:

**FIRST AFFIRMATIVE DEFENSE**

The Defendant specifically denies each and every allegation contained in the Plaintiff's Complaint not specifically hereinafter admitted, regardless of paragraph number or lack thereof, or paragraph letter or lack thereof.

**SECOND AFFIRMATIVE DEFENSE**

The Defendant would affirmatively show that Atorria Finley was acting in a careless and unreasonable manner in the operation of her vehicle at all times pertaining hereto, and that such negligence included, but was not limited to: a) failure to maintain her vehicle in a free, reasonable and easy control; b) failure to keep a proper lookout to observe that which should have been seen; c) failure to yield the right of way; d) failure to exercise reasonable care and safety; and e) other acts of negligence which will be shown at the trial of this cause. All such negligence on the part of Atorria Finley was the sole proximate cause or proximate contributing cause of the accident in question and the Defendant would show that the Plaintiff is not entitled to recover any sum whatsoever herein and particularly from the Defendant or, alternatively, that any damages sustained

by the Plaintiff, all being strictly denied, should be diminished and apportioned by the degree of negligence attributable to Atorria Finley.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff's bad faith claims and claims for extra contractual damages are precluded under the common law of Mississippi.

**FOURTH AFFIRMATIVE DEFENSE**

The Defendant acted in good faith at all times in its dealings with the Plaintiff.

**FIFTH AFFIRMATIVE DEFENSE**

Affirmatively and alternatively, that the sole, proximate or contributing cause of the Plaintiff's damages, if any, was a pre-existing disease, lesion, or condition which was not caused by nor aggravated by nor the responsibility of the Defendant.

**SIXTH AFFIRMATIVE DEFENSE**

Affirmatively and alternatively, that the Plaintiff has failed to mitigate her damages, if any.

**SEVENTH AFFIRMATIVE DEFENSE**

Affirmatively and alternatively, that the acts or actions or omissions of other persons or entities for whom the Defendant has no responsibility or liability constituted independent, intervening and superseding causes of the Plaintiff's damages, if any. Accordingly, Plaintiff is entitled to recover nothing from the Defendant.

**EIGHTH AFFIRMATIVE DEFENSE**

All actions taken by GEICO have been made in good faith and based upon legitimate interpretations of the terms, provisions and exclusions of the agreement embodied within the subject policy and any dispute between the parties is a mere pocket book dispute.

**NINTH AFFIRMATIVE DEFENSE**

The Plaintiff's claims for punitive damages under Mississippi law violate the Defendant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution

and Article 3, Sections Fourteen, Twenty-Three, Twenty-Six and Twenty-Eight of the Mississippi Constitution because, among other things: (1) Mississippi's standard for an award of punitive damages is so vague and indefinite that it does not give the Defendant fair notice of the kind of conduct that would subject Defendant to punishment or the severity of the penalty that the State may impose; (2) the jury is not provided with standards of sufficient clarity, objectivity and uniformity for determining either the appropriateness or the appropriate amount of punitive damages awarded; (3) the jury is not instructed on the limits of punitive damages or is imposed by the applicable principals of punishment and deterrents; (4) an award of punitive damages is not subject to judicial review on the basis of objective and uniform standards; (5) Plaintiff's claims exceed the legitimate interest of the State of Mississippi in punishing unlawful conduct and deterring its repetition; (6) Plaintiff's claims are grossly excessive in comparison to the civil or criminal penalties that could be imposed for comparable conduct; and (7) there is no basis to infer that a lessor deterrent would not adequately protect the interests of Mississippi citizens.

## TENTH AFFIRMATIVE DEFENSE

With respect to Plaintiff's demand for punitive damages, the Defendant specifically incorporates by reference any and all standards of limitations regarding the determination and/or enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996), *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which punitive damages may be awarded.

## TWELFTH AFFIRMATIVE DEFENSE

The Defendant pleads all rights, privileges, and defenses available to it under Miss. Code Ann. § 11-1-65.

**THIRTEENTH AFFIRMATIVE DEFENSE**

The Defendant affirmatively pleads Miss. Code Ann. §11-1-60.

**FOURTEENTH AFFIRMATIVE DEFENSE**

The Defendant specifically reserves the right to present other and further defenses after further discovery and investigation herein.

AND NOW, having fully answered the allegations of the Complaint filed herein against it, and having denied any liability in the premises whatsoever, the Defendant requests that it be dismissed here from with its costs expended and to be extended.

RESPECTFULLY SUBMITTED, this the 24th day of August, 2021.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT**

BY: S\ *Edward C. Taylor*
OF COUNSEL

**CERTIFICATE OF SERVICE**

I, the undersigned counsel, of counsel for Defendant, Government Employees Insurance Company, do hereby certify that on this date, I electronically filed the foregoing *Defendant Government Employees Insurance Company's Answer and Defenses to Plaintiff's Complaint* with the Clerk of the Court using the MEC system which sent notification to such filing to the following:

James R. Foster II, Esq.
1019 Legion Ln.
Ocean Springs, MS 39564-2927
jay@jayfosterlaw.com

Steven Paul Savarese Jr., Esq.
Holtsford Gilliland Higgins Hitson & Howard PC
6483 Van Buren St.
Daphne, AL 36526-7586
*ssavarese@hglawpc.com*

THIS the 24th day of August, 2021.

S\ *Edward C. Taylor*
OF COUNSEL

EDWARD C. TAYLOR - BAR #9043
etaylor@danielcoker.com
DANIEL COKER HORTON AND BELL, P.A.
1712 15TH STREET, SUITE 400
POST OFFICE BOX 416
GULFPORT, MS 39502-0416
TELEPHONE: (228) 864-8117
FACSIMILE: (228) 864-6331
7021-134972

IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI

ATORRIA FINLEY PLAINTIFF

VS. CAUSE NO. 18CO1:21-CV-00424

AMBER R. WHIDDON, JOHN DOE INS. CO. #1, JOHN DOE INS. CO. #2 AND GEICO INSURANCE COMPANY DEFENDANTS

**DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY'S NOTICE OF SERVICE OF FIRST SET OF INTERROGATORIES AND FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO THE PLAINTIFF**

TO: James R. Foster II, Esq.
1019 Legion Ln.
Ocean Springs, MS 39564-2927
*jay@jayfosterlaw.com*

Steven Paul Savarese Jr., Esq.
Holtsford Gilliland Higgins Hitson & Howard PC
6483 Van Buren St.
Daphne, AL 36526-7586
*ssavarese@hglawpc.com*

Notice is hereby given that Defendant, Government Employees Insurance Company (hereinafter "GEICO") (incorrectly identified as "GEICO Insurance Company in the Plaintiff's Complaint), has this date served in the above-entitled action:

1. *Defendant Government Employees Insurance Company's First Set of Interrogatories Propounded to the Plaintiff;* and

2. *Defendant Government Employees Insurance Company's First Set of Requests for Production of Documents Propounded to the Plaintiff.*

The undersigned retains the originals of the above discovery pleadings as custodian thereof pursuant to the local rules.

RESPECTFULLY SUBMITTED, this the 24th day of August, 2021.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT**

BY: S\ *Edward C. Taylor*
OF COUNSEL

**CERTIFICATE OF SERVICE**

I, the undersigned counsel, of counsel for Defendant, Government Employees Insurance Company, do hereby certify that on this date, I electronically filed the foregoing *Defendant Government Employees Insurance Company's Notice of Service of First Set of Interrogatories and First Set of Requests for Production of Documents Propounded to the Plaintiff* with the Clerk of the Court using the MEC system which sent notification to such filing to the following:

James R. Foster II, Esq.
1019 Legion Ln.
Ocean Springs, MS 39564-2927
jay@jayfosterlaw.com

Steven Paul Savarese Jr., Esq.
Holtsford Gilliland Higgins Hitson & Howard PC
6483 Van Buren St.
Daphne, AL 36526-7586
*ssavarese@hglawpc.com*

THIS the 24th day of August, 2021.

S\ *Edward C. Taylor*
OF COUNSEL

EDWARD C. TAYLOR - BAR #9043
etaylor@danielcoker.com
DANIEL COKER HORTON AND BELL, P.A.
1712 15TH STREET, SUITE 400
POST OFFICE BOX 416
GULFPORT, MS 39502-0416
TELEPHONE: (228) 864-8117
FACSIMILE: (228) 864-6331
7021-134972

IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI

ATORRIA FINLEY PLAINTIFF

VS. CAUSE NO. 18CO1:21-CV-00424

AMBER R. WHIDDON, JOHN DOE INS. CO. #1, JOHN DOE INS. CO. #2 AND GEICO INSURANCE COMPANY DEFENDANTS

**DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY'S MOTION TO COMPEL WAIVER OF MEDICAL PRIVILEGE OF PLAINTIFF ATORRIA FINLEY**

COMES NOW, Government Employees Insurance Company (hereinafter "GEICO") (incorrectly identified as "GEICO Insurance Company in the Plaintiff's Complaint), Defendant in the above cause, by and through its attorneys of record, Daniel Coker Horton & Bell, P.A., and moves the Court for an Order waiving the medical privilege existing between Atorria Finley and each and every physician and each and every hospital in which she has been treated, authorizing each of the physicians and hospitals examining and/or treating Atorria Finley for any physical or emotional condition at issue in this lawsuit to disclose fully to the Defendant and/or its counsel, their medical records regarding Plaintiff, Atorria Finley, whether said records were generated before or after the subject accident, and in support of said Motion would show unto this Court as follows, to-wit:

1.

The Motion is filed pursuant to Miss. Code Ann. §13-1-21 and Rule 503, Mississippi Rules of Evidence, whereby Atorria Finley has placed certain aspects of her medical condition at issue by filing this lawsuit.

2.

The Defendant would show the filing of this lawsuit constitutes a waiver of the medical privilege as to any medical information relative to allegations upon which this cause is based and the Defendant is entitled to said information by virtue of the aforesaid Rule.

WHEREFORE, PREMISES CONSIDERED, the Defendant moves for an Order waiving the medical privilege existing by and between Atorria Finley and each of her physicians and each of the hospitals or clinics in which she received any examination and/or treatment either as an outpatient or as an inpatient, or received any treatment or therapy or examination whatsoever, authorizing each of the said physicians and each of the said hospitals to produce the Defendant all medical records regarding Atorria Finley.

RESPECTFULLY SUBMITTED, this the 24th day of August, 2021.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT**

BY: S\ *Edward C. Taylor*
OF COUNSEL

## CERTIFICATE OF SERVICE

I, the undersigned counsel, of counsel for Defendant, Government Employees Insurance Company, do hereby certify that on this date, I electronically filed the foregoing *Defendant Government Employees Insurance Company's Motion to Compel Waiver of Medical Privilege of Plaintiff Atorria Finley* with the Clerk of the Court using the MEC system which sent notification to such filing to the following:

James R. Foster II, Esq.
1019 Legion Ln.
Ocean Springs, MS 39564-2927
jay@jayfosterlaw.com

Steven Paul Savarese Jr., Esq.
Holtsford Gilliland Higgins Hitson & Howard PC
6483 Van Buren St.
Daphne, AL 36526-7586
*ssavarese@hglawpc.com*

THIS the 24th day of August, 2021.

S\ *Edward C. Taylor*
OF COUNSEL

EDWARD C. TAYLOR - BAR #9043
etaylor@danielcoker.com
DANIEL COKER HORTON AND BELL, P.A.
1712 15TH STREET, SUITE 400
POST OFFICE BOX 416
GULFPORT, MS 39502-0416
TELEPHONE: (228) 864-8117
FACSIMILE: (228) 864-6331
7021-134972

IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI

ATORRIA FINLEY PLAINTIFF

VS. CAUSE NO. 18CO1:21-CV-00424

AMBER R. WHIDDON, JOHN DOE INS. CO. #1, JOHN DOE INS. CO. #2 AND GEICO INSURANCE COMPANY DEFENDANTS

**DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY'S NOTICE OF SERVICE OF RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS**

TO: James R. Foster II, Esq.
1019 Legion Ln.
Ocean Springs, MS 39564-2927
*jay@jayfosterlaw.com*

Steven Paul Savarese Jr., Esq.
Holtsford Gilliland Higgins Hitson & Howard PC
6483 Van Buren St.
Daphne, AL 36526-7586
*ssavarese@hglawpc.com*

Notice is hereby given that Defendant, Government Employees Insurance Company (hereinafter "GEICO") (incorrectly identified as "GEICO Insurance Company in the Plaintiff's Complaint), has this date served in the above-entitled action:

1. *Defendant Government Employees Insurance Company's Responses to Plaintiff's First Set of Requests for Admissions.*

The undersigned retains the original of the above discovery pleading as custodian thereof pursuant to the local rules.

RESPECTFULLY SUBMITTED, this the 24th day of August, 2021.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT**

BY: S\ *Edward C. Taylor*
OF COUNSEL

## CERTIFICATE OF SERVICE

I, the undersigned counsel, of counsel for Defendant, Government Employees Insurance Company, do hereby certify that on this date, I electronically filed the foregoing *Defendant Government Employees Insurance Company's Notice of Service of Responses to Plaintiff's First Set of Requests for Admissions* with the Clerk of the Court using the MEC system which sent notification to such filing to the following:

James R. Foster II, Esq.
1019 Legion Ln.
Ocean Springs, MS 39564-2927
jay@jayfosterlaw.com

Steven Paul Savarese Jr., Esq.
Holtsford Gilliland Higgins Hitson & Howard PC
6483 Van Buren St.
Daphne, AL 36526-7586
*ssavarese@hglawpc.com*

THIS the 24th day of August, 2021.

S\ *Edward C. Taylor*
OF COUNSEL

EDWARD C. TAYLOR - BAR #9043
etaylor@danielcoker.com
DANIEL COKER HORTON AND BELL, P.A.
1712 15TH STREET, SUITE 400
POST OFFICE BOX 416
GULFPORT, MS 39502-0416
TELEPHONE: (228) 864-8117
FACSIMILE: (228) 864-6331
7021-134972

In The County Of
Forrest County, Mississippi

Atorria Finley PLAINTIFF

v. CAUSE NO. 18CO1:21-cv-00424

Amber R. Whiddon, et. al. DEFENDANT

Notice of Intent

The plaintiff gives notice of intent to offer into evidence at the trial of this matter the Records Affidavit of Betty Rouse, Records Custodian for Leslie Ethridge, and copies of the medical records of Leslie Ethridge, regarding the care and treatment of the plaintiff with reference to this case.

Respectfully submitted,

s/Jay Foster

Certificate of Service

I certify that I have electronically filed a copy of the above which sent this to all counsel of record,

So certified, August 24, 2021.

s/Jay Foster

Law Office of Jay Foster, No. 9830
1019 Legion Lane
Ocean Springs, MS 39564
(228) 872-6000
(228) 875-6687 (fax)
email: Jay@JayFosterLaw.com

In The County Of
Forrest County, Mississippi

Atorria Finley PLAINTIFF

v. CAUSE NO. 18CO1:21-cv-00424

Amber R. Whiddon, et. al. DEFENDANT

Notice of Intent

The plaintiff gives notice of intent to offer into evidence at the trial of this matter the Records Affidavit of Betty Rouse, Records Custodian for Gulf States Diagnostic Imaging, and copies of the medical records of Gulf States Diagnostic Imaging, regarding the care and treatment of the plaintiff with reference to this case.

Respectfully submitted,

s/Jay Foster

Certificate of Service

I certify that I have electronically filed a copy of the above which sent this to all counsel of record,

So certified, August 24, 2021.

s/Jay Foster

Law Office of Jay Foster, No. 9830
1019 Legion Lane
Ocean Springs, MS 39564
(228) 872-6000
(228) 875-6687 (fax)
email: Jay@JayFosterLaw.com

In The County Court of Forrest County

Atorria Finley PLAINTIFF

v. Cause No. 18CO1:21-cv-00424

Geico Insurance Company, et. al. DEFENDANT

PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL MEDICAL AUTHORIZATION

The plaintiff files this and states as follows:

**The Mississippi Supreme Court Prohibits Violations of Hippa**

1. The defendant failed to attach a proposed medical authorization. Therefore, the Motion should be dismissed.

2. Assuming the defense can get past the above problem, there is still no relief for what I expect the medical authorization to say.

3. While medical privilege is waived regarding relevant related treatment of work injuries, the Mississippi Supreme Court has explicitly states that it is unlawful for a court to require a plaintiff to sign documents giving up federally protected HIPAA rights regarding medical treatment irrelevant to the underlying claim. *Scott By and Through Scott v. Flynt*, 704 So. 2d 998 (Miss. 1996).

4. If, the medical authorization that the defense wants the plaintiff to sign allows the defense to get any medical record, regardless of what it was about, this is contrary to the law.

5. Although the law provides for a privilege waiver for a plaintiff who puts a particular medical condition at issue, it does not allow the defense to get anything it wants.

6. In fact, this privilege waiver does not trump federal law nor does it: (a) allow a party to discover medical conditions wholly unrelated to the medical condition at issue; (b) allow a party

to do guerilla discovery of the opposing party's medical condition without knowing what information is being sought; or, (c) allow a party to discover private medical records without an opportunity to object.

7.      The plaintiff requests this Court deny any such Motion because it not only disregards the appropriate mechanisms for discovery of medical information, it obligates plaintiffs to unboundedly relinquish federally protected rights in order to file a lawsuit.

**The Defense Is Requesting That This Court Declare The HIPPA Statute Unconstitutional**

8.      The defense's argument requires this Court to declare the HIPPA statutes unconstitutional.  This carries a very heavy burden and is one the defense cannot meet.  In fact, a mere state statute is presumed to be constitutional and to prove it unconstitutional a party must prove this beyond a reasonable doubt.  *State v. Jones*, 726 So. 2d 572, 573-4 (Miss. 1998).  The defense could not even overturn a state statute so it is certainly impossible to declare HIPPA unconstitutional.   Since the defense wants the Court to violate HIPPA statutes, there is no possibility of this Court doing that without declaring the entire chapter unconstitutional.

9.      In fact, the defense's argument would effectively amend 45 CFR 160 to require special action, i.e., requiring the plaintiff or this Court, to somehow amend or delete portions of the statutes regarding medical privacy laws.  Such additional requirement, if desired, is the business of Congress.  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, 130 S. Ct. 2149, 2156, 176 L. Ed. 2d 998 (2010) ("We must enforce plain and unambiguous statutory language according to its terms."); *Camp v. Stokes*, 41 So. 3d 685, 686 (Miss. 2010) (when a statute is plain on its face, there is no room for statutory construction)).

10.      Following the Defendant's argument to it's logical conclusion, what the defense is really arguing is that 45 CFR 160 is unconstitutional and should be rewritten or stricken by this Court.

This argument carries a very heavy burden and it is one in which the defense simply cannot overcome. *State v. Jones*, 726 So. 2d 572, 573-4 (Miss. 1998).

11. 45 CFR Section 164.302 Applicability, states, "A covered entity or business associate ***must*** comply with the applicable standards, implementation specifications, and requirements of this subpart with respect to electronic protected health information of a covered entity." *Id.* (Emphasis added). 45 CFR Section 164.306 Security Standards, states,

> (a) General requirements. Covered entities and business associates ***must*** do the following:
>
> > (1) Ensure the confidentiality, integrity, and availability of ***all*** electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits.
> >
> > (2) Protect against any reasonably anticipated threats or hazards to the security or integrity of such information.
> >
> > (3) Protect against any reasonably anticipated uses or disclosures of such information that are not permitted or required under subpart E of this part.
> >
> > (4) Ensure compliance with this subpart by its workforce.

*Id.* (Emphasis added).

12. Therefore, any medical provider must comply with these provisions. Violations of the HIPPA statue means a party can incur civil and monetary penalties.

13. The clear and unambiguous language of 45 CFR 164.510 reads: "A covered entity may use or disclose protected health information, ***provided*** that the individual is informed ***in advance*** of the use or disclosure and ***has the opportunity to agree to or prohibit or restrict the use or disclosure***, in accordance with the applicable requirements of this section. The covered entity may orally inform the individual of and obtain the individual's oral agreement or objection to a

use or disclosure permitted by this section." *Id.* (emphasis added).

14. Thus, HIPPA clearly prohibits the discovery of medical information unrelated to this case. For example, if the medical authorization the defense wants the plaintiff to sign is unlimited, it would allow counsel opposite to get information about the plaintiff's sexually transmitted diseases. I am not saying the plaintiff has any sexually transmitted diseases but what I am saying is if the medical authorization the defense wants the plaintiff to sign is unlimited, it would allow this information. And for what purpose? None.

15. Moreover, our Appellate Courts have repeatedly held, that it is the domain of the Mississippi Legislature to rewrite a statute (and it is no different for Congress). For example, in *Finn v. State*, 978 So. 2d 1270, 1272 (Miss. 2008), the Appellate argued for insertion of language in a statute that was not present in the statute. The Mississippi Supreme Court held, in pertinent part,

> A plain-language reading of Section 41-29-313 does criminalize the possession of greater than fifteen grams of pseudoephedrine. The state points to the language in the statute highlighting the fact that the word "or" is a conjunctive used to link two or more alternatives. It appears that the provision for the weight measurement of fifteen grams is an alternative to the measure of 250 dosage units. Finn is attempting to insert a condition that is not stated in the law; he wants the weight of the drug only to be considered as an alternative when the drug does not appear in dosage form. To do so would be to tread on the domain of the Legislature, as it alone has the power to create and modify statutes. It is not the province of the Court to insert requirements where the Legislature did not do so. *See Miss. Ethics Comm'n v. Grisham,* 957 So.2d 997, 1003 (Miss.2007).

*Id.* at 1272-73. *See Also Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct. 1938, 1949 (2016) ("But our constitutional structure does not permit this Court to "rewrite the statute that Congress has enacted.")).

16. Simply put, there is absolutely no difference between what the Appellate in *Finn* argued and what the defense is arguing here. The defense wants to delete language from a statute and amend it with some sort of unknown language that the defense gets to choose. The defense

wants to insert this unknown language into the statute itself. Thus, the defense wants this Court to find that HIPPA requires the plaintiff or this Court to somehow delete the words "must" and "ensure" from the statutes so the defense can get any medical record it wants.

17.     There simply is no such language in this statute allowing such a deletion or amendment by the defense or this Court. Since there is no such language in this statute, it is impossible for the defense to force the plaintiff or this Court to ignore what the statutes plainly state.

18.     As the *Finn* Court held, "To do so would be to tread on the domain of the Legislature as it alone has the power to create and modify statues. It is not the province of the Court to insert requirements where the Legislature did not do so." *Id.*

19.     As a result, based on this fact alone, the defense simply cannot get past this hurdle. As a result, the defense is not entitled to any relief and the plaintiff requests that this Court deny any Motion.

**The Mississippi Supreme Court And HIPPA Prohibits Unlimited Access To Any Medical Record The Defense Wants**

20.     A plaintiff cannot be ordered to provide unfettered access to all relevant and non-relevant HIPAA protected medical information.

21.     The medical authorization is an unconditional waiver of all medical information, related and unrelated, disregards precedent from the Mississippi Supreme Court, as well as federal law. The Mississippi Supreme Court has plainly stated that: "[u]nder no circumstances should a court order require a person to release medical information *unconditionally*. . .Such a disregard for a patient's right to confidentiality will not be tolerated." *Scott By and Through Scott v. Flynt*, 704 So. 2d 998 (Miss. 1996).

22.     In *Scott*, as here, the defense sought to have the plaintiff sign an unconditional medical

waiver of all medical information, without regard to relevancy. *Id.* The *Scott* Court held such a blanket waiver violates patient privacy and is not needed because relevant medical information is "automatically waived for the purposes of and only to the extent to which the plaintiff's condition is put in issue." *Id.*

23. As a result, this Motion violates both state and federal law because it grants the defense total access to any and all of the plaintiff's medical information.

24. A patient's right to keep medical information private is considered to be of paramount importance, subjugated only when that information becomes relevant due to a plaintiff placing the specific information in contention. The request in this case goes far beyond any normal waiver and requires the plaintiff to waive privilege absolutely, with no limitations on relevance, injury, or time frame.

25. In fact, the same limited medical authorization that I have used in every case for over ten years. Since that time, I cannot remember one Motion to Compel a different medical authorization from counsel opposite except from this particular defense lawyer. The reason is obvious: I am correct on the law.

**The Motion Would Grants The Defense Permission To Engage In Non-Consensual Ex-parte Communications With Plaintiff's Medical Providers**

26. The Motion would grant an unlimited medical authorization to get any medical record regardless of relevance and to have ex parte contact when doing so. Even if this Court decides to adopt orders compelling waiver in addition to the discovery methods currently at the defense's disposal, this particular method creates immeasurable issues with the discovery process. Compelling the plaintiff to sign a blanket waiver authorizes the defense to conduct discovery whenever it wishes, without notifying opposing counsel or this Court.

27.    Likewise, the Motion compelling the signing of what we believe is an unlimited medical

authorization creates a scenario where a party could gain access to undiscoverable information

before I have a chance to object.  If the Order is allowed, the Court must fashion a solution for

the inevitable discovery of discoverable information, whereas the rules this Court already has in

place prevents this issue.

28.    The plaintiff requests this Court deny the defense Motion to unconditionally waive

federal and state protected medical information and that it enter an Order directing the defense to

first use traditional discovery methods to obtain the sought information or to use a limited

medical release so that medical records unrelated to this case are not given to the defense.

Wherefore, premises considered, the plaintiff requests that this Court deny the Motion.

Respectfully submitted,

BY: s/Jay Foster

Certificate of Service

I certify that I have electronically filed a true and correct copy of the above and foregoing which sent this to all counsel of record.

So certified, August 25, 2021.

s/Jay Foster
Bar No. 9830

Prepared by:
Jay Foster
1019 Legion Lane
Ocean Springs, MS 39564
(228) 872-6000
(228) 875-6687 (fax)
Email: Jay@JayFosterLaw.com

**41 So.3d 685**

**Curley CAMP, Howard Camp and Marty Tate d/b/a Tate Logging v. Clint STOKES.**

**No. 2008-CT-01076-SCT.**

**Supreme Court of Mississippi.**

**July 29, 2010.**

Carter Dobbs, Jr., attorney for appellants.

Clint Stokes, appellee, pro se.

EN BANC.

***ON WRIT OF CERTIORARI***

DICKINSON, Justice, for the Court:

¶ 1. Successful defendants in a trespass-to-timber suit sought statutory[1] attorney fees and expert-witness fees. The trial court held the statute did not apply to successful defendants, and the Court of Appeals affirmed the decision.[2] We granted certiorari, and now reverse.

**BACKGROUND FACTS & PROCEDURAL HISTORY**

¶ 2. The Court of Appeals provided the following succinct recitation of the background facts:

Clint Stokes filed a complaint in the Chancery Court of Monroe County against two brothers, Curley Camp (Curley) and Howard Camp (Howard), and Marty Tate for trespass and wrongful cutting of timber on his land. The Camps filed a counterclaim asking the chancery court to declare an old wire fence to be the proper boundary line.[3]

¶ 3. The chancery court ruled in favor of the Camps, but denied their motion for

[41 So.3d 686]

statutory attorney's fees and expert witness fees, holding that "95-5-10(3) does not apply to successful defendants in a timber trespass case under said statute."

**STANDARD OF REVIEW**

¶ 4. Interpretation of a statute "is a question of law subject to de novo review."[4]

**ANALYSIS**

¶ 5. Mississippi's trespass-to-timber statute, codified at Mississippi Code Section 95-5-10(3), provides in relevant part:

*(3) All reasonable expert witness fees and attorney's fees shall be assessed as court costs in the discretion of the court.* [5]

¶ 6. In holding that subsection (3) was available only as a remedy for a successful plaintiff, the Court of Appeals relied on two decisions, neither of which addresses the issue before us today. In *Teasley v. Buford,*[6] the trial court found that, because the plaintiff had failed to present sufficient evidence to present a claim under Section 95-5-10 to the jury,[7] the *plaintiff* could not seek attorneys' fees under Section 95-5-10(3).[8] The case did not address the question of whether a successful defendant may invoke Section 95-5-10(3).

¶ 7. In *Stockstill v. Gammill,*[9] the trial court declined to award attorney's fees to a prevailing *plaintiff* where the court determined that the defendant had removed the trees mistakenly.[10] This Court did not address the question before us today.

¶ 8. When a statute is plain on its face, there is no room for statutory construction.[11] The plain language of Section 95-5-10(3) states "*[a]ll* ... fees shall be assessed as court costs in the discretion of the court."[12] Nothing



in the statute restricts this provision to successful plaintiffs.

¶ 9. The trial court applied an erroneous legal standard when it declined to allow the Camps to pursue reimbursement of fees allowed by the statute, so we reverse the Court of Appeals and the trial court and remand for further proceedings consistent with this opinion.

¶ 10. **REVERSED AND REMANDED.**

WALLER, C.J., CARLSON AND GRAVES, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.

---------

Notes:

1. Miss.Code Ann. § 95-5-10(3) (Rev.2004).

2. *Camp v. Stokes,* 41 So.3d 697, 700 (Miss.Ct. App.2009).

3. *Id.* at 685.

4. *Arceo v. Tolliver,* 19 So.3d 67, 70 (Miss. 2009) (citing *Sheppard v. Miss. State Highway Patrol,* 693 So.2d 1326, 1328 (Miss.1997)).

5. Miss.Code. Ann. § 95-5-10 (Rev.2004) (emphasis added).

6. *Teasley v. Buford,* 876 So.2d 1070 (Miss.Ct. App.2004).

7. *Id.*

8. *Id.* (emphasis added).

9. *Stockstill v. Gammill,* 943 So.2d 35 (Miss. 2006).

10. *Id.* at 38-40 (emphasis added).

11. *Harrison v. State,* 800 So.2d 1134, 1137 (Miss.2001).

12. Miss.Code Ann. § 95-5-10(3) (Rev.2004) (emphasis added).

---------



**978 So.2d 1270**
**Steven FINN**
**v.**
**STATE of Mississippi.**
**No. 2006-CT-00393-SCT.**
**Supreme Court of Mississippi.**
**April 10, 2008.**

[978 So.2d 1271]

John Carl Helmert, Jr., attorney for appellant.

Office of the Attorney General by Deirdre McCrory, attorney for appellee.

EN BANC.

***ON WRIT OF CERTIORARI***

SMITH, Chief Justice, for the Court.

¶ 1. Steven Finn was charged with violating Mississippi Code Annotated Section 41-29-313(2)(c)(I) (Rev.2005) by possessing greater than fifteen grams of pseudoephedrine, where he knew or should have known that the pseudoephedrine would be used to manufacture a controlled substance. Finn pleaded guilty and was sentenced to five years in the custody of the Mississippi Department of Corrections with three of those years to be suspended. Finn appealed, arguing that Mississippi Code Annotated Section 41-29-313(2)(c)(I) (Rev.2005) did not criminalize the possession of greater than fifteen grams of pseudoephedrine when it was in dosage form. The trial court denied Finn's request for post conviction relief. This Court assigned the case to the Court of Appeals. In a 6-4 decision, the Court of Appeals agreed with Finn and overturned the trial court's judgment. Because we find that the plain language of the statute does, in fact, criminalize possession of greater than fifteen grams of pseudoephedrine, regardless of the form, we reverse the Court of Appeals and affirm the holding of the Lee County Circuit Court.

**FACTS AND PROCEDURAL HISTORY**

¶ 2. At the time of his arrest, Steven Finn was in possession of 180 tablets of pseudoephedrine. The tablets were composed of more than fifty-five grams of pseudoephedrine. The grand jury subsequently indicted Finn under Mississippi Code Annotated Sections 41-29-101 through 187 for possession of greater than fifteen grams of pseudoephedrine, where he knew or should have known that the pseudoephedrine would be used unlawfully to manufacture a controlled substance.

[978 So.2d 1272]

On July 7, 2005, Finn pled guilty. Finn was subsequently sentenced to five years in the custody of the Mississippi Department of Corrections, with three of those years suspended.

¶ 3. In August of 2005, Finn filed a motion for post-conviction relief, arguing that Mississippi Code Annotated Section 41-29-313(2)(c)(i) (Rev.2005) does not criminalize possession of greater than fifteen grams of pseudoephedrine if the pseudoephedrine is in dosage form. Accordingly, Finn asserts that he was charged with a nonexistent crime.

¶ 4. The trial court denied Finn's relief. However, in a six-four decision, the Court of Appeals reversed and rendered the trial court ruling, using the rationale that dosage units are the preferred units of measure for ephedrine and pseudoephedrine. *Finn v. State,* 979 So.2d 1, 3, 2007 WL 1816472, 2007 Miss.App. LEXIS 451, *5 (June 26, 2007). The Court of Appeals reasoned that only when the drug was not in "dosage unit" form was the weight of the drug to be considered. *Id.* The State of Mississippi seeks review by this Court.

¶ 5. The issue before the Court on appeal is:



**WHETHER MISSISSIPPI CODE ANNOTATED SECTION 41-29-313(2)(C)(I) CRIMINALIZES THE POSSESSION OF GREATER THAN FIFTEEN GRAMS IN WEIGHT OF PSEUDOEPHEDRINE WHEN THE DRUG IS IN DOSAGE FORM.**

**STANDARD OF REVIEW**

¶ 6. This Court applies a de novo standard of review to questions of statutory interpretation. *Capital One Servs. v. Page,* 942 So.2d 760, 762 (Miss.2006).

**DISCUSSION**

*I. Plain Meaning.*

¶ 7. The language of Section 41-29-313(2)(c)(i) is at the very core of this appeal. The statute in question makes it "unlawful to purchase, possess, transfer or distribute two hundred fifty (250) dosage units *or* fifteen (15) grams in weight (dosage unit and weight as defined in Section 41-29-139) of pseudoephedrine or ephedrine." Miss.Code Ann. § 41-29-313(2)(c)(i) (Rev.2005) (emphasis added).

¶ 8. "It is well settled that when a court considers a statute passed by the Legislature, the first question before the Court is whether the statute is ambiguous. If the statute is not ambiguous, the court should interpret and apply the statute according to its plain meaning without the aid of principles of statutory construction." *Harrison County Sch. Dist. v. Long Beach Sch. Dist.,* 700 So.2d 286, 288-89 (Miss. 1997) (citing *Miss. Power Co. v. Jones,* 369 So.2d 1381, 1388 (Miss.1979)). The Court of Appeals recognized the statute lacked ambiguity when it stated: "this Court finds the Legislative intent in Section 41-29-313 is clear and unambiguous." *Finn,* 979 So.2d at 3, 2007 Miss.App. LEXIS 451, *5.

¶ 9. A plain-language reading of Section 41-29-313 does criminalize the possession of greater than fifteen grams of pseudoephedrine. The state points to the language in the statute highlighting the fact that the word "or" is a conjunctive used to link two or more alternatives. It appears that the provision for the weight measurement of fifteen grams is an alternative to the measure of 250 dosage units. Finn is attempting to insert a condition that is not stated in the law; he wants the weight of the drug only to be considered as an alternative when the drug does not appear in dosage form. To do so would be to tread on the domain of the Legislature, as it alone has the power to create and

[978 So.2d 1273]

modify statutes. It is not the province of the Court to insert requirements where the Legislature did not do so. *See Miss. Ethics Comm'n v. Grisham,* 957 So.2d 997, 1003 (Miss.2007).

¶ 10. Finn argues that, because Mississippi Code Annotated Section 41-29-313(2)(c)(i) refers to Mississippi Code Annotated Section 41-29-139, weight is to be used only if the drug is not in the form of dosage units. We disagree.

¶ 11. Mississippi Code Annotated Section 41-29-139(c) states, "[f]or any controlled substance that does not fall within the definition of the term `dosage unit,' the penalties shall be based upon the weight of the controlled substance." Miss.Code Ann. § 41-29-139 (Rev.2005). This section specifically provides what is to be done when the controlled substance does not fall within the definition of dosage units. But the statute is silent as to those that do fall within the definition of "dosage units." Here, the drugs Finn possessed did fall into the definition of "dosage unit," and as a result, the above section is inapplicable. When the drug falls under the definition of "dosage unit," the



state has prosecutorial discretion under Mississippi Code Annotated Section 41-29-313 to base the charges on the dosage units or on the weight of the drug. Section 41-29-139 does provide guidance as to how to determine the weight of the drug when it says "[t]he weight set forth refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." This portion of the statute does have direct application to the instant matter, as it governs how the weight of a drug is determined. We hold that, from a plain reading of the statute, it is clear that, in Section 41-21-313, the Legislature criminalized the possession, purchase, transfer or distribution of "two hundred fifty (250) dosage units or fifteen (15) grams of weight ... of pseudoephedrine" and the state has prosecutorial discretion to choose between dosage unit or weight when the drug appears in dosage unit form. Section 41-29-139 does not alter the plain meaning; it only provides guidance as to how to proceed when the drug is not in dosage unit form.

**CONCLUSION**

¶ 12. Finn's interpretation ignores the plain meaning of the statute. The Court of Appeals admitted in its opinion that there was no question of ambiguity in Section 41-29-213(2)(c)(I) but it did not adhere to the plain meaning of the statute. The Court of Appeals erred by reading too much into the "definition" section referenced in the statute. For the reasons stated above, this Court reverses the decision of the Court of Appeals and reinstates the decision of the Lee County Circuit Court.

¶ 13. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

WALLER, P.J., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J. LAMAR, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION JOINED BY DICKINSON, J.

GRAVES, Justice, Dissenting:

¶ 14. The majority of this Court fails to apply the clear, plain language of the applicable statutes in this case. Moreover, the majority's finding that the Court of Appeals should be reversed is erroneous. Because I would have denied the petition for writ of certiorari and would now dismiss

[978 So.2d 1274]

the petition as improvidently granted, I respectfully dissent.

¶ 15. The majority cites the applicable statutory provisions and then ignores the plain language of the statute. Section 41-29-313(2)(c)(i) of the Mississippi Code Annotated states, in relevant part:

> It is unlawful for any person to purchase, possess, transfer or distribute two hundred fifty (250) dosage units or fifteen (15) grams in weight **(dosage unit and weight as defined in Section 41-29-139)** of pseudoephedrine or ephedrine, knowing, or under circumstances where one reasonably should know, that the pseudoephedrine or ephedrine will be used to unlawfully manufacture a controlled substance.

Miss.Code Ann. § 41-29-313(c)(i) (Rev. 2005). Clearly, this language defers to Section 41-29-139, which states, in relevant part:

> The penalties for any violation of this subsection (c) with respect to a controlled substance ... **shall be based on dosage unit** as defined herein or the weight of the controlled substance as set forth herein as appropriate:



**"Dosage unit (d.u.)" means a tablet or capsule,** or in the case of a liquid solution, one (1) milliliter....

**For any controlled substance that does not fall within the definition of the term "dosage unit,"** the penalties shall be based upon the weight of the controlled substance.

The weight set forth refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance.

Miss.Code Ann. § 41-29-139(c) (Rev.2005) (emphasis added).

¶ 16. Finn was in possession of 180 unaltered tablets of pseudoephedrine. Unaltered tablets clearly fall within the definition of "dosage units." Despite the statutory language, the majority incredibly finds that "the statute is silent as to those that do fall within the definition of `dosage units.'" Such a finding is erroneous. The plain language of the statute quoted above requires that, in such case, the penalty "shall be based on dosage unit." Moreover, the majority's finding that because the tablets possessed by Finn "did fall into the definition of `dosage unit'" then "the above section is inapplicable" is erroneous, inexplicable and unsupportable by any rule of statutory construction. The majority opinion is incongruous. Further, without citation to any authority, the majority boldly declares that when "the drug falls under the definition of `dosage unit' the state has prosecutorial discretion ... to base the charges on the dosage units or on the weight of the drug." However, such a finding is contradictory to the plain language of the statute.

¶ 17. Ironically, the majority's end result is to find that some provisions of Section 41-29-139 are applicable, while others are not. However, this logic is flawed. If the portion requiring penalties to be based on a dosage unit does not apply, then neither would the portion allowing weight to include the entire weight of any mixture containing a detectable amount of a controlled substance. Clearly, the evidence contained in the record pertaining to the weight of the pseudoephedrine is highly suspect. The crime lab report indicates that 120 tablets weighed 18.05 grams, while sixty tablets weighed a whopping 37.52 grams, for a total of 55.57 grams. Clearly such amounts do not reflect merely the amount of pseudoephedrine.[1] Additionally, different types of

[978 So.2d 1275]

medication can contain equal amounts of pseudoephedrine, but then vary greatly in the amounts of other ingredients, thereby causing significant fluctuations in the total weight of the tablets. To suggest that prosecutors should be allowed discretion to decide whether to prosecute based on the weight or the number of tablets, when the statute clearly states otherwise, would open the door for differing and unfair treatment of different defendants, who each possessed an equal amount of pseudoephedrine and equal number of tablets, but happened to possess different brands containing differing amounts of other non-precursor ingredients. However, any alteration to the dosage unit would then require application of the weight requirement.

¶ 18. The Court of Appeals correctly found that Section 41-29-313 is clear, unambiguous, and does not provide any discretionary privileges to prosecutors concerning the unit of measurement that must be used in these cases. Furthermore, the Court of Appeals correctly found that Finn is entitled to post-conviction relief. Because I would dismiss the petition for writ of certiorari as improvidently granted, I respectfully dissent.

DIAZ, P.J., JOINS THIS OPINION.



---------------

Notes:

1. These calculations would indicate that the tablets contained more than 150 mg and 625 mg, respectively. The average over-the-counter tablet contains 30 mg of pseudoephedrine, meaning 180 tablets would contain 5,400 mg or 5.4 grams. Further, the average over-the-counter tablet contains 20-30 mg of other or inactive ingredients. Based on this, 250 tablets at a total weight of 60 mg each would weigh 15 grams. Clearly, this is the basis for the statute.

---------------

LAMAR, Justice, Dissenting:

¶ 19. We now have four opinions in this case — a majority and a dissent from the Court of Appeals and a majority and a dissent from this Court. All four opinions declare that the statutes in question, Mississippi Code Annotated §§ 41-29-313 and 41-29-139, are clear, plain, and unambiguous. The only problem is that they do not agree as to what the "plain and unambiguous" language of the statutes means. This is the very definition of ambiguity. Ambiguous means open to more than one interpretation, uncertain, open to several possible meanings, or lacking clarity of meaning. This Court should acknowledge the ambiguity of the statute, rather than ignoring it. The ultimate goal of this Court in interpreting a statute is to discern and give effect to legislative intent. *Anderson v. Lambert,* 494 So.2d 370, 372 (Miss.1986). Because I believe that the decision of this Court fails to do that, I respectfully dissent.

DICKINSON, J., JOINS THIS OPINION.



Page 998

**704 So.2d 998**
**Vivian Faith SCOTT, By and Through Her Mother and Next of Kin, Cynthia Ann SCOTT**
**v.**
**Joel R. FLYNT, M.D.**
**No. 92-IA-00397-SCT.**
**Supreme Court of Mississippi.**
**April 18, 1996.**

Page 999

C. Victor Welsh, III, Pittman Germany Roberts & Welsh, Crymes G. Pittman, Pittman Germany Firm, Jackson, for appellant.

F.M. Turner, III, Bryan Nelson Randolph & Weathers, Sandra S. Mohler, Bryan Nelson Firm, Hattiesburg, for appellee.

F. Hall Bailey, Wise Carter Child & Caraway, Jim P. Brantley, Susan McDonald, Nashville, TN; John G. Jones, Jackson, for amicus curiae.

Before DAN LEE, C.J., and PITTMAN and JAMES L. ROBERTS, Jr., JJ.

JAMES L. ROBERTS, Jr., Justice, for the Court:

INTRODUCTION

This case presents the Court with a policy decision regarding the scope of the waiver for the medical privilege as contemplated by Mississippi Rule of Evidence 503 and whether or not ex parte contacts with medical providers are permissible under the rules of discovery in the Mississippi Rules of Civil Procedure. Having reviewed the rules and comments, and attempting to balance the interests and concerns of all, the Court today finds that the scope of the waiver of the medical privilege is limited to relevant medical information to the injury placed in issue by the plaintiff. Further, our rules of evidence and procedure prohibit the admissibility of any evidence obtained from any ex parte contacts without prior patient consent by opposing counsel with medical providers of the plaintiff. Accordingly, the lower court's ruling ordering the plaintiff to execute an unconditional waiver of her medical privilege is reversed and this case is reversed and remanded.

STATEMENT OF THE CASE

This case began December 2, 1991, with the filing of Vivian Faith Scott's complaint, by and through her mother, Cynthia Ann Scott, in the Forrest County Circuit court seeking civil damages against Dr. Joel R. Flynt for negligence (medical malpractice). The alleged medical malpractice occurred on September 21, 1989, during the delivery of Vivian Faith Scott. Dr. Flynt filed his Answer on February 18, 1992, denying the claim and alleging several defenses.

Discovery began and Dr. Flynt subsequently filed his Motion To Compel Medical Waiver seeking to have the circuit court require the plaintiff to unconditionally waive her medical privilege to permit ex parte conversations by the defendant with any and all health care providers of the plaintiff. The plaintiff filed her respective response alleging that the Mississippi Rules of Civil Procedure and her constitutional right to privacy under both the Mississippi and United States Constitution prohibited any such ex parte contacts. The plaintiff contended that she would only allow discovery of her relevant medical records through formal discovery. However, Forrest County Circuit Court Judge Richard W. McKenzie entered an Order on April 2, 1992, granting the requested waiver ordering the plaintiff to execute the unconditional medical waiver and permitting ex parte conferences by the defendants with any medical provider of the plaintiff.



On April 22, 1992, the plaintiff filed her Petition For Extraordinary Relief with the Mississippi Supreme Court. The motion was presented to a three-justice panel which ordered

Page 1000

that all discovery of medical information in the matter was to be stayed until further order of the Court. Additionally, the panel found that the petition presented two interrelated questions of law about which there was a substantial basis for a difference of opinion requiring the Court to treat the Petition for Extraordinary Relief as an Interlocutory Appeal.

The two interrelated questions of law, as determined by the panel, for resolution of this dispute are:

(1) THE SCOPE OF THE MEDICAL WAIVER AS CONTEMPLATED BY MISSISSIPPI RULE OF EVIDENCE 503, AND

(2) WHETHER OR NOT EX PARTE CONTACTS WITH MEDICAL PROVIDERS ARE PERMISSIBLE UNDER THE RULES OF DISCOVERY IN THE MISSISSIPPI RULES OF CIVIL PROCEDURE.

The Forrest County Circuit court subsequently entered an Order staying all other proceedings in this action pending the resolution of the Interlocutory Appeal by the Court.

STATEMENT OF THE FACTS

This case began September 21, 1989, when Cynthia Scott was admitted to the Forrest General Hospital in Hattiesburg, Mississippi, under the supervision of Dr. Flynt for delivery of her baby girl, Vivian Faith Scott. Dr. Flynt also provided Cynthia with prenatal services. Vivian allegedly suffered shoulder dystocia resulting in partial permanent paralysis of her left arm and shoulder following her delivery. However, the issue of medical malpractice is not presently before the Court.

Approximately two years and two months later, the present complaint for medical malpractice was filed. The parties began discovery creating the disputes over the waiver of plaintiff's medical privilege and the discoverability of her medical information which is presently before the Court on interlocutory appeal.

DISCUSSION OF ISSUES

(1) WHAT IS THE SCOPE OF THE MEDICAL WAIVER AS CONTEMPLATED

BY MISSISSIPPI RULE OF EVIDENCE 503?

The plaintiff, Vivian, contends that the scope of the medical waiver under M.R.E. 503 and Miss.Code Ann. § 13-1-21(4) is limited and not unconditional as ordered by the trial court. She urges the Court to hold that the waiver is limited to relevant medical information only. Vivian also contends that a plaintiff in a medical malpractice or personal injury action should be allowed to review any requested medical information prior to its disclosure to prevent persons with personal medical knowledge of the plaintiff from disclosing irrelevant and possibly embarrassing personal information about her medical history. Vivian urges that compounded problems in the form of civil suits for invasion of privacy will result unless such precautions are taken to prevent the disclosure of protected irrelevant privileged information. We agree.

In support of a limited waiver under M.R.E. 503 and § 13-1-21, Vivian points out one case in particular in which we held that the waiver of the medical privilege was a limited and not an unconditional waiver. Sessums v. McFall, 551 So.2d 178 (Miss.1989). Sessums involved injuries to a motorcyclist after being hit by an automobile.



Sessums held: (1) that testimony of the physician who treated the injured plaintiff about information obtained on the cause of the accident was privileged and should have been excluded when the plaintiff objected to the testimony; (2) introduction into evidence of his medical bills and testimony by the plaintiff on cross-examination, denying he made the statements to his physician did not waive his physician/patient privilege as to the cause of the accident; and (3) the failure to exclude the physician's testimony about the cause of the accident was prejudicial error. Id. at 180-81.

The essence of Sessums was that filing suit and submitting evidence on his injuries only waived his medical privilege to the extent of those injuries. Id. at 180. Notably however, Sessums was a personal injury suit against a

Page 1001

third party and not against his physician for medical malpractice. Nevertheless, we find that the waiver is to be treated the same in medical malpractice cases as well.

Dr. Flynt's contrary viewpoint is that the mere fact of having filed a medical malpractice action means that all information from whatever source which was previously privileged is no longer protected according to his interpretation of M.R.E. 503 and § 13-1-21. He further contends that the waiver acts to allow ex parte contacts before the formal discovery processes begin. Therefore, according to Dr. Flynt, when a plaintiff files or gives notice of a claim to be filed for medical malpractice against a physician, that such actions create an automatic and absolute waiver of any medical privilege concerning any of the plaintiff's medical history. We disagree.

Mississippi Rule Of Evidence 503. Physician and Psychotherapist-Patient Privilege states in relevant part:

(b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing (A) knowledge derived by the physician or psychotherapist by virtue of his professional relationship with the patient, or (B) confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

(c) Who May Claim the Privilege.

The privilege may be claimed by the patient, his guardian or conservator, or the personal representative of a deceased patient. The person who was the physician or psychotherapist at the time of the communication is presumed to have the authority to claim the privilege but only on behalf of the patient.

(d) Exceptions.

....

(3) There is no privilege under this rule as to an issue of breach of duty by the physician or psychotherapist to his patient or by the patient to his physician or psychotherapist.

(e) In an action commenced or claim made against a person for professional services rendered or which should have been rendered, the delivery of written notice of such claim or the filing of such an action shall constitute a waiver of the privilege under this rule.

(f) Any party to an action or proceeding subject to these rules who by his or her pleadings places in issue any aspect of his or her physical, mental or emotional condition thereby and to that extent only waives the



privilege otherwise recognized by this rule. This exception does not authorize ex parte contact by the opposing party.

M.R.E. 503 (amended October 13, 1992) (emphasis added).

Advisory Committee Historical Note

Effective October 13, 1992, Rule 503(f) was amended to state that the rule is inapplicable in contexts other than hearings or discovery proceedings and to delete reference to worker's compensation proceedings. 603-605 So.2d XXI (West Miss.Cas.1993). [1]

Comment

Subsection (c) is reflective of Miss.Code Ann. § 13-1-21. The privilege belongs to the patient, and only the patient can waive it.

....

Under the third exception [503(D)(3) ] there is no privilege when a controversy develops between physician and patient, such as in a dispute over medical fees or medical malpractice.

Subsection (e) is required by considerations of fairness and policy, and simply provides that the institution of a claim, either by delivery of written notice or by the filing of an action, operates to waive the privilege as to any medical information relevant to the claim.

Page 1002

The primary impact of subsection (f) will be in personal injury actions, although the exception by its terms is not so limited. This subsection, like the remainder of these rules, has no application outside the context of hearing or discovery processes in the Mississippi Rules of Civil Procedure and other rules of court. See Rules 101 and 1101. By virtue of this exception a party who seeks

recovery of damages for a physical, mental or emotional injury waives the privilege for purposes of that action only and to the extent that he or she has put his or her physical, mental or emotional condition in issue by his or her pleadings. With respect to any aspect of the party's physical, mental or emotional condition not put in issue by his or her pleadings, the privilege remains in full force and effect. Rules of Evidence by their definition govern the admissibility of evidence at trial. Subsection (f) is not a procedural rule and cannot be used as such.

(M.R.E. 503 Comment amended October 13, 1992) (emphasis added).

The primary statute in question is Mississippi Code Annotated Section 13-1-21. § 13-1-21.

Miss.Code Ann. § 13-1-21. Communications privileged; exception.

(1) All communications made to a physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such party shall not be required to disclose the same in any legal proceeding except at the instance of the patient or, in case of the death of the patient, at the instance of his personal representative or legal heirs in case there be no personal representative, or except, if the validity of the will of the decedent is in question, at the instance of the personal representative or any of the legal heirs or any contestant or proponent of the will.

(2) Waiver of the medical privilege of patients regarding the release of medical information to health care personnel, the State Board of Health to local health departments, made to comply with Sections 41-3-15, 41-23-1 and 41-23-2 and related rules, shall be implied. The medical privilege likewise shall be waived to allow any physician, osteopath, dentist,



hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor to report to the State Department of Health necessary information regarding any person afflicted with any communicable disease or infected with the causative agent thereof who neglects or refuses to comply with accepted protective measures to prevent the transmission of the communicable disease.

(3) Willful violations of the provisions of this section shall constitute a misdemeanor and shall be punishable as provided for by law. Any physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist, or chiropractor shall be civilly liable for damages for any willful or reckless and wanton acts or omissions constituting such violations.

(4) In any action commenced or claim made after July 1, 1983, against a physician, hospital, hospital employee, osteopath, dentist, nurse, pharmacist, podiatrist, optometrist or chiropractor for professional services rendered or which should have been rendered, the delivery of written notice of such claim or the filing of such an action shall constitute a waiver of the medical privilege and any medical information relevant to the allegation upon which the cause of action or claim is based shall be disclosed upon the request of the defendant, or his or her counsel.

(5) In any disciplinary action commencing on or after July 1, 1987, against a medical physician, an osteopathic physician or a podiatrist pursuant to the provisions of Sections 73-25-1 through 73-25-39, 73-25-51 through 73-25-67, 73-25-81 through 73-25-95 and 73-27-1 through 73-27-19, waiver of the medical privilege of a patient to the extent of any information other than that which would identify the patient shall be implied.

Miss.Code Ann. § 13-1-21 effective from and after July 1, 1988 (emphasis added).

Under the language of M.R.E. 503 it could appear that the waiver of the medical privilege is to possibly be treated in different

Page 1003

ways depending upon what type of suit is being tried. Under M.R.E. 503(d)(3), medical malpractice suits are addressed specifically and no reference is made to other personal injury claims. Next, under M.R.E. 503(f), the claim of medical malpractice is not specifically addressed, and the rule speaks in terms of waivers being limited to the extent that the suit places a plaintiff's physical, emotional or mental condition in issue. However, the comment clearly says that even though the primary impact of subsection (f) will be in personal injury actions, that the exception by its terms is "not so limited." M.R.E. 503(f) Comment. Accordingly, the scope of the waiver for the medical privilege is not to be treated any differently in a medical malpractice case than it is in any other typical personal injury case; i.e. it is limited to relevant medical history in medical malpractice cases as well.

M.R.E. 503(e) and Miss.Code Ann. § 13-1-21(4) both refer to relevant information although admittedly M.R.E. 503(d)(3) does not. However, based upon common sense of fair play and equal justice, we find that the medical information which is discoverable because of the waiver of the privilege is limited to all relevant medical history. Such medical history can concern either the negligence on behalf of the doctor or the injuries by a third person that have been placed in issue by the plaintiff in either a medical malpractice or garden variety personal injury suit.

Otherwise, an open-ended total waiver would or might allow the defendant to possess personal irrelevant information which should still be privileged since it would have no bearing upon the outcome of the case as it would not concern any injury placed in



issue by the complaint and would likewise be inadmissible at trial on relevancy grounds. On the flip side of the coin, to allow the plaintiff to stand behind the privilege regarding information possessed by the alleged tortfeasor physician or other physicians would allow a plaintiff to possibly be compensated unjustly when the real cause of the injury might have been a preexisting injury which the jury would not know about because of the privilege. However, our intent is that such problems will not result from this interpretation and that the privilege will remain protected.

In sum, the Court finds the following regarding the scope of M.R.E. 503 and the applicability of Miss.Code Ann. § 13-1-21. If a suit is filed on either medical malpractice grounds or other grounds placing the plaintiff's condition in issue, then the plaintiff's medical privilege regarding any relevant medical information from whatever source is automatically waived for the purposes of and only to the extent to which the plaintiff's condition is put in issue. The determination of the relevancy of medical information which cannot be worked out on amicable terms between opposing counsel, is to be resolved by a judicial relevancy hearing. However, under no circumstances should a court order or require a person to release medical information unconditionally as in this case. Such disregard for a patient's right to confidentiality will not be tolerated by this Court.

(2) ARE EX PARTE CONTACTS WITH MEDICAL PROVIDERS PERMISSIBLE

UNDER THE RULES OF DISCOVERY IN THE MISSISSIPPI

RULES OF CIVIL PROCEDURE?

There is a national split of authority on the propriety of ex parte contacts and, at first glance, this would appear to be a civil procedure question. However, the rules of civil procedure send us back to the rules of evidence to determine what is discoverable when the information sought falls under a privilege. M.R.C.P. 26(b)(1) tells us that the scope of discovery allows a party to discover any matter not privileged which is relevant to the issues raised by the claims or defenses.

The methods of discovery are set forth in M.R.C.P. 26(a) which states that a party "may" obtain discovery in seven methods. Ex parte contacts are neither excluded nor included under the seven methods. This could mean that an ex parte contact is not considered a formal discovery mechanism and thus not governed by the rules set forth for formal discovery mechanisms making the

Page 1004

use of ex parte contacts permissible. [2] However, the silence in the rule on ex parte contacts could also mean that such a practice is unacceptable. [3]

It is understood that evidence does not have to be admissible to be discoverable, only relevant. Likewise, it is also understood that the objection that evidence sought would ultimately be inadmissible does not prohibit its discoverability so long as it is "reasonably calculated to lead to the discovery of admissible evidence." M.R.C.P. 26(b)(1). Naturally, this opens up the question of who determines when and what information is relevant for the particular purpose of the suit and the manner by which it is to be obtained?

We urge that parties mutually agree in this area whenever possible. If the parties can not come to terms on what information is relevant and disclosable giving the plaintiff an opportunity to confer with the physician prior to disclosure, then it is to be handled by relevancy hearings. This allows the plaintiff the needed protection of confidentiality which the legislature and the Court intended. But the defendants allege that requiring a court order from a relevancy hearing to obtain or



know what can be obtained would add unnecessary expense and delay to the litigation. However, the need for patient confidentiality outweighs that of judicial expeditiousness. A patient's privilege of medical confidentiality is of paramount importance and must be afforded protection.

The defendant provides examples of other courts holding that the use of ex parte contacts is permissible and orders plaintiffs to execute the requisite waiver forms. See Doe v. Eli Lilly & Co., 99 F.R.D. 126 (D.D.C.1983). Eli Lilly & Co. ordered the plaintiff to execute an authorization form allowing his treating physicians, at their option, to engage in informal ex parte interviews with defense counsel because, absent the existence of a privilege, which the court found to be waived by the filing of the complaint, a party cannot restrict access to witnesses. We do not find the reasoning of Eli Lilly & Co. persuasive or reasonable. [4]

Another significant argument about ex parte interviews revolves around who is the holder of the privilege. M.R.E. 503(c) makes the patient the holder of the privilege. Therefore, a patient is deprived of this right when a physician is allowed to speak ex parte because the physician then decides how, when and what information is to be waived when he is not the holder of said privilege. See Wisconsin ex rel. Klieger v. Alby, 125 Wis.2d 468, 373 N.W.2d 57, 61 (1985) ("If the court orders private conferences outside the scope of discovery, the patient loses control of the privilege, a result the statutes clearly do not contemplate." [5] ; Jaap v. District

Page 1005

Court, 191 Mont. 319, 623 P.2d 1389 (1981). Our rules of evidence clearly give the privilege to the patient and say further that the physician can claim the privilege, but only on behalf of the patient. The Comment to M.R.E. 503(c) also states that only the patient can waive the privilege. Therefore, to allow the

physician to speak ex parte would be inconsistent with our rules. Accordingly, we find that the rules only permit the patient to waive the privilege and that to allow the treating physician to do so would deprive the patient of that very right.

More recent decisions, and particularly the only one in our Fifth Circuit treating it as a case of first impression, while recognizing the national split of authority on the issue, have held to the contrary and criticized Eli Lilly & Co., Horner v. Rowan, 153 F.R.D. 597, 601-602 (S.D.Texas 1994) held that:

the appropriate rule should prohibit ex parte interviews between defense counsel and plaintiff's treating physicians unless, with advance notice thereof, plaintiff specifically and unconditionally authorizes same; this is the only way in which the physician/patient privilege can be held inviolate.... Therefore, while there is conflicting authority, in order to preserve the integrity of the physician/patient privilege, a defendant must be limited to the formal methods of discovery enumerated by the Rules of Civil Procedure, absent the plaintiff's express consent to counsel's ex parte contact with his treating physicians.... Moreover, while Rule 509 [Texas' medical privilege] removes the privilege in regard to information concerning any medical condition in issue, information not related to that condition remains privileged. The decision to waive the privilege as to unrelated matters belongs to the patient; yet, if ex parte interviews are permitted, it would be left to the physician to determine what information is subject to disclosure and what remains privileged. The doctor is not only unskilled in making that determination, any error in judgment could, in addition, expose the physician to liability arising from an improper disclosure.... Requiring the contact with treating physicians to occur only in the context of formal discovery relieves the physician of this responsibility, protects him from inadvertent liability and protects any information still privileged by assuring



plaintiff's representative will be in a position to timely assert the privilege where appropriate. Formal discovery, on the record, with notice and an opportunity to other parties to be present and to participate in the proceeding, is simply the fairest and most satisfactory means of obtaining discovery from a treating physician. Besides, this rule regulates only how defense counsel may obtain information from a treating physician, not the substance of what is discoverable.

Id. at 601-02; (citations omitted) (emphasis added).

The rationale and holding of Horner v. Rowan is the most sound and reasonable solution for handling the disclosure of relevant privileged medical information. Accordingly, we adopt the rationale of Horner v. Rowan for use in Mississippi state courts regarding the waiver and treatment of medical privileges where the plaintiff's physical, mental or emotional condition has been placed in issue.

Dr. Flynt takes the position that ex parte contacts are appropriate anytime and certainly when a plaintiff puts his condition at issue. He alleges that to treat a doctor differently than other fact witnesses goes against our holding in Scafidel v. Crawford, 486 So.2d 370 (Miss.1986). Scafidel simply held that it was not error to allow a testifying physician to testify as both a fact and expert witness. Id. at 372. Therefore, Dr. Flynt maintains that it is impermissible to prevent a doctor from making ex parte contacts as a fact witness when a physician can be a fact witness, and other fact witnesses are permitted to make ex parte contacts. We find this argument without merit.

The language in M.R.E. 503(f) states specifically that ex parte contacts by the opposing party are not authorized by the exception addressing the privilege in the context of

Page 1006

other personal injury suits. Therefore, the defendants pose the question of whether this also applies to M.R.E. 503(d)(3) cases, i.e. medical malpractice cases?

According to the Comment, M.R.E. 503(f) is not limited to other personal injury actions. The defendants allege that the last sentence of M.R.E. 503(f) simply says that ex parte contacts are not authorized, which does not necessarily mean that they are prohibited. The logical conclusion is that ex parte contacts by the opposing party are prohibited in both medical malpractice and other personal injury cases as well, which limits the gathering of the medical information to the presently available formal discovery mechanisms absent express patient consent once the lawsuit has begun.

The defendants have raised the concern as to how rules of evidence can be applied outside of a legal proceeding. Also, the rules are for the purpose of governing the admissibility of evidence, so what can allow them to control someone's actions in a nonlegal setting ex parte, i.e. ex parte contacts?

The evidentiary prohibition against ex parte contacts by the opposing party presumably can not prevent a person, i.e. a physician of the plaintiff, from physically speaking ex parte. However, the rule against such will be used to prevent the admissibility of any evidence gathered ex parte just as in Horner v. Rowan and Karsten v. McCray. This produces the result desired by the amended rule.

Our rules of evidence and rules of civil procedure are only applicable during a court proceeding which includes discovery. M.R.E. 1101. The question of ex parte contacts and the waiver of a privilege only come into play during a court proceeding. Therefore, our rules are not applicable and can neither allow



nor prohibit a defendant from speaking ex parte with the plaintiff's physician. We simply note with caution that those who violate these rules do so at their own risk.

The procedure offered for obtaining medical information by the Mississippi Defense Lawyers Association, (hereinafter MDLA), in their Amicus Curiae brief on behalf of Dr. Flynt and other physicians, does not seek to permit unmonitored informal ex parte interviews. Rather, the MDLA suggests the circuit court issue an order requiring the plaintiff to execute a medical waiver form authorizing the release of medical information as to the physical, mental and/or emotional condition placed in issue by the lawsuit upon the filing of any type of personal injury suit. But, MDLA concedes and suggests that it would be proper and tolerable to require the defendant to give the plaintiff notice of any interviews it anticipated conducting prior to doing so to allow the plaintiff to either be present or speak with the physician to assure that he does not breach a privilege. The only significant difference between the MDLA approach and our holding today is that if the patient does not gives his consent to his physician to speak ex parte, that the physician will do so at his own risk and the information divulged will be inadmissible. Under the MDLA approach, the patient would only be required to be given notice, not the right to prevent the disclosure and require the formal discovery processes to be used instead. We find that it is necessary for the patient to be given notice and have the right to prevent any ex parte contacts. It is not the substance of the information that is being regulated, it is the method of how it is obtained. See, Horner, at 601.

In the event a physician speaks, then the only rules applicable at that point in the absence of a court proceeding are his professional ethical codes of conduct concerning confidentiality. Avenues of redress are available in the event of the breach of such rules, but cases have shown that such deterrents may not be sufficient in the all important area of patient confidentiality.

In the event a waiver occurs, it is only for relevant information in a court proceeding, which includes all hearings, trials, and discovery measures. In the event irrelevant privileged information is disclosed, and an attempt is subsequently made to use the information in a court proceeding, our rules of evidence and procedure will prohibit such use.

Page 1007

The waiver is not in any circumstance to be unconditional to allow the disclosure of irrelevant privileged information. The waiver should always be limited to the disclosure of relevant information to the injury placed in issue. Privileged, irrelevant information should always be protected from use.

Vivian contends that to allow a physician to unconditionally disclose medical information about her will be a civil violation for invasion of privacy. Dr. Flynt maintains that to prevent him from divulging medical information because of a protected privilege would amount to a violation of his due process rights, his right to effective representation of counsel and a fair trial. Dr. Flynt further contends that his rights to due process etc., are specifically enumerated rights under the Mississippi and U.S. Constitutions which take precedence over the right to privacy which is not specifically stated in the constitutions.

The Court bases its decision today on statutory interpretation grounds making it unnecessary to address the constitutional concerns. As this Court stated in Kron v. Van Cleave, 339 So.2d 559, 563 (Miss.1976), "courts will not decide a constitutional question unless it is necessary to do so in order to decide the case." This claim is decided upon state statutory and evidentiary

law grounds making it unnecessary to discuss the constitutionality. Thus, this issue is not addressed as it is unnecessary to dispose of this case.

One additional argument submitted by the defendant is that to allow the plaintiff to be present whenever medical information is sought by the defendant about the plaintiff would infringe upon the attorney work product privilege and deny the defendant his right to effective representation. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); M.R.C.P. 26(b)(3). The attorney work product privilege would not necessarily be violated under these circumstances. Our present discovery mechanisms allow counsel to be present during any other deposition. Therefore, there is no difference in the issues in this case rendering this argument without merit.

CONCLUSION

The rules, as amended, were intended to be applied as follows. When a personal injury suit is pending, the medical privilege with regard to relevant information is automatically waived, making it unnecessary to have an automatic court order issued, to permit both parties equal access to all of the relevant information needed to get to the truth. The manner by which the relevant information is to be acquired is limited to either a voluntary consensual disclosure by the patient who is the holder of the privilege or the formal discovery process to prevent any breach of confidentiality. We hold that evidence obtained from ex parte contacts, without prior patient consent, by the opposing party which is subsequently used during a legal proceeding, is inadmissable. This procedure allows the defendant access to the needed information, and does not improperly allow the plaintiff to be protected behind the shield of the privilege. In sum, the relevant information is disclosed and the plaintiff's confidentiality is protected.

REVERSED AND REMANDED.

DAN LEE, C.J., PRATHER and SULLIVAN, P.JJ., and PITTMAN, McRAE, SMITH and MILLS, JJ., concur.

BANKS, J., concurs with separate written opinion joined by PITTMAN, J.

BANKS, Justice, concurring:

I concur with the result reached by the majority and all that is said except with one particular. While our rules of evidence do not sanction ex parte contact in my view neither do they prohibit them. The majority's desire to discourage such contact, while salutary, finds no support in our rules of evidence. Those rules, as noted by the majority, govern proceedings in court but have no application otherwise. One who obtains information not otherwise privileged without recourse to the processes of court should not for, solely that reason, have the evidence barred. In my view, duties on the part of physicians and other professionals to hold client communications in confidence which emanate from professional standards and elsewhere are sufficient to protect the public.

Page 1008

We need not erect an evidentiary barrier for that purpose. The risk of liability for unsanctioned disclosure is sufficient to that task.

PITTMAN, J., joins this opinion.

---------------

1 The Advisory Committee Historical Note appears in the 1995 Mississippi Rules of Court.

2 See, e.g., Trans-World Investments v. Drobny, 554 P.2d 1148 (Alaska 1976); Green v. Bloodsworth, 501 A.2d 1257 (Del.Super.Ct.1985); Coralluzzo v. Fass, 450 So.2d 858 (Fla.1984), but recently superseded



by statute prohibiting ex parte contacts as stated in Acosta v. Richter, 1996 WL 15522, 671 So.2d 149- (Fla.1996); Samms v. Colorado, 908 P.2d 520 (Colo.1996); Steinberg v. Jensen, 194 Wis.2d 439, 534 N.W.2d 361 (1995).

3 See, e.g., Weaver v. Mann, 90 F.R.D. 443 (D.N.D.1981); Acosta v. Richter, 1996 WL 15522, 671 So.2d 149 (Fla.1996); Jaap v. District Court, 191 Mont. 319, 623 P.2d 1389 (1981); Johnson v. District Court, 738 P.2d 151 (Okl.1987).

4 The real threat of ex parte contacts is best understood in light of Karsten v. McCray, 157 Ill.App.3d 1, 109 Ill.Dec. 364, 509 N.E.2d 1376 appeal denied, 117 Ill.2d 544, 115 Ill.Dec. 400, 517 N.E.2d 1086 (1987); (wherein Illinois held that a plaintiff's treating physicians could not be interviewed ex parte and that the fruits of the unauthorized interviews would be barred from being introduced). See, also Philip H. Corboy, EX PARTE CONTACTS BETWEEN PLAINTIFF'S PHYSICIAN AND DEFENSE ATTORNEYS: PROTECTING THE PATIENT-LITIGANT'S RIGHT TO A FAIR TRIAL, 21 Loy.U.Chi.L.J. 1001 (1990).

5 Notably Klieger has been overruled by Steinberg v. Jensen, 194 Wis.2d 439, 534 N.W.2d 361 (1995) because of an expansive subsequent interpretation the Wisconsin Court of Appeals had been giving Klieger. However, Steinberg reaffirms the Klieger position that the patient is the holder of the privilege. Steinberg additionally set forth a similar position taken by the Court in this case by recognizing that ex parte contacts are not absolutely prohibited as rules of evidence do not control matters other than those during judicial proceedings, and that the plaintiff must be given prior notice of the intended contact by opposing counsel, and finally, that the disclosure of prejudicial confidential information by a plaintiff's treating physician can be inadmissible.

Steinberg v. Jensen, 194 Wis.2d 439, 534 N.W.2d 361, 371-373 (1995).



**726 So.2d 572**

**STATE of Mississippi, the Jackson Public School District and Hinds County Agriculture High School District**
**v.**
**Bergie JONES, Doris Powe, Mary Barry, John Anthony, Mary Hunter and Catherine Knight.**

**No. 96-CA-00937-SCT.**

**Supreme Court of Mississippi.**

**July 2, 1998.**

**Rehearing Denied August 27, 1998.**

Michael C. Moore, Attorney General, Rickey T. Moore, Sp. Asst. Attorney General, Jackson, W. David Watkins, Pamela W. Dill, Perry Sansing, Adams & Reese, Jackson, for Appellants.

John F. Hawkins, John L. Maxey, II, Maxey Wann & Begley, Jackson, for Appellees.

Before PRATHER, C.J., SMITH AND WALLER, JJ.

PRATHER, Chief Justice, for the Court:

***I. INTRODUCTION***

¶ 1. This suit arises from the interpretation of Miss.Code Ann. § 37-7-307, the statute pertaining, in part, to lump-sum payment of accrued leave for retiring public school teachers. Prior to 1994, there was no statutory provision for such payment. However, in 1994, the Legislature amended § 37-7-307 to provide for the payment of accumulated leave exceeding the maximum amount that may be credited for retirement purposes to retiring certificated[1] teachers at the rate paid to substitute teachers by the last school district in which the teacher was employed.

¶ 2. In 1995, the Legislature again amended Miss.Code Ann. § 37-7-307 to allow the retiring teacher to opt to receive payment for all unused accumulated leave at the substitute-teacher

[726 So.2d 573]

rate. In 1996, Miss.Code Ann. § 37-7-307 was amended to allow retiring certificated teachers to receive payment for a maximum of thirty days of unused leave at the substitute-teacher rate. The amendment also restricted payment to leave accumulated in the last school district in which the certificated teacher was employed. The 1996 amendment was scheduled to become effective July 1, 1996.

¶ 3. The appellees (a group of public school teachers) sought declaratory judgment in the First Judicial District of the Hinds County Chancery Court. Specifically, the teachers requested that the 1995 and 1996 amendments to the statute be declared unconstitutional, and that the State be enjoined from acting under these amendments. The teachers also sought a declaration that they were entitled to payment at the regular rate for all accumulated leave, regardless of the School District in which the leave accumulated.

¶ 4. After hearing the parties' arguments, the chancellor ruled that the statutory amendments lacked a rational basis and were unconstitutional, insofar as they applied to teachers who were hired prior to July 1, 1996. She ordered the State to pay retired teachers at their regular rate of pay for all days of accrued leave, regardless of the School District in which the leave accumulated. The State appealed, and this Court stayed the order of the trial judge, pending the appeal.

¶ 5. The State raises the following issues for consideration by this Court:



**A. Whether the chancellor erred in holding that the statute violates the Constitution?**

**B. Whether the chancellor erred in rewriting the statute?**

¶ 6. On cross-appeal, the teachers raise the following issue:

**C. Whether the chancellor erred in not fashioning the complete relief to which the appellees are entitled?**

¶ 7. This Court finds that the appellees have failed to meet their heavy burden of proving that the statutory enactments were not rationally related to a legitimate government interest. Furthermore, the Legislature is the appropriate entity to determine the question of lump-sum payment for leave accumulated by retiring teachers. For this reason, the judgment of the trial court is reversed and rendered in favor of the State of Mississippi.

***II. LEGAL ANALYSIS***

**A. Whether the chancellor erred in holding that the statute violates the Constitution?**

**B. Whether the chancellor erred in rewriting the statute?**

¶ 8. The State contends that the chancellor erred in declaring unconstitutional the amendments to Miss.Code Ann. § 37-7-307. The State further contends that the chancellor's ruling, in effect, rewrote the statute.

¶ 9. The standard for reviewing the constitutionality of a statute is well-settled: "This Court will strike down a statute on constitutional grounds only where it appears beyond all reasonable doubt that such statute violates the Constitution." *Wells v. Panola County Bd. of Educ.*, 645 So.2d 883, 888 (Miss.1994) (emphasis added). *See also Mississippi Comm'n on Judicial Performance v. Russell*, 691 So.2d 929, 942 (Miss.1997) ( "When a statute can be interpreted either as constitutional or unconstitutional, we have long held that we adopt the constitutional construction.... If possible, we will construe it so as `to enable it to withstand the constitutional attack and to carry out the purpose embedded in the [statute].'"). Indeed,

> the legislative enactment is cloaked with a presumption of constitutionality, and in order to rebut this presumption the unconstitutionality must appear beyond reasonable doubt. *Mississippi Power Co. v. Goudy*, 459 So.2d 257, 263 (Miss.1984). It is not this Court's duty to look for factual possibilities or scenarios that would create conflict with the statute, thereby rendering the statute unconstitutional. Rather, this Court's duty is to interpret the Act and envision facts and scenarios in which the statute could be held constitutional.
>
> [726 So.2d 574]
>
> * * *
>
> [I]n *Aikerson v. State*, 274 So.2d 124 (Miss. 1973), this Court said:
>
> It is a general rule in construing statutes this Court will not only interpret the words used, but will consider the purpose and policy which the legislature had in view of enacting the law. The court will then give effect to the intent of the legislature. *State Highway Commission v.*



> *Coahoma County,* 203 Miss. 629, 37 So.2d 287 (1947).

*Secretary of State v. Wiesenberg,* 633 So.2d 983, 989-90 (Miss.1994).

¶ 10. Thus, the teachers in this case have a "very heavy burden" in contesting the constitutionality of a statute. *Moore v. Board of Supervisors of Hinds County,* 658 So.2d 883, 887 (Miss.1995). The sole constitutional theory advanced in this case is that the statutory amendments violated the substantive due process rights of the teachers/appellees.

> The Fourteenth Amendment to the United States Constitution provides in part that no State shall "deprive any person of life liberty, or property, without due process of law...." In *Turrentine v. Brookhaven, Miss. School Dist.,* 794 F.Supp. 620 (S.D.Miss.1992), the court noted that in determining whether a statute violates the due process clause, it must first be determined which standard of review applies. A statute implicating a "suspect class," such as race, or interfering with the exercise of a fundamental right, such as voting, is subject to strict scrutiny. Absent a suspect class or a fundamental right, a reviewing court will apply a less stringent standard of review, the "rational relation" test. *Id.* at 624. The United States Supreme Court has stated:
>
> > If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied.
>
> *Nebbia v. People of State of New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934); *See also PruneYard Shopping Center v. Robins,* 447 U.S. 74, 84-85, 100 S.Ct. 2035, 2042-2043, 64 L.Ed.2d 741 (1980).
>
> Section 14 of Article 3 of the Mississippi Constitution provides that "(n)o person shall be deprived of life, liberty, or property except by due process of law." We have stated:
>
> > When applied to substantive rights [the due process clause] is now interpreted to mean that the government is without the right to deprive a person of life, liberty, or property by an act that has no reasonable relation to any proper governmental purpose, or which is so far beyond the necessity of the case as to be an arbitrary exercise of governmental power.
>
> *Albritton v. City of Winona,* 181 Miss. 75, 97, 178 So. 799, 804 (1938).

*Wells,* 645 So.2d at 893.

¶ 11. Neither party asserts that teachers are a suspect class. Furthermore, the right to lumpsum payment for accumulated leave upon retirement is not guaranteed in the federal or State Constitutions. The only testimony in this case was that of the teachers, each of whom claimed that they "expected" to be compensated for all their accumulated leave days at their regular rate of pay. However, all of these teachers began teaching long before the lump-sum payment



for accumulated leave was even contemplated by the statute. Furthermore, there was no evidence that this "expectation" was part of the teachers' contracts. The types of "expectations" to which the teachers testified were discredited by the United States Supreme Court long ago, in the case of *Pennie v. Reis,* 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426 (1889).

¶ 12. In *Pennie,* the Court held that a police officer's estate had no vested right to insurance benefits, when he died after a death benefit statute was repealed:

> The direction of the State, that the fund should be one for the benefit of the police officer or his representative, under certain conditions, was subject to change or revocation at any time, at the will of the legislature. There was no contract on the part of the State that its disposition should always continue as originally provided. Until the particular event should happen upon which
>
> [726 So.2d 575]
>
> the money or a part of it was to be paid, there was no vested right in the officer to such payment. His interest in the fund was, until then, a mere expectancy created by the law, and liable to be revoked or destroyed by the same authority.

*Id.* at 471, 10 S.Ct. 149. *See also Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (in the context of procedural due process, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have

more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests, of course, are not created by the Constitution. Rather they ... stem from an independent source such as state law ..."); *Dodge v. Board of Educ. of Chicago,* 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937) (holding that retired school teacher was not entitled to retirement annuity of $1,500.00, when statutory amendment decreased annuity to $500.00).

¶ 13. Therefore, because this case does not involve a suspect class or a fundamental right, "[u]nder both federal and state due process clauses, it must be shown that the [statute] was rationally or reasonably related to a proper legislative purpose." *Wells,* 645 So.2d at 893; *Mississippi High School Activities Ass'n, Inc. v. Coleman,* 631 So.2d 768, 774 (Miss.1994) ("When no fundamental right is infringed by state action, yet a substantive due process challenge is lodged, the statute (or rule) will be upheld so long as it has a reasonable relation to the State's legitimate purpose.").

¶ 14. The chancellor found that the State had no rational basis for limiting the lump-sum payments to the substitute-teacher rate of pay for thirty days of accumulated leave from the last School District in which the retired teacher was employed. The State asserts that financial "chaos" in local School Districts would be avoided by limiting the lump-sum payment to thirty days accumulated in the last School District in which the teacher was employed. Certainly, the government has a legitimate interest in ensuring the solvency of its School Districts.

¶ 15. Moreover, (although the chancellor ruled that "[t]here is no rational basis for paying them now as substitute teachers, when they served the State as full teachers") the rationale for limiting the payment to the substitute-teacher rate of pay is equally apparent. The State asserts that the substitute-teacher pay is what the School



District would have been responsible for paying, had the teacher chosen to take a leave day (as opposed to allowing it to accumulate). That is, if the teacher took leave, the District paid his or her regular rate of pay and paid a substitute teacher. If the teacher did not take the leave day, the District paid his or her regular rate of pay. Either way, the teacher has already received the regular pay for the days he or she was employed by the School District. Therefore, the substitute-teacher wages for the accumulated days represent what the School District saved when a teacher exhibited dedication and a strong work ethic. Clearly, the statute has a rational relation to a legitimate legislative purpose.

> Although [the trial court's] decision was couched in terms of the arbitrariness of the challenged provisions, we fear that the court below did no more than substitute its policy judgment for that of [the Legislature]. Social and economic legislation... that does not employ suspect classifications or impinge on fundamental rights must be upheld ... when the legislative means are rationally related to a legitimate governmental purpose. Moreover, such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality.

*Hodel v. Indiana,* 452 U.S. 314, 331-32, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981) (citations omitted) (emphasis added).

¶ 16. This Court has consistently "found the conservation of scarce financial resources by school systems to be a proper legislative purpose." *Wells,* 645 So.2d at 894 (citing *Adams v. Petal Municipal Separate School Systems,* 487 So.2d 1329, 1330 (Miss.1986)).

This Court has also recognized the importance of allowing "governmental units to order their fiscal planning." *Wells,* 645 So.2d at 894 (quoting *Jetton v. Jacksonville Electric*

[726 So.2d 576]

*Authority,* 399 So.2d 396, 399 (Fla.Dist. Ct.App.1981)). "In sum, ... to allocate or conserve State fiscal resources—has been held by this Court to be a legitimate legislative goal." *Id.*

¶ 17. Education, particularly in smaller, poorer School Districts would suffer if the School Districts were to be held responsible for large, lump-sum payments like those ordered by the chancellor. Furthermore, the broad lump-sum payments dictated by the chancellor were never contemplated by the Legislature in any of its statutory enactments. The Legislature is the appropriate entity for balancing the importance of fiscal responsibility against the importance of properly rewarding retiring teachers for their years of service.

> The Legislature is the appropriate branch of the government to deal with this matter because it can conduct hearings to determine the extent of the need, the amount of funds required, and the numerous related factors involved. While the legislature can view the full spectrum of the problem, the courts, which do not have the means or facilities to adequately study the problem or provide the remedy, can only deal with the problem on a case by case basis.

*Mississippi Municipal Ass'n, Inc. v. State,* 390 So.2d 986, 988 (Miss.1980) (citations omitted). For these reasons, the State's argument has merit, and the



judgement of the trial court is reversed and rendered.

**C. Whether the chancellor erred in not fashioning the complete relief to which the appellees are entitled?**

¶ 18. On cross-appeal, the teachers assert that the chancellor should not have limited her order to those teachers hired prior to July 1, 1996. As previously stated, however, the statutory enactments are constitutional. Therefore, the cross-appeal need not be addressed.

***III. CONCLUSION***

¶ 19. From the philosophical standpoint, it is easy to see why the chancellor ruled that "the teachers have earned their keep." Teachers are charged with enlightening and inspiring the young people of our State. In large part, the future of our society rests on the shoulders of these very special men and women. In this sense, the teachers have earned more than our citizenry can possibly repay.

¶ 20. Nevertheless, from a constitutional standpoint, the public school teachers have earned what the Mississippi Legislature dictates they have earned. The Legislature is the entity charged with balancing the many competing philosophies with regard to the expenditure of State funds.

¶ 21. The 1994, 1995, and 1996 enactments of Miss.Code Ann. § 37-7-307 pertaining to lump-sum payment of accumulated leave for retiring teachers are constitutional. That is, the amendments are rationally related to the legitimate purpose of fiscal planning and responsibility. For this reason, the ruling of the chancellor in this case must be reversed and rendered in favor of the State of Mississippi.

¶ 22. REVERSED AND RENDERED.

BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR.

McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND JAMES L. ROBERTS, Jr., J., JOINS IN PART.

PITTMAN, P.J., NOT PARTICIPATING.

McRAE, Justice, DISSENTING:

¶ 23. Teachers have a protected property interest in their earned, accumulated leave which constitutes wages earned for services rendered. In this case, the teachers' retirement plan prior to 1994 allowed teachers— state employees—to receive one lump sum payment for accumulated leave upon retirement, at the daily rate at which those teachers were paid normally. Now the Legislature has enacted new versions of Miss.Code Ann. § 37-7-307(5) which effectively deprive the teachers of these contractually guaranteed leave payments. Because this deprivation amounts to a denial of substantive due process and violates the constitutional prohibitions

[726 So.2d 577]

against ex post facto laws and laws impairing contractual obligations, I dissent.

¶ 24. A showing that the State of Mississippi has deprived teachers of a protected interest in life, liberty or property is a prerequisite to their claims alleging denial of their rights to due process. *Shelton v. City of College Station*, 780 F.2d 475, 479 (5th Cir. 1986). To have a property interest in a benefit, a person must have more than an abstract need or desire for it; that person must have a legitimate claim of entitlement to it. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In Mississippi, there is no difference between earned sick pay and earned vacation pay; both are earned and



neither are compensation in lieu of wages. *Lanterman v. Roadway Express, Inc.*, 608 So.2d 1340, 1349 (Miss.1992).

¶ 25. The language of the prior version of Miss.Code Ann. § 37-7-307 created an expectation that certificated teachers in Mississippi would receive all accrued leave payments at the daily rate of employment. These entitlements to payment for accrued leave upon retirement were contractual rights that could not be altered by the Legislature without offending the Due Process Clause of the Mississippi Constitution. These teachers had a contractual relationship with the State of Mississippi, and these contractual rights are property interests pursuant to the Due Process Clause. The rights are certainly more than a unilateral expectation. Even without a determination that there was not a contractual relationship, it is still clear that the plaintiffs here have a property interest in their vested accrued leave payments.

¶ 26. The appellees' reasonable expectation of receiving this contractual obligation is a sufficient allegation of a tangible interest to invoke protection against arbitrary and irrational government action. There is no legitimate purpose for denying these people the right to what they have earned over the course of their employment by the State. These teachers worked under a contractual situation, with the complete understanding that they would be compensated not as substitute employees, but as full time employees. Unfortunately, the Legislature ignored their legitimate expectations, reneging on the State's earlier promises, on which these teachers relied.

¶ 27. The majority reasons that the Legislature's actions do not violate due process because they are rationally related to further a legitimate government interest, namely to avoid "financial chaos" and to ensure the solvency of statewide school districts. However, there is nothing to support the argument by the State that future retirement benefits eventually would equal those that these teachers were entitled to receive in the form of lump-sum payments of accrued leave. The chancellor below was correct in finding that the teachers were deprived of a significant property interest.

¶ 28. Additionally, the Legislature's decision to amend Miss.Code Ann. 37-7-305(5) impairs a contractual obligation to these teachers and, in effect, imposes an ex post facto law. These teachers entered into a contract with the State of Mississippi with the understanding that upon retirement, they would be entitled to receive payment for accrued, unused leave time. By changing the law, the Legislature affected the contracts of teachers employed by the State. Those teachers employed after the effective date of the law, depending on whether they were hired in 1994, 1995, or 1996, would be entitled to receive their leave payments upon retirement at the reduced rates under their new contracts. These teachers were on notice that the contractual terms would be changed. However, those teachers employed prior to the initial reduction are entitled to receive payment in accordance with *their* contracts of employment, which would give them one lump sum payment for accumulated leave upon retirement, at the daily rate at which those teachers were paid normally. The State is constitutionally bound to those contracts, because the Legislature cannot pass laws which impair the obligation of contracts. Miss. Const. art. 3, § 16. The majority seems to ignore this obligation, however, by allowing the State to cap the number of compensable days at a maximum of thirty. Further, by upholding the amendments, the majority upholds ex post facto laws, which

[726 So.2d 578]

are also constitutionally prohibited. Miss. Const. art. 3, § 16 ("Ex post facto laws, or laws impairing the obligation of contracts, shall not be passed"). These amendments clearly have a retroactive effect. Even teachers who



were employed by the State prior to the effective dates of the relevant amendments may be subject to receiving less compensation for their vested, unused leave than they expected when they were hired. The majority has given the State a license to ignore its contractual obligations to those persons recognized by the majority as guarantors of the future of our society. Is this the kind of respect that our public school teachers should expect from this Court?

¶ 29. For these reasons, I dissent. As to the direct appeal, I would affirm, finding that the statute under review violates the constitutional guarantee of substantive due process and violates the constitutional prohibition against the passing of ex post facto laws and laws impairing the obligation of contracts.

SULLIVAN, P.J., JOINS THIS OPINION.

JAMES L. ROBERTS, Jr., J., JOINS IN PART.

---------

Notes:

1. Miss.Code Ann. § 37-7-307(1) (1996) defines a certificated employee as "any employee of a public school district required to hold a valid certificate by the Commission on Teacher and Administrator Education, Certification and Development."

---------



**130 S.Ct. 2149**
**560 US ___**
**176 L. Ed. 2d 998**

**Bridget HARDT, Petitioner,**
**v.**
**RELIANCE STANDARD LIFE INSURANCE CO.**

**No. 09-448.**

**Supreme Court of United States.**

**Argued April 26, 2010.**
**Decided May 24, 2010.**

[130 S.Ct. 2150]

COPYRIGHT MATERIAL OMITTED.

[130 S.Ct. 2151]

COPYRIGHT MATERIAL OMITTED.

[130 S.Ct. 2152]

John R. Ates, Alexandria, VA, for petitioner.

Pratik A. Shah, for the United States as amicus curiae, by special leave of the Court, supporting the petitioner.

Nicholas Q. Rosenkranz, Washington, DC, for respondent.

Ann K. Sullivan, Elaine Inman Hogan, Crenshaw, Ware & Martin, P.L.C., Norfolk, VA, John R. Ates, Counsel of Record, Ates Law Firm, P.C., Alexandria, VA, for petitioner.

Nicholas Quinn Rosenkranz, Washington, DC, Howard M. Radzely, Richard W. Black, Danny E. Petrella, Morgan, Lewis & Bockius LLP, Washington, DC, R. Ted Cruz, Counsel of Record, Morgan, Lewis & Bockius LLP, Houston, TX, A. Lauren Carpenter, Morgan, Lewis & Bockius LLP, Philadelphia, PA, for respondent.

Justice THOMAS delivered the opinion of the Court.

In most lawsuits seeking relief under the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*, "a reasonable attorney's fee and costs" are available "to either party" at the court's "discretion." § 1132(g)(1). The Court of Appeals for the Fourth Circuit has interpreted § 1132(g)(1) to require that a fee claimant be a "prevailing party" before he may seek a fees award. We reject this interpretation as contrary to § 1132(g)(1)'s plain text. We hold instead that a court "in its discretion" may award fees and costs "to either party," *ibid.*, as long as the fee claimant has achieved "some degree of success on the merits," *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

I

In 2000, while working as an executive assistant to the president of textile manufacturer Dan River, Inc., petitioner Bridget Hardt began experiencing neck and shoulder pain. Her doctors eventually diagnosed her with carpal tunnel syndrome. Because surgeries on both her wrists failed to alleviate her pain, Hardt stopped working in January 2003.

In August 2003, Hardt sought long-term disability benefits from Dan River's Group Long-Term Disability Insurance Program Plan (Plan). Dan River administers the Plan, which is subject to ERISA, but respondent Reliance Standard Life Insurance Company decides whether a claimant qualifies for benefits under the Plan and underwrites any benefits awarded. Reliance provisionally approved Hardt's claim, telling her that final approval hinged on her performance in a functional capacities evaluation intended to assess the impact of her carpal tunnel syndrome and neck pain on her ability to work.



Hardt completed the functional capacities evaluation in October 2003. The evaluator summarized Hardt's medical history, observed her resulting physical limitations, and ultimately found that Hardt could perform some amount of sedentary work. Based on this finding, Reliance concluded that Hardt was not totally disabled within the meaning of the Plan and denied her claim for disability benefits. Hardt filed an administrative appeal. Reliance reversed itself in part, finding that Hardt was totally disabled from her regular occupation, and was therefore entitled to temporary disability benefits for 24 months.

[130 S.Ct. 2153]

While her administrative appeal was pending, Hardt began experiencing new symptoms in her feet and calves, including tingling, pain, and numbness. One of her physicians diagnosed her with small-fiber neuropathy, a condition that increased her pain and decreased her physical capabilities over the ensuing months.

Hardt eventually applied to the Social Security Administration for disability benefits under the Social Security Act. Her application included questionnaires completed by two of her treating physicians, which described Hardt's symptoms and stated the doctors' conclusion that Hardt could not return to full gainful employment because of her neuropathy and other ailments. In February 2005, the Social Security Administration granted Hardt's application and awarded her disability benefits.

About two months later, Reliance told Hardt that her Plan benefits would expire at the end of the 24-month period. Reliance explained that under the Plan's terms, only individuals who are "totally disabled from all occupations" were eligible for benefits beyond that period, App. to Pet. for Cert. 36a, and adhered to its conclusion that, based on its review of Hardt's records, Hardt was not "totally disabled" as defined by the Plan. Reliance also demanded that Hardt pay Reliance $14,913.23 to offset the disability benefits she had received from the Social Security Administration. (The Plan contains a provision coordinating benefits with Social Security payments.) Hardt paid Reliance the offset.

Hardt then filed another administrative appeal. She gave Reliance all of her medical records, the questionnaires she had submitted to the Social Security Administration, and an updated questionnaire from one of her physicians. Reliance asked Hardt to supplement this material with another functional capacities evaluation. When Reliance referred Hardt for the updated evaluation, it did not ask the evaluator to review Hardt for neuropathic pain, even though it knew that Hardt had been diagnosed with neuropathy after her first evaluation.

Hardt appeared for the updated evaluation in December 2005, and appeared for another evaluation in January 2006. The evaluators deemed both evaluations invalid because Hardt's efforts were "submaximal." *Id.*, at 37a. One evaluator recorded that Hardt "refused multiple tests ... for fear of nausea/illness/further pain complaints." *Ibid.* (internal quotation marks omitted).

Lacking an updated functional capacities evaluation, Reliance hired a physician and a vocation rehabilitation counselor to help it resolve Hardt's administrative appeal. The physician did not examine Hardt; instead, he reviewed some, but not all, of Hardt's medical records. Based on that review, the physician produced a report in which he opined that Hardt's health was expected to improve. His report, however, did not mention Hardt's pain medications or the questionnaires that Hardt's attending physicians had completed as part of her application for Social Security benefits. The vocational rehabilitation counselor, in turn, performed a labor market



study (based on Hardt's health in 2003) that identified eight employment opportunities suitable for Hardt. After reviewing the physician's report, the labor market study, and the results of the 2003 functional capacities evaluation, Reliance concluded that its decision to terminate Hardt's benefits was correct. It advised Hardt of this decision in March 2006.

After exhausting her administrative remedies, Hardt sued Reliance in the United States District Court for the Eastern District of Virginia. She alleged that Reliance violated ERISA by wrongfully denying

[130 S.Ct. 2154]

her claim for long-term disability benefits. See § 1132(a)(1)(B). The parties filed cross-motions for summary judgment, both of which the District Court denied.

The court first rejected Reliance's request for summary judgment affirming the denial of benefits, finding that "Reliance's decision to deny benefits was based on incomplete information." App. to Pet. for Cert. 42a. Most prominently, none of the functional capacities evaluations to which Hardt had submitted had "assessed the impact of neuropathy and neuropathic pain on Ms. Hardt." *Ibid.* In addition, the reviewing physician's report "was itself incomplete"; the basis for the physician's "medical conclusions [wa]s extremely vague and conclusory," *ibid.*, and the physician had "failed to cite any medical evidence to support his conclusions," *id.*, at 43a, or "to address the treating physicians' contradictory medical findings," *id.*, at 44a. The court also found that Reliance had "improperly rejected much of the evidence that Ms. Hardt submitted," *id.*, at 45a, and had "further ignored the substantial amount of pain medication Ms. Hardt's treating physicians had prescribed to her," *id.*, at 46a. Accordingly, the court thought it "clear that Reliance's decision to deny Ms. Hardt long-term disability benefits was not based on substantial evidence." *Id.*, at 47a.

The District Court then denied Hardt's motion for summary judgment, which contended that Reliance's decision to deny benefits was unreasonable as a matter of law. In so doing, however, the court found "compelling evidence" in the record that "Ms. Hardt [wa]s totally disabled due to her neuropathy." *Id.*, at 48a. Although it was "inclined to rule in Ms. Hardt's favor," the court concluded that "it would be unwise to take this step without first giving Reliance the chance to address the deficiencies in its approach." *Ibid.* In the District Court's view, a remand to Reliance was warranted because "[t]his case presents one of those scenarios where the plan administrator has failed to comply with the ERISA guidelines," meaning "Ms. Hardt did not get the kind of review to which she was entitled under applicable law." *Ibid.* Accordingly, the court instructed "Reliance to act on Ms. Hardt's application by adequately considering all the evidence" within 30 days; "[o]therwise," it warned, "judgment will be issued in favor of Ms. Hardt." *Id.*, at 49a.

Reliance did as instructed. After conducting that review, Reliance found Hardt eligible for long-term disability benefits and paid her $55,250 in accrued, past-due benefits.

Hardt then moved for attorney's fees and costs under § 1132(g)(1). The District Court assessed her motion under the three-step framework that governed fee requests in ERISA cases under Circuit precedent. At step one of that framework, a district court asks whether the fee claimant is a "`prevailing party.'" *Id.*, at 15a-16a (quoting *Martin v. Blue Cross & Blue Shield of Virginia, Inc.*, 115 F.3d 1201, 1210 (C.A.4 1997), and citing *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). If the fee claimant



qualifies as a prevailing party, the court proceeds to step two and "determin[es] whether an award of attorneys' fees is appropriate" by examining "five factors."[1]

[130 S.Ct. 2155]

App. to Pet. for Cert. 16a. Finally, if those five factors suggest that a fees award is appropriate, the court "must review the attorneys' fees and costs requested and limit them to a reasonable amount." *Id.*, at 17a (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

Applying that framework, the District Court granted Hardt's motion. It first concluded that Hardt was a prevailing party because the court's remand order "sanctioned a material change in the legal relationship of the parties by ordering [Reliance] to conduct the type of review to which [Hardt] was entitled." *Id.*, at 22a. The court recognized that the order did not "sanctio[n] a certain result on remand," but found that it "quite clearly expressed the consequences to [Reliance] were it to fail to complete its reconsideration in an expeditious manner." *Id.*, at 19a. Accordingly, the remand order "signif[ied] that the court was displeased with the cursory review that [Reliance] had initially given to [Hardt's] claim, but was inclined to reserve judgment and permit [Reliance] to conduct a proper review of all of the medical evidence." *Ibid.* The court next concluded that a fees award was appropriate under the five-factor test, see *id.*, at 22a-25a, and awarded $39,149 in fees and costs, *id.*, at 25a-30a.

Reliance appealed the fees award, and the Court of Appeals vacated the District Court's order. According to the Court of Appeals, Hardt failed to satisfy the step-one inquiry—*i.e.,* she failed to establish that she was a "prevailing party." In reaching that conclusion, the Court of Appeals relied on this Court's decision in *Buckhannon,* under which a fee claimant qualifies as a "prevailing party" only if he has obtained an "`enforceable judgmen[t] on the merits'" or a "`court-ordered consent decre[e].'" 336 Fed.Appx. 332, 335 (C.A.4 2009) *(per curiam)* (quoting 532 U.S., at 604, 121 S.Ct. 1835). The Court of Appeals reasoned that because the remand order "did not require Reliance to award benefits to Hardt," it did "not constitute an `enforceable judgment on the merits' as *Buckhannon* requires," thus precluding Hardt from establishing prevailing party status. 336 Fed.Appx., at 336 (brackets omitted).

Hardt filed a petition for a writ of certiorari seeking review of two aspects of the Court of Appeals' judgment. First, did the Court of Appeals correctly conclude that § 1132(g)(1) permits courts to award attorney's fees only to a "prevailing party"?[2] Second, did the Court of Appeals correctly

[130 S.Ct. 2156]

identify the circumstances under which a fee claimant is entitled to attorney's fees under § 1132(g)(1)? We granted certiorari. 558 U.S. ___, 130 S.Ct. 1133, ___ L.Ed.2d ___ (2010).

II

Whether § 1132(g)(1) limits the availability of attorney's fees to a "prevailing party" is a question of statutory construction. As in all such cases, we begin by analyzing the statutory language, "assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Financial Services, Inc.,* 557 U.S. ___, ___, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009) (internal quotation marks omitted). We must enforce plain and unambiguous statutory language according to its terms. *Carcieri v. Salazar,* 555 U.S. ___, ___, 129 S.Ct. 1058, 1063-1064, 172 L.Ed.2d 791 (2009); *Jimenez v. Quarterman,* 555 U.S. ___, ___, 129 S.Ct. 681, 684-685, 172 L.Ed.2d 475 (2009).



Section 1132(g)(1) provides:

> "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

The words "prevailing party" do not appear in this provision. Nor does anything else in § 1132(g)(1)'s text purport to limit the availability of attorney's fees to a "prevailing party." Instead, § 1132(g)(1) expressly grants district courts "discretion" to award attorney's fees "to *either* party." (Emphasis added.)

That language contrasts sharply with § 1132(g)(2), which governs the availability of attorney's fees in ERISA actions under § 1145 (actions to recover delinquent employer contributions to a multiemployer plan). In such cases, only plaintiffs who obtain "a judgment in favor of the plan" may seek attorney's fees. § 1132(g)(2)(D). The contrast between these two paragraphs makes clear that Congress knows how to impose express limits on the availability of attorney's fees in ERISA cases. Because Congress failed to include in § 1132(g)(1) an express "prevailing party" limit on the availability of attorney's fees, the Court of Appeals' decision adding that term of art to a fee-shifting statute from which it is conspicuously absent more closely resembles "invent[ing] a statute rather than interpret[ing] one." *Pasquantino v. United States,* 544 U.S. 349, 359, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005) (internal quotation marks omitted).

We see no reason to dwell any longer on this question, particularly given Reliance's concessions. See Brief for Respondent 9-10 ("On its face," § 1132(g)(1) "does not expressly demand, like so many statutes, that a claimant be a `prevailing party' before receiving attorney's fees"). We therefore hold that a fee claimant need not be a "prevailing party" to be eligible for an attorney's fees award under § 1132(g)(1).

III

We next consider the circumstances under which a court may award attorney's fees pursuant to § 1132(g)(1). "Our basic point of reference" when considering the award of attorney's fees is the

[130 S.Ct. 2157]

bedrock principle known as the "`American Rule'": Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise. *Ruckelshaus,* 463 U.S., at 683, 103 S.Ct. 3274; see *id.,* at 683-686, 103 S.Ct. 3274; *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Buckhannon, supra,* at 602-603, 121 S.Ct. 1835; see also *Perdue v. Kenny A.,* 559 U.S. ____, ____, 130 S.Ct. 1662, 1671, ____ L.Ed.2d ____ (2010). Statutory changes to this rule take various forms. Most fee-shifting provisions permit a court to award attorney's fees only to a "prevailing party."[3] Others permit a "substantially prevailing" party[4] or a "successful" litigant[5] to obtain fees. Still others authorize district courts to award attorney's fees where "appropriate,"[6] or simply vest district courts with "discretion" to award fees.[7]

Of those statutory deviations from the American Rule, we have most often considered statutes containing an express "prevailing party" requirement. See, *e.g., Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792-793, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *Farrar v. Hobby,* 506 U.S. 103, 109-114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Buckhannon, supra,* at 602-606, 121 S.Ct. 1835; *Sole v. Wyner,* 551 U.S. 74, 82-86, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007). Our "prevailing party" precedents, however, do



not govern the availability of fees awards under § 1132(g)(1), because this provision does not limit the availability of attorney's fees to the "prevailing party." *Supra,* at 2156; see also *Gross, supra,* at ___, 129 S.Ct., at 2349 (cautioning courts "conducting statutory interpretation ... `not to apply rules applicable under one statute to a different statute without careful and critical examination'" (quoting *Federal Express Corp. v. Holowecki,* 552 U.S. 389, 393, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008))).

Instead, we interpret § 1132(g)(1) in light of our precedents addressing statutory deviations from the American Rule that do not limit attorney's fees awards to the "prevailing party." In that line of precedents, *Ruckelshaus* is the principal case. There, the Court interpreted § 307(f) of the Clean Air Act, which authorizes a court to award fees "whenever it determines that such an award is appropriate." 42 U.S.C. § 7607(f). We began by noting that because nothing in § 307(f)'s text "clear[ly] show[ed]" that Congress meant to abandon the American Rule, 463 U.S., at 685, 103 S.Ct. 3274, fee claimants must have achieved some litigating success to be eligible for a fees award under that section, *id.,* at 686, 103 S.Ct. 3274. We then concluded that by using the less stringent "whenever ... appropriate" standard instead of the traditional "prevailing party" standard, Congress had "expand[ed] the class of parties eligible for fees awards from prevailing parties to *partially prevailing* parties—parties achieving *some success,* even if not major success." *Id.,*

[130 S.Ct. 2158]

at 688, 103 S.Ct. 3274. We thus held "that, absent some degree of success on the merits by the claimant, it is not `appropriate' for a federal court to award attorney's fees under § 307(f)." *Id.,* at 694, 103 S.Ct. 3274.

Applying the interpretive approach we employed in *Ruckelshaus* to § 1132(g)(1), we first look to "the language of the section," *id.,* at 682, 103 S.Ct. 3274, which unambiguously allows a court to award attorney's fees "in its discretion ... to either party," § 1132(g)(1). Statutes vesting judges with such broad discretion are well known in the law, particularly in the attorney's fees context. See, *e.g.,* n. 7, *supra;* see also *Perdue,* 559 U.S., at ___, 130 S.Ct., at 1676.

Equally well known, however, is the fact that a "judge's discretion is not unlimited." *Ibid.* Consistent with Circuit precedent, the District Court applied five factors to guide its discretion in deciding whether to award attorney's fees under § 1132(g)(1). See *supra,* at 2154, and n. 1. Because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section.

Instead, *Ruckelshaus* lays down the proper markers to guide a court in exercising the discretion that § 1132(g)(1) grants. As in the statute at issue in *Ruckelshaus,* Congress failed to indicate clearly in § 1132(g)(1) that it "meant to abandon historic fee-shifting principles and intuitive notions of fairness." 463 U.S., at 686, 103 S.Ct. 3274. Accordingly, a fees claimant must show "some degree of success on the merits" before a court may award attorney's fees under § 1132(g)(1), *id.,* at 694, 103 S.Ct. 3274. A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was `substantial' or occurred on a `central issue.'" *Id.,* at 688, n. 9, 103 S.Ct. 3274.[8]

Reliance essentially agrees that this standard should govern fee requests under § 1132(g)(1), see Brief for Respondent 13-31, but argues that Hardt has not satisfied it.



Specifically, Reliance contends that a court order remanding an ERISA claim for further consideration can never constitute "some success on the merits," even if such a remand results in an award of benefits. See *id.,* at 34-50.

Reliance's argument misses the point, given the facts of this case. Hardt persuaded the District Court to find that "the plan administrator has failed to comply with the ERISA guidelines" and "that Ms. Hardt did not get the kind of review to which she was entitled under applicable law." App. to Pet. for Cert. 48a; see 29 U.S.C. § 1133(2), 29 CFR § 2560.503-1(h) (2009). Although Hardt failed to win summary judgment on her benefits claim, the District Court nevertheless found "compelling evidence that Ms. Hardt is totally disabled due to her neuropathy," and stated that it was "inclined to rule in Ms. Hardt's favor" on her benefits claim, but declined to do so before "first giving Reliance the chance to address the deficiencies in its" statutorily mandated "full and fair review" of that claim. App. to Pet. for

[130 S.Ct. 2159]

Cert. 48a; 29 U.S.C. § 1133(2). Hardt thus obtained a judicial order instructing Reliance "to act on Ms. Hardt's application by adequately considering all the evidence" within 30 days; "[o]therwise, judgment will be issued in favor of Ms. Hardt." App. to Pet. for Cert. 49a. After Reliance conducted that court-ordered review, and consistent with the District Court's appraisal, Reliance reversed its decision and awarded Hardt the benefits she sought. App. 120a-123a.

These facts establish that Hardt has achieved far more than "trivial success on the merits" or a "purely procedural victory." Accordingly, she has achieved "some success on the merits," and the District Court properly exercised its discretion to award Hardt attorney's fees in this case. Because these conclusions resolve this case, we need not decide today whether a remand order, without more, constitutes "some success on the merits" sufficient to make a party eligible for attorney's fees under § 1132(g)(1).[9]

* * *

We reverse the judgment of the Court of Appeals for the Fourth Circuit and remand this case for proceedings consistent with this opinion.

*It is so ordered.*

Justice STEVENS, concurring in part and concurring in the judgment.

While I join the Court's judgment and Parts I and II of its opinion, I do not believe that our mistaken interpretation of § 307(f) of the Clean Air Act in *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), should be given any special weight in the interpretation of this—or any other—different statutory provision. The outcome in that closely divided case turned, to a significant extent, on a judgment about how to read the legislative history of the provision in question. Compare *id.,* at 686-693, 103 S.Ct. 3274, with *id.,* at 703-706, 103 S.Ct. 3274 (STEVENS, J., dissenting). I agree with the Court in this case that 29 U.S.C. § 1132(g)(1) does not impose a "prevailing party" requirement; I agree, further, that the District Court acted well within its discretion in awarding attorney's fees to this petitioner. But I would examine the text, structure, and history of any other federal statute authorizing an award of fees before concluding that Congress intended the same approach under that statute as under this one.

--------

Notes:

[1] These factors are: "`(1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award



of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.'" App. to Pet. for Cert. 16a (quoting *Quesinberry v. Life Ins. Co. of North Am.*, 987 F.2d 1017, 1029 (C.A.4 1993)).

2 The Courts of Appeals are divided on this issue. Some (a few only tentatively) agree with the Court of Appeals' conclusion here that only prevailing parties are entitled to fees under § 1132(g)(1). See, *e.g., Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (C.A.1 1996) ("Congress declared that, in any ERISA claim advanced by a `participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee' *to the prevailing party*" (emphasis added)); *Tate v. Long Term Disability Plan for Salaried Employees of Champion Int'l Corp. #506*, 545 F.3d 555, 564 (C.A.7 2008) ("In analyzing whether attorney's fees should be awarded to a `prevailing party' in an ERISA case, a court should consider whether the losing party's position was justified an taken in good faith. However, we have held that a claimant who is awarded a remand in an ERISA case generally is not a prevailing party in the truest sense of the term" (some internal quotation marks and citation omitted)); *Graham v. Hartford Life and Accident Ins. Co.*, 501 F.3d 1153, 1162 (C.A.10 2007) ("We also afford certain weight to prevailing party status, even though we acknowledge that the ERISA attorney's fees provision is not expressly directed at prevailing parties"). Other Courts of Appeals have rejected or disavowed that position. See, *e.g., Miller v. United Welfare Fund*, 72 F.3d 1066, 1074 (C.A.2 1995); *Gibbs v. Gibbs*, 210 F.3d 491, 503 (C.A.5 2000); *Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (C.A.11 1993).

3 See, *e.g., Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 601-603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (citing examples); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684, n. 3, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (same).

4 See *ibid.*, n. 4 (citing examples).

5 See, *e.g.*, 18 U.S.C. § 2707(c); *Ruckelshaus, supra*, at 684, n. 5, 103 S.Ct. 3274 (citing examples).

6 See *Ruckelshaus, supra*, at 682, n. 1, 103 S.Ct. 3274 (citing examples).

7 See, *e.g.*, 15 U.S.C. §§ 77k(e), 77www(a), 78i(e), 78r(a), 7706(g)(4); 20 U.S.C. § 1415(i)(3)(B)(i); 42 U.S.C. § 2000aa-6(f).

8 We do not foreclose the possibility that once a claimant has satisfied this requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors adopted by the Court of Appeals, see n. 1, *supra*, in deciding whether to award attorney's fees.

9 Reliance has not preserved any separate objection to the reasonableness of the amount of fees awarded. See *Perdue v. Kenny A.*, 559 U.S. ____, ____, 130 S.Ct. 1662, 1676, 1672-1673, ____ L.Ed.2d ____ (2010).

--------



IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Geico General Insurance Company OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of Aug, 2021.

Gwen Wilks / By Kayla Labove
CLERK

CIRCUIT CLERK FORREST COUNTY

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Geico General Insurance Company OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**

THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of Aug, 2021.

Gwen Wilks by Kayla Labove

CLERK

CIRCUIT CLERK FORREST COUNTY

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

Cause No. 21-424

v.

Amber Whiddon, Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Amber R. Whiddon, 11 Richburg Village Circle, Hattiesburg, MS 39402 OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of August, 2021.

Gwen Wilks by Kayla LaBove
CLERK

CIRCUIT CLERK FORREST COUNTY, MS

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

Cause No. 21-424

v.

Amber Whiddon, Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Amber R. Whiddon, 11 Richburg Village Circle, Hattiesburg, MS 39402 OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of August, 2021.

Gwen Wilks by Kayla LaBove

CIRCUIT CLERK
CLERK
FORREST COUNTY, MS

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Government Employees Insurance Company OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of Aug, 2021.

Gwen Wilks by Kayla Lebove
CLERK

CIRCUIT CLERK FORREST COUNTY, MS

IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI

Credit Acceptance Corporation

Plaintiff(s)

vs. Civil Action No. CO19-174

Defendant(s)

Jason Harden

SUBPOENA DUCES TECUM

State of Mississippi
County of Forrest

TO ANY LAWFUL OFFICER OR OTHER
PERSON AUTHORIZED TO SERVE SUBPOENAS:

WE COMMAND YOU TO SUMMON: The Executive Director for Mississippi Department of Employment Security at 1235 Echelon Pkwy., Jackson, Mississippi, pursuant to Rule 69 of the Mississippi Rules of Civil Procedure, to produce the following documents at the office of Pat Henley, P. O. Box 389, 1910 Lakeland Drive, Jackson, MS 39205-0389 within 30 days of receipt of this subpoena:

Produce the employment information for at least the last four quarters available on the Defendant, Jason Harden, whose SSI No. is XXX-XX-9460.

HEREIN YOU SHALL NOT FAIL under penalty in such case made and provided; and have there and then this writ.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 24 day of August, 2021.

Ms. Gwen Wilks
Circuit Clerk of Forrest County
P.O. Box 992
Hattiesburg, MS 39403-0992

BY: Kayla LaBove D.C.

CIRCUIT CLERK FORREST COUNTY MS

Pat Henley, Attorney for Plaintiff
Henley, Lotterhos & Henley, PLLC
P. O. Box 389
Jackson, MS 39205-0389
601/948-5131

(HLH File Number: 1701518)

In The County Court of Forrest County

Atorria Finley PLAINTIFF

v. Cause No. 18CO1:21-cv-00424

Geico Insurance Company, et. al. DEFENDANT

MOTION TO AMEND THE COMPLAINT

The Plaintiff files this and states as follows:

1. The original complaint was filed on June 23, 2021.

2. The Defendants filed their respective Answers and Defenses on August 16, 2021, and August 24, 2021.

3. The Plaintiff request permission to amend the Complaint to add additional count regarding a cell phone.

4. As the Complaint was just filed, there will be no harm and/or prejudice to any Defendant.

5. A copy of the proposed Amended Complaint is attached as an exhibit to this Motion. (Exhibit 1, Copy of Proposed Amended Complaint).

6. The Comment to Rule 15 of the Mississippi Rules of Civil Procedure states, "amended pleadings have been liberally permitted throughout Mississippi legal history." Specifically, the comment states, in pertinent part, "In practice, an amendment should be denied only if the amendment would cause actual prejudice to the opposite party." *Id.* Here, there is no prejudice to any party.

7. Moreover, our Supreme Court has "previously relied upon this Comment in making determinations of whether amendment should have been allowed." *Moeller v. American Guarantee and Liability Ins. Co.*, 812 So. 2d 953, 963 (Miss. 2002) (other cites omitted)).

8. In *Moeller*, the Court held, "In the present case it is difficult to ascertain the actual

prejudice that American Guarantee would have suffered had Fuselier been allowed to amend their complaint to include a request for prejudgment interest." *Id.* As a result, the Court reversed the trial court's judgment denying the amendment. Neither special chancellor participating in this case presented any insightful reason as to why the motions to amend were denied. This lack of explanation or showing of actual prejudice to American Guarantee, combined with M.R.C.P. 15(a) and the case law relying upon Rule 15(a)'s language stating that leave to amend 'shall be freely given when justice so requires,' leaves this Court with little choice but to find an abuse of discretion on the part of both special chancellors. The motion to amend should have been granted." *Id.*

9.  As a result, the Plaintiff and counsel submits that they have shown good cause for the filing of this Motion and asks the Court to grant the Motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs move the Court to grant the Motion to Amend the Complaint.

Respectfully submitted,

s:\Jay Foster

Certificate of Service

I certify that I have filed this with MEC which sent a copy of the above to all counsel of record.

So certified, September 10, 2021.

s/Jay Foster

JAY FOSTER, No. 9830
1019 Legion Lane
Ocean Springs, Mississippi 39564
Tele: (228) 872-6000
Fax: (228) 875-6687
Email: Jay@JayFosterLaw.com

In The County Court of Forrest County

Atorria Finley PLAINTIFF

v. Cause No. 18CO1:21-cv-00424

Geico Insurance Company, et. al. DEFENDANT

ORDER ALLOWING AMENDED COMPLAINT

This matter came on for hearing on the Motion of the Plaintiff to amend the complaint and the Court finds that the motion is well-taken. The Court further finds the Plaintiff showed good cause for this Motion and that no harm and/or prejudice will result to any defendant. Therefore, the Court grants the Motion to Amend the Complaint.

ORDERED AND ADJUDGED, this the _____ day of __________________, 20_____.

_______________________________
JUDGE

PREPARED BY:
JAY FOSTER
LAW OFFICE OF JAY FOSTER
1019 LEGION LANE
OCEAN SPRINGS, MISSISSIPPI 39564
TELE: (228) 872-6000
FAX: (228) 875-6687

**812 So.2d 953**

**Armin J. MOELLER, Jr. and Fuselier, Ott & McKee, P.A., Louis Fuselier, Emile C. Ott and Curtiss McKee, Individually**
**v.**
**AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY.**
**Fuselier, Ott & McKee, P.A.; Louis Fuselier, Emile C. Ott, and M. Curtiss McKee, Individually**
**v.**
**American Guarantee and Liability Insurance Company.**

**Nos. 92-CA-00829-SCT, 2000-CA-01678-SCT.**

**Supreme Court of Mississippi.**

**April 4, 2002.**

[812 So.2d 956]

Dennis L. Horn, Madison, attorney for appellants.

Forrest W. Stringfellow, Jackson, William Charles Williams, attorneys for appellee.

EN BANC.

PITTMAN, C.J., for the Court.

¶ 1. This appeal concerns whether the trial court followed the mandate of this Court on remand, whether the motions to amend to include claims for prejudgment interest were properly denied, and whether punitive damages should be awarded in this case.

***FACTS AND PROCEEDINGS BELOW***

¶ 2. The origin of this appeal dates back to 1982 when Armin J. Moeller, Jr. ("Moeller") sued the law firm of Fuselier, Ott and McKee, P.A. and its members individually ("Fuselier") for terminating his employment. *Fuselier, Ott and McKee, P.A. v. Moeller*, 507 So.2d 63 (Miss.1987). At trial, the chancellor rendered a judgment in favor of Moeller, which was eventually reduced by this Court on appeal. *Id.*

¶ 3. While *Moeller* was on appeal, American Guarantee and Liability Insurance Company ("American Guarantee"), a professional liability insurer, brought an action against its insured, Fuselier, seeking a declaratory judgment on, inter alia, its duty to pay attorney's fees and expenses. Fuselier counterclaimed seeking attorney fees and expenses along with making various assertions for damages. The chancellor determined that American Guarantee was not obligated to pay for Fuselier's defense and that it had fulfilled its contractual duty. Also during the trial, Fuselier made an ore tenus motion to amend the complaint to include a request for prejudgment interest. This motion was denied.

¶ 4. On appeal this Court reversed the chancellor regarding American Guarantee's duty to pay Fuselier's attorneys' fees and remanded for a determination of reasonable attorney's fees incurred in defense of Moeller's complaint. *Moeller v. American Guarantee & Liab. Ins. Co.*, 707 So.2d 1062 (Miss.1996). In its opinion, this Court stated Fuselier's appeal focused on "the special chancellor's refusal to award attorney's fees for defending the complaint of Moeller and pre-judgment interest." *Id.* at 1068. The Court reasoned that because Fuselier was "being defended under the defamation claim with a reservation of rights, American Guarantee was obligated to let them select their own attorney at American Guarantee's cost to represent them." *Id.* at 1071. This Court concluded:

> American Guarantee, having chosen to defend all claims, was obligated to permit Fuselier, Ott, and McKee to select its own counsel for those claims outside the coverage of the policy. It follows that American Guarantee is liable for the reasonable legal expenses Fuselier, Ott and McKee incurred in the defense of the complaint, and the special chancellor's holding that



> American Guarantee was not liable for such expenses is reversed.

*Id.*

¶ 5. After remand, Fuselier filed a motion for enforcement of mandate in which they claimed they were entitled to: $95,244.26 for attorney's fees and expenses; an award of pre-judgment interest of 8% of the principal compounded monthly until June 30, 1989, totaling $51,433.24

[812 So.2d 957]

(in accordance with § 75-17-7 Miss.Code Ann. of 1972); and an award of prejudgment interest from July 1, 1989 until the present[1] with interest due and owing calculated up to the date of judgment (in accordance with § 75-17-7 Miss.Code Ann. of 1972 (Supp.1989)). The motion also contained a request that punitive damages be levied against American Guarantee for its refusal to pay the principal amount of the claim and a request for payment for attorney's fees and expenses in litigating the action on remand, including prejudgment interest.

¶ 6. American Guarantee filed its response to the motion on September 24, 1998, denying each count and asserted that Fuselier was not entitled to prejudgment interest because the amount due was unliquidated. American Guarantee also contended that Fuselier had not requested prejudgment interest until the commencement of trial in chancery court, where a motion for prejudgment interest was denied, thereby not entitling Fuselier to such an award. Alternatively, American Guarantee advanced that any amount due Fuselier were expenses that, if not paid, would not warrant the imposition of punitive damages. Finally, American Guarantee charged that the imposition of punitive damages would constitute an imposition of excessive fines violating both the federal and state constitutions.

¶ 7. A hearing was conducted May 3, 1999, before a special chancellor regarding Fuselier's motion for enforcement of mandate on remand and their motion for leave to amend their counterclaim so as to include the issues of punitive damages, prejudgment interest and attorney's fees and expenses due to the alleged bad faith by American Guarantee. The special chancellor determined the only issue to be resolved was the amount that the insurance company was obligated to pay to the firm for their reasonable expenses in defending the suit, and that the other issues presented, including the motion to amend to include prejudgment interest, failed as a matter of law.

¶ 8. The trial on this case occurred July 24, 2000. On August 15, 2000, the special chancellor issued his letter memorandum opinion containing findings of fact and conclusions of law. The special chancellor determined that the sole issue for determination under the mandate was the issue regarding reasonable legal expenses incurred by Fuselier to be reimbursed by American Guarantee. The special chancellor concluded that American Guarantee was liable for the costs of the original claim, as well as the counterclaim because of their involvement in such, resulting in a reimbursement by American Guarantee of the full $95,244.26. In a final judgment filed September 11, 2000, the special chancellor ordered American Guarantee to pay the above sum with post judgment interest at the rate of 8% compounded until paid, along with expenses for the cost of the remand action.

¶ 9. Fuselier filed a motion for a new trial, amendment to judgment and relief from judgment order on September 20, 2000. That motion was denied by the special chancellor on October 5, 2000. This appeal was filed October 10, 2000.

***ANALYSIS***

**I. DID THE MANDATE OF THIS COURT REVERSE AND REMAND FOR ATTORNEY'S FEES AND PREJUDGMENT INTEREST**

**[812 So.2d 958]**

**OR ONLY FOR ATTORNEY'S FEES?**



¶ 10. In reversing the chancellor regarding American Guarantee's duty to pay Fuselier's attorneys' fees and remanding for a determination of reasonable attorney's fees incurred in defense of Moeller's complaint, this Court announced that the appeal dealt with "the special chancellor's refusal to award attorney's fees for defending the complaint of Moeller and pre-judgment interest." *Moeller,* 707 So.2d at 1068. At the conclusion of the analysis of this issue, this Court stated: "It follows that American Guarantee is liable for the reasonable legal expenses Fuselier, Ott and McKee incurred in the defense of the complaint, and the special chancellor's holding that American Guarantee was not liable for such expenses is reversed." *Id.* at 1071. While the mandate at the end of the opinion did not specifically articulate that American Guarantee was liable for prejudgment interest, it is clear from the reference to prejudgment interest earlier in the opinion that it was included in this Court's reasoning in reversing the special chancellor's ruling.

**II. IS FUSELIER ENTITLED TO PREJUDGMENT INTEREST?**

**A. PREJUDGMENT INTEREST**

¶ 11. Fuselier claims to be entitled to an award of prejudgment interest because of this Court's decision in *Moeller v. American Guarantee and Liability Insurance,* 707 So.2d 1062, 1068 (Miss.1996). This Court has stated the following regarding the award of prejudgment interest:

> Mississippi recognizes judicial authority to award prejudgment interest to a prevailing party in a breach of contract suit. Prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or when the denial of a claim is frivolous or in bad faith. No award of prejudgment interest is allowed where the principal amount has not been fixed prior to judgment. Prejudgment interest is not imposed as a penalty for wrong doing; it is allowed as compensation for the detention of money overdue. For prejudgment interest to be awarded, the party must make a proper demand for the interest in the pleadings, including the date that it was allegedly due.
>
> [T]o be entitled to prejudgment interest, they must meet several requirements. First, the claim for damages must be liquidated or the denial of the claim ... must have been frivolous or in bad faith. Second, the pleadings must reflect a request for prejudgment interest.

*Preferred Risk Mut. Ins. Co. v. Johnson,* 730 So.2d 574, 577 (Miss.1998) (citations omitted). "An award of prejudgment interest is reviewed for abuse of discretion." *Theobald v. Nosser,* 784 So.2d 142, 145 (Miss.2001)(citing *Aetna Cas. & Sur. Co. v. Doleac Elec. Co.,* 471 So.2d 325, 331 (Miss. 1985)).

**B. IF PREJUDGMENT INTEREST IS DUE, WHAT INTEREST RATE SHOULD APPLY?**

¶ 12. American Guarantee claims that Fuselier's cause of action accrued prior to the enactment of Miss.Code Ann. § 75-17-7 (Supp.1989) and that Fuselier is not entitled to prejudgment interest. American Guarantee contends that the cause of action giving rise to American Guarantee's duty to pay for Fuselier's independent counsel arose in 1982 when American Guarantee chose to defend Fuselier under a reservation of rights.

¶ 13. Fuselier agrees that legal fees began to accrue in 1982. Fuselier does not respond to this assertion by American Guarantee in its reply brief, although they

[812 So.2d 959]



do assert in their original brief that they are due an award of prejudgment interest of 8% of the principal compounded monthly until June 30, 1989, in the amount of $51,433.24 (in accordance with § 75-17-7); and an award of prejudgment interest from July 1, 1989, until the present with interest due and owing calculated up to the date of judgment (in accordance with § 75-17-7 (2000)).

¶ 14. At the time this action accrued in 1982 § 75-17-7 appeared as enacted by the Mississippi Legislature in 1975:

> All judgments and decrees founded on any contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments and decrees shall bear interest at the rate of eight percentum (8%) per annum.
>
> This act shall apply only to judgments and decrees rendered on or after the effective date of this act. Judgments or decrees rendered prior to the effective date of this act shall continue to bear interest at the same rate as was applicable at the time the judgment or decree was rendered.

1975 Miss. Laws, ch. 336, § 1.

¶ 15. This statute was amended in 1989 to state:

> All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.

Miss.Code Ann. § 75-17-7 (2000). At the time of the adoption of this amendment the Mississippi Legislature stated, "[t]he provisions of this act shall apply only to causes of action accruing on or after July 1, 1989." 1989 Miss. Laws, ch. 311, § 7.

¶ 16. Because this action accrued in 1982, any prejudgment interest awarded would be at an interest rate of "eight percentum (8%) per annum" as was set out in § 75-17-7 and § 75-17-1(1) at the time this action arose.

**C. ARE THE AMOUNTS THAT FUSELIER CLAIMS ARE DUE LIQUIDATED OR UNLIQUIDATED?**

¶ 17. Fuselier, in their motion for enforcement of mandate filed September 15, 1998, claimed that they were entitled to $95,244.26 for attorney's fees and expenses and prejudgment interest. American Guarantee, in its response filed September 24, 1998, denied each count and asserted that Fuselier was not entitled to prejudgment interest because the amount due was unliquidated. A special chancellor concluded that American Guarantee was liable for the costs of the original claim and the counterclaim resulting in a reimbursement by American Guarantee of the full $95,244.26. The special chancellor also ordered American Guarantee to pay postjudgment interest at a rate of 8%, compounded until paid, as well as the cost of the remand action. What remains to be determined is if the remaining fees and expenses Fuselier claims they are due are amounts that have been liquidated, and thereby eligible for prejudgment interest, or if it was even necessary for these amounts to be liquidated for recovery to occur since "liquidation" may have occurred when this Court rendered its decision in the previous case.

¶ 18. Damages being "liquidated" refers to damages that are set or determined by a contract when a breach occurs. Black's Law Dictionary 395 (7th ed.1999). "Unliquidated" damages are



[812 So.2d 960]

"[d]amages that have been established by a verdict or award but cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury." *Id.* at 397.

¶ 19. Fuselier claims that the attorney's fees and expenses damages were liquidated. Fuselier relies on a stipulation made by American Guarantee's attorney where it was agreed that the attorney's fees paid to Charles Brocato and the C.P.A. firm were fair, reasonable and necessary, and the only issue presented was as to what percentage of the legal fees should be attributed to American Guarantee's required defense and what amount was used for the counterclaims filed by the law firm. This distinction proved unnecessary as Brocato testified that the allegations of the counterclaims "were directed toward the welfare of both the firm and insurance company" and that any recovery "... could have reduced what American Guarantee had to pay." Fuselier contends that since Brocato's fee was stipulated as being reasonable then whatever amount the court recognized that the law firm paid would be deemed as liquidated prior to judgment. Fuselier also asserts that the amounts paid to Haddox, Reed, Burkes and Calhoun PLLC, Certified Public Accountants, were also stipulated as being fair and reasonable and were thereby liquidated amounts as well. Additionally, Fuselier argues that American Guarantee's refusal to pay the legal expenses on remand of this action constitutes "bad faith," which, if true, would independently justify an award of prejudgment interest.

¶ 20. American Guarantee asserts that Brocato's fees generated in relation to Fuselier's defense and counterclaim were unliquidated until final judgment was entered following remand of *Moeller* and restates its contention that this Court's mandate dealt only with the payment of attorney's fees and not prejudgment interest.

¶ 21. This Court has stated "[a]s to whether a claim is liquidated, interest has been denied where `there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor.'" *Simpson v. State Farm Fire & Cas. Co.*, 564 So.2d 1374, 1380 (Miss.1990) (quoting *Grace v. Lititz Mut. Ins. Co.*, 257 So.2d 217, 225 (Miss.1972)). In the present case, prior litigation established that there was no bona fide dispute as to American Guarantee's responsibility to pay the attorney's fees incurred by Fuselier.

¶ 22. The mandate of this Court in the prior litigation falls under the law of the case doctrine. This doctrine has been explained as follows:

> The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.

*Simpson,* 564 So.2d at 1376 (citing *Mississippi College v. May,* 241 Miss. 359, 366, 128 So.2d 557, 558 (1961)). This doctrine dictates that a mandate issued by this Court "is binding on the trial court on remand, unless the case comes under one of the exceptions to the law of the case doctrine." *Simpson,* 564 So.2d at 1377. Exceptions such as "material changes in evidence, pleadings or findings" as outlined in *Continental Turpentine & Rosin Co. v. Gulf Naval Stores Co.,* 244 Miss. 465, 480,

[812 So.2d 961]

142 So.2d 200, 207 (1962), or the need for the Court to "depart from its former decision" "after mature consideration" so that "unjust results" will not occur as described in *Brewer v. Browning,*



115 Miss. 358, 364, 76 So. 267, 269 (1917), do not exist in the present case.

¶ 23. The law of the case doctrine dictates that the attorney's fees were a liquidated amount eligible to be considered in making a prejudgment interest calculation.

### III. DID THE TRIAL COURT ERR IN DENYING FUSELIER'S MOTION TO AMEND THE COMPLAINT?

¶ 24. Fuselier twice attempted to amend their complaint to include a request for prejudgment interest, once during the trial, when they made an ore tenus motion to amend to include prejudgment interest and once during the motion to enforce the mandate. Each of these motions were denied by the special chancellor with little or no explanation.

¶ 25. Fuselier contends that they should have been granted leave to amend their complaint to seek prejudgment interest. American Guarantee counters, asserting that the issue of whether Fuselier should have been allowed to amend their original complaint is not supported by the mandate of this Court in *Moeller* and reiterates its stance that this Court's mandate dealt with the single issue of attorney's fees and nothing more.

¶ 26. This Court has outlined the standard of review for motions for leave to amend a complaint:

> Motions for leave to amend complaint are left to the sound discretion of trial court; the Supreme Court reviews such determinations under an abuse of discretion standard; and, unless convinced that trial judge abused discretion, the Supreme Court is without authority to reverse. *Church v. Massey*, 697 So.2d 407, 413 (Miss.1997). Grant or denial of motion for leave to amend is within sound discretion of trial court. *MBF Corp. v. Century Bus. Communications, Inc.*, 663 So.2d 595, 600 (Miss.1995); *Frank v. Dore*, 635 So.2d 1369, 1375 (Miss.1994). Amendments to the pleadings are properly addressed to the discretion of the lower court. *Red Enters., Inc. v. Peashooter, Inc.*, 455 So.2d 793, 796 (Miss.1984); *McDonald v. Holmes*, 595 So.2d 434, 436 (Miss.1992). Where the plaintiff filed his motion for amendment of declaration setting out its exact terms, and such terms were incorporated into an order which quoted text of motion and which was filed in cause and entered upon minutes of court, amendment was sufficient, as against defendant's contention that original declaration should have been manually amended by interlineation or otherwise. *International Order v. Barnes*, 204 Miss. 333, 341, 37 So.2d 487 (1948), overruled on other grounds by *Mississippi Baptist Hosp. v. Holmes*, 214 Miss. 906, 55 So.2d 142 (1951). While the trial court has discretion to allow an amendment and should do so freely under the proper circumstances, an amendment should not occur when to do so would prejudice defendant. *Hester v. Bandy*, 627 So.2d 833, 839 (Miss. 1993).

*Preferred Risk Mut. Ins. Co. v. Johnson*, 730 So.2d at 579.

¶ 27. Rule 15(a) of the Mississippi Rules of Civil Procedure governs leave to amend. It states:

> A party may amend his pleading as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar,



[812 So.2d 962]

> he may so amend it at any time within thirty days after it is served. On sustaining a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), or for judgment on the pleadings, pursuant to Rule 12(c), thirty days leave to amend shall be granted, provided matters outside the pleadings are not presented at the hearing on the motion. Otherwise a party may amend his pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within ten days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

M.R.C.P. 15(a) (emphasis added).

¶ 28. This Court has commented on the language "leave shall be freely given when justice so requires" found in M.R.C.P. 15(a):

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded... if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.-the leave sought should, as the rules require, be "freely given."

*Estes v. Starnes*, 732 So.2d 251, 252 (Miss.1999)(quoting *Frank*, 635 So.2d at 1375, and *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

¶ 29. The Comment to Rule 15 states that "amended pleadings have been liberally permitted throughout Mississippi legal history." M.R.C.P. 15 Comment. "In practice, an amendment should be denied only if the amendment would cause actual prejudice to the opposite party." Id. This Court has previously relied upon this Comment in making determinations of whether amendment should have been allowed. See *Beverly v. Powers*, 666 So.2d 806, 809 (Miss.1995); *Rector v. Mississippi State Highway Comm'n*, 623 So.2d 975, 978 (Miss.1993).

¶ 30. In the present case it is difficult to ascertain the actual prejudice that American Guarantee would have suffered had Fuselier been allowed to amend their complaint to include a request for prejudgment interest. Neither special chancellor participating in this case presented any insightful reason as to why the motions to amend were denied. This lack of explanation or showing of actual prejudice to American Guarantee, combined with M.R.C.P. 15(a) and the case law relying upon Rule 15(a)'s language stating that leave to amend "shall be freely given when justice so requires," leaves this Court with little choice but to find an abuse of discretion on the part of both special chancellors. The motion to amend should have been granted.

### IV. IS FUSELIER ENTITLED TO PUNITIVE DAMAGES, PREJUDGMENT INTEREST AND ATTORNEY'S FEES PAID IN LITIGATING THE INSTANT APPEAL?

¶ 31. Fuselier contends that American Guarantee should have to pay punitive damages, attorney's fees, prejudgment interest and



litigation expenses up through the present appeal because of its

[812 So.2d 963]

bad faith refusal to pay and failure "to undertake a prompt investigation of the insured's payment of fees in this case." Fuselier cites *Universal Life Ins. Co. v. Veasley,* 610 So.2d 290 (Miss.1992); *Preferred Risk Mut. Ins. Co. v. Johnson,* 730 So.2d 574 (Miss.1998) and *State Farm Mut. Auto. Ins. Co. v. Grimes,* 722 So.2d 637 (Miss.1998), as cases where punitive damages were allowed for an insurance company's refusal to pay expenses after they had been ordered to on remand, and where the refusal to pay was unsupported.

¶ 32. While Fuselier has cited cases, they have failed to provide any meaningful analysis to support their assertion that they are due punitive damages, prejudgment interest and attorney's fees for the cost of remand. *Veasley* and *Grimes* are both cases where the insurance company initially failed to pay insurance claims and have little resemblance to the present action. While *Preferred Risk Mut. Ins. Co. v. Johnson* is a case that is pertinent to the present case, it sheds no light on this particular issue. None of the cases presented by Fuselier has any relevance or applicability to the issue of whether punitive damages, prejudgment interest or attorney's fees should be awarded in connection to this action on appeal.

¶ 33. This issue is without merit.

***CONCLUSION***

¶ 34. Based on the forgoing analysis, this Court finds the following: The mandate of this Court in *Moeller v. American Guarantee & Liab. Ins. Co.,* 707 So.2d 1062 (Miss.1996), was that American Guarantee was liable to Fuselier for legal expenses, including attorneys fees *and* prejudgment interest. The prejudgment interest due in this case should be paid at a rate of "eight percentum (8%) per annum" as was set out in Miss.Code Ann. § 75-17-7 and Miss.Code Ann. § 75-17-1(1) at the time this action arose in 1982. The law of the case doctrine dictates that the attorney's fees due Fuselier were a liquidated amount eligible to be considered in making a prejudgment interest calculation. It was an abuse of discretion for the special chancellors that participated in this case to deny Fuselier's motion to amend their complaint to include prejudgment interest. Finally, Fuselier is not entitled to punitive damages, prejudgment interest or attorney's fees associated with this action on appeal.

¶ 35. Therefore, the judgment below is reversed to the extent that it denied Fuselier an award of prejudgment interest on their cost of defense judgment against American Guarantee, and this case is remanded to the trial court to calculate and award prejudgment interest at the annual rate of eight percentum (8%). In all other respects, the judgment below is affirmed.

¶ 36. AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. SMITH, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND EASLEY, JJ.

McRAE, P.J., concurring in part and dissenting in part.

¶ 37. I agree with the majority that prejudgment interest and attorney's fees should be assessed in this case. However, especially since the majority holds that Fuselier's motions to amend the complaint should have been granted, this case should be remanded to the trail court and allow the amendment so that it may hold a hearing concerning additional damages and possibly punitive damages in line with *Valley*

[812 So.2d 964]



*Forge Ins. Co. v. Strickland,* 620 So.2d 535 (Miss.1993). For these reasons, I concur in part and dissent in part.

¶ 38. When an insured has incurred considerable expenses to enforce what this Court has mandated, the insured should be allowed, under *Valley Forge,* to seek additional damages to make it whole. In *Valley Forge* we affirmed an award of attorney's fees and expenses, interest and punitive damages to the insured based in part on the insurer's "gross negligence in filing and maintaining a groundless lawsuit, to the detriment of the [insured]." *Id.* at 540. Fuselier has endured a protracted and arduous legal journey, namely 20 years of trials and appeals which American Guarantee caused, and has incurred numerous additional expenses to enforce what this Court mandated American Guarantee to do in 1996. American Guarantee's violation of this Court's mandate permits the trial court to consider additional damages, prejudgment interest incurred and possibly punitive damages for the enforcement of the mandate.

¶ 39. While I agree that this case should be remanded to the trial court, I disagree with the limited scope of the remand ordered by the majority. As the majority stated, the trial court should have allowed Fuselier to amend the complaint. The trial court should now be required to hear testimony on the additional expenses incurred and interest due as well as possibly punitive damages.

¶ 40. Accordingly, I concur in part and dissent in part.

SMITH, P.J., concurring in part and dissenting in part.

¶ 41. The Litigation Accountability Act of 1988, Miss.Code Ann. §§ 11-55-1 to -15 (Supp.2001) provides that the court upon its own motion or the motion of a party may award attorney's fees and costs against a party if it

> finds that an attorney or party brought an action, or asserted any claim or defense, that is *without substantial justification,* or that the action, or any claim or defense asserted, was *interposed for delay or harassment,* or if it finds that an attorney or party *unnecessarily expanded the proceedings by other improper conduct* including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.

*Id.* § 11-55-5(1)(emphasis added). "`Without substantial justification', when used with reference to any action, claim, defense or appeal, including without limitation any motion, means that it is frivolous, groundless in fact or in law, or vexatious, as determined by the court." *Id.* § 11-55-3(a). A case will generally not be labeled frivolous due merely to a finding that it is "weak" or "light-headed." *Mississippi Dep't of Human Servs. v. Shelby,* 802 So.2d 89, 97 (Miss.2001). In the present case, however, it is my view that American Guarantee acted to delay the proceedings, particularly if its course of conduct is taken into account. While this Court's mandate did not expressly state that prejudgment interest was to be imposed, this Court clearly holds that it was and that such a decision was set forth in the earlier opinion. While *American Guarantee*'s conduct does not rise to the level of permitting punitive damages, its actions appear to fall under the Litigation Accountability Act. This Court has previously found that "[i]n cases involving insurance contracts, we have found that extra-contractual damages such as attorney fees may be warranted even where the facts are not such to support a punitive damages claim." *Garner v. Hickman,* 733 So.2d 191, 198 (Miss.1999) (citing *Universal Life Ins. Co. v. Veasley,* 610 So.2d 290, 295 (Miss.1992)). *Hickman,* however, did not involve an insurance

[812 So.2d 965]

contract, but rather dealt with a construction contract. In the present case, there is no contract at all, however, our prior cases stand for the proposition that the Litigation Accountability Act



may apply across the board even when punitive damages are not available.

¶ 42. The Litigation Accountability Act provides a list of factors that a court should consider, among others, when determining whether costs and attorney's fees should be awarded. These factors are:

> (a) The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed;
>
> (b) The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid;
>
> (c) The availability of facts to assist in determining the validity of an action, claim or defense;
>
> (d) Whether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose;
>
> (e) Whether or not issues of fact, determinative of the validity of a party's claim or defense, were reasonably in conflict;
>
> (f) The extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy;
>
> (g) The extent to which any action, claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in the state, which purpose was made known to the court at the time of filing;
>
> (h) The amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court;
>
> (i) The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action;
>
> (j) The extent of any effort made after the commencement of an action to reduce the number of parties in the action; and
>
> (k) The period of time available to the attorney for the party asserting any defense before such defense was interposed.

Miss.Code Ann. § 11-55-7. This Court is really not in the position to examine these factors, and thus it would be appropriate to remand for consideration of these factors. In my view American Guarantee is without substantial justification for its actions and accordingly is subject to attorney's fees and costs. Thus, while I concur with the bulk of the majority's opinion, I respectfully dissent in part as I would remand the issue of attorney's fees and costs for consideration under the Litigation Accountability Act.

DIAZ AND EASLEY, JJ., JOIN THIS OPINION.

--------

Notes:

1. According to Fuselier's motion for enforcement of mandate on remand this amount



Moeller v. American Guar. & Liab. Ins. Co., 812 So.2d 953 (Miss. 2002)

totaled $514,037.88 as of July 1998. In their appellant brief Fuselier contends that this amount is $958,936.32 as of July 24, 2000.

---------

fastcase

**IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI**

ATTORIA FINLEY, PLAINTIFF

vs. Case No.: 18co1:21-cv-00424

AMBER WHIDDON, GEICO GENERAL INSURANCE COMPANY, DEFENDANTS

**NOTICE OF NO OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

COMES NOW Geico, by and through undersigned counsel, and files this its Notice of No Opposition to Plaintiff's Motion to Amend the Complaint.

Respectfully submitted,

*/s/ Steven P. Savarese, Jr.*
STEVEN P. SAVARESE, JR. (MS#103171)
*Attorney for Defendant, Amber Whiddon*

OF COUNSEL:
Holtsford Gilliland Higgins
Hitson & Howard, P.C.
Merritt Building II
6483 Van Buren Street
Daphne, AL 36526
ssavarese@hglawpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 10th day of September, 2021, electronically filed the foregoing, using the MEC system, which will send notification of the filing to the following:

Jay Foster
1019 Legion Lane
Ocean Springs, Mississippi 39564
*Attorney for Plaintiff*

*/s/ Steven P. Savarese, Jr.*
OF COUNSEL

**IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI**

ATTORIA FINLEY, PLAINTIFF

vs. Case No.: 18co1:21-cv-00424

AMBER WHIDDON, GEICO GENERAL INSURANCE COMPANY, DEFENDANTS

**AMENDED NOTICE OF NO OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

COMES NOW Defendant Amber Whiddon, by and through undersigned counsel, and corrects the previously filed Notice. Undersigned inadvertently referenced the incorrect client in the body of the Notice. Undersigned represents Defendant Whiddon and advises the Court and all parties that Defendant Whiddon has no opposition to Plaintiff's Motion to Amend. Undersigned apologizes for any confusion this may have caused.

Respectfully submitted,

*/s/ Steven P. Savarese, Jr.*
STEVEN P. SAVARESE, JR. (MS#103171)
*Attorney for Defendant, Amber Whiddon*

OF COUNSEL:
Holtsford Gilliland Higgins
Hitson & Howard, P.C.
Merritt Building II
6483 Van Buren Street
Daphne, AL 36526
ssavarese@hglawpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 10th day of September, 2021, electronically filed the foregoing, using the MEC system, which will send notification of the filing to the following:

Jay Foster
1019 Legion Lane
Ocean Springs, Mississippi 39564
*Attorney for Plaintiff*

*/s/ Steven P. Savarese, Jr.*
OF COUNSEL

IN THE COUNTY COURT OF FORREST COUNTY, MISSISSIPPI

ATORRIA FINLEY PLAINTIFF

VS. CAUSE NO. 18CO1:21-CV-00424

AMBER R. WHIDDON, JOHN DOE INS. CO. #1, JOHN DOE INS. CO. #2 AND GEICO INSURANCE COMPANY DEFENDANTS

**DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO THE PLAINTIFF'S NOTICES OF INTENT TO OFFER MEDICAL RECORDS**

COMES NOW, the Defendant, Government Employees Insurance Company (hereinafter "GEICO") (incorrectly identified as "GEICO Insurance Company in the Plaintiff's Complaint), by and through its attorneys of record, and hereby files this its Response in Opposition to the Plaintiff's Notices of Intent to Offer Medical Records, and would show the following unto this Court, to-wit:

1.

This cause arises out of an automobile accident which occurred in Lamar County, Mississippi, on May 1, 2019. [2]. The Plaintiff filed her Complaint in June, 2021 and asserts solely negligence claims. [2]. The Defendant answered the Plaintiff's Complaint on August 24, 2021. [13].

2.

Defendant Government Employees Insurance Company has no objection as to authenticity regarding the records sought to be offered in the Plaintiff's Notices of Intent [17, 18], these records being from chiropractor Leslie Ethridge and Gulf States Diagnostic Imaging, LLC. However, this Defendant reserves the right to object to the admissibility of the aforementioned records on the grounds they are hearsay and do not meet any hearsay exception. *Gilbert v. Ireland*, 758 So. 2d 1050, 1052 (Miss. Ct. App. 2000). Defendant Government Employees Insurance Company

reserves the right to raise further objections to the records at the time they are sought to be admitted into evidence.

WHEREFORE, PREMISES CONSIDERED, the Defendant, Government Employees Insurance Company, respectfully requests that its Response to the Plaintiff's Notices of Intent to Offer Medical Records Pursuant to Miss. R. Evid. 902 (17, 18) and the objections included therein be received, and for any other relief to which it is entitled in the premises.

RESPECTFULLY SUBMITTED, this the 14th day of September, 2021.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT**

BY: S\ *Edward C. Taylor*
OF COUNSEL

**CERTIFICATE OF SERVICE**

I, the undersigned, of counsel for the Defendant, Government Employees Insurance Company, do hereby certify I have this day filed a true and correct copy of the above and foregoing *Defendant Government Employees Insurance Company's Response in Opposition to the Plaintiff's Notices of Intent to Offer Medical Records* with the Clerk of Court using the MEC system, which sent notification of such filing to the following:

Jay Foster, Esq.
Jay Foster, PLLC
1010 Legion Lane
Ocean Springs, MS 39564
*receptionist@jayfosterlaw.com*

This, the 14th day of September, 2021.

S\ *Edward C. Taylor*
OF COUNSEL

EDWARD C. TAYLOR – MS BAR #9043
*etaylor@danielcoker.com*
DANIEL COKER HORTON & BELL, PA
1712 15TH STREET, SUITE 400
POST OFFICE BOX 416
GULFPORT, MS 39502-0416
TELEPHONE: (228) 864-8117
FACSIMILE: (228) 864-6331

RETURN - PROOF OF SERVICE SUMMONS, COMPLAINT, & DISCOVERY

Atorria Finley v. Amber Whiddon, Geico, et. al.
Cause No. 21-424

Kim Powell
process server

I, the Undersigned process server, served the ***Rule 4 Summons and Amended Complaint*** upon the person or entity named above in the manner set forth below :

(XX ) I personally delivered copies of the ***Rule 4 Summons and Amended Complaint*** on the 10th day of September, 2021, to; **Amber Whiddon,** located at [list address]:, 11 Richburg Village Circle, Hattiesburg, MS 39402

At the time of service I was at least 18 years of age and not a party to this action.

Fee for service: $
Name: Kim Powell/PrivatEYez, LLC

Address: 400 Vestavia Parkway Suite 271 Vestavia, AL 35216

Telephone No.: 205-951-1034

Atorria Finley v. Amber Whiddon, Geico, et. al.
Cause No. 21-424

State of Mississippi
County of Jackson

Personally appeared before me the undersigned authority in and for the state and county aforesaid, the within named Kim Powell who being first by me duly sworn states on oath that the matters and facts set for in the foregoing RETURN - PROOF OF SERVICE SUMMONS, AND AMENDED COMPLAINT, upon the person or entity named above in the manner are true and correct as therein stated. Again, ***I served the Rule 4 Summons and Amended Complaint as stated in the foregoing Return***.

Kim Powell
Process Server

Sworn to and subscribed before me on this the 15 day of Sept, 2021.

Notary Public

(Seal) My commission Expires:

July 13, 2022

STATE OF MISSISSIPPI NOTARY PUBLIC ID # 109508 ECHO RHODES Commission Expires July 13, 2022 JACKSON COUNTY

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

Cause No. 21-424

v.

Amber Whiddon, Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Amber R. Whiddon, 11 Richburg Village Circle, Hattiesburg, MS 39402 OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of August, 2021.

Gwen Wilks by Kayla LaBove
CLERK

CIRCUIT CLERK FORREST COUNTY, MS

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CT Corporation System
289 S. Culver Street
Lawrenceville GA 30046
Re: Forbes Amended Complaint

9590 9402 6343 0296 7898 41

2. Article Number *(Transfer from service label)*

7020 2450 0000 5101 0711

PS Form 3811, July 2020 PSN 7530-02-000-9053

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X CT Corporation
☐ Agent
☐ Addressee

B. Received by (Printed Name)
CT CORPORATION

C. Date of Delivery
SEP 7 2021

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt





USPS TRACKING #
301
13 L
9590 9402 6343 0296 7898 41
United States
Postal Service
First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10
• Sender: Please print your name, address, and ZIP+4® in this box•
Mr. Jay Foster
1019 Legion Ln.
Ocean Springs, MS 39564

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Geico Insurance Company, et. al. DEFENDANT

## SUMMONS

THE STATE OF MISSISSIPPI

TO: Geico Casualty Insurance Company OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of Aug, 2021.

Gwen Wilks by Kayla LaBove
CLERK

CIRCUIT FORREST COUNTY, MS

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Geico General Insurance Company OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of Aug, 2021.

Gwen Wilks by Kayla LaBore
CLERK

CIRCUIT FORREST COUNTY, MS


IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Geico Indemnity Insurance Company OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of Aug, 2021.

Gwen Wilks by Kayla LaBree

CLERK

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Geico Insurance Company, et. al. DEFENDANT

SUMMONS

THE STATE OF MISSISSIPPI

TO: Geico Insurance Company, One Geico Center, Macon, GA 31296-0001 OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of August, 2021.

Gwen Wilks by Kayla LaBove
CLERK

CIRCUIT CLERK FORREST COUNTY

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. Cause No. 21-424

Geico Insurance Company, et. al. DEFENDANT

# SUMMONS

THE STATE OF MISSISSIPPI

TO: Government Employees Insurance Company OR WHERE EVER FOUND

**NOTICE TO DEFENDANT**
THE AMENDED COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Amended Complaint to Jay Foster, the attorney for the plaintiffs, whose address is 1019 Legion Lane, Ocean Springs, Mississippi, 39564. Your response must be mailed or delivered within thirty days from the date of delivery of this Summons and Amended Complaint or a judgment by default will be entered against you for the money or other things demanded in the Amended Complaint. You must file the original of your response with the Clerk of this Court within a reasonable time afterward. Notice is hereby given of service of the Plaintiff(s) request for production of documents, interrogatories, request for admissions and responses must be mailed or delivered within forty-five days from the date of delivery of this summons and discovery.

Issued under my hand and the seal of said Court, this 24 day of Aug, 2021.

Gwen Wilks by Kayla LaBove
CLERK

CIRCUIT CLERK FORREST COUNTY, MS

IN THE County COURT OF Forrest COUNTY, MISSISSIPPI

Atorria Finley PLAINTIFF

v. CAUSE NO. 18CO1:21-cv-00424

Amber R. Whiddon, et. al. DEFENDANT

Plaintiff's Designation of Experts

The plaintiff, Atorria Finley, files this expert designation and states as follows:

Rule 26(b)(4)(A)(i) states, "a party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

Per this Rule, Atorria Finley is required to "**identify each person**" the plaintiff may call as an expert witness so the name, address, and phone number of every expert is in this designation. In addition, the medical records of every expert showing their names, addresses, and phone numbers is attached to this designation and incorporated herein. Thus, Atorria Finley has complied with identifying each person the plaintiff may call as an expert witness. The medical records and the reports of all experts are incorporated herein by reference.

In addition, this Rule requires the plaintiff to **"state the subject matter on which the expert is expected to testify and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."** This expert designation states specifically every diagnosis given by every medical provider that treated Atorria Finley. This expert designation also states all treatment given by every medical provider that treated Atorria Finley. This expert designation also states that every medical provider treated Atorria Finley because of this car wreck. Next, this expert designation states the summary of the grounds for each opinion. In addition, all of the medical records showing the subject matter on which the expert is expected to testify, the substance of the facts and opinions and a summary of the grounds for each opinion, are attached to this designation and incorporated herein.

In addition, because of this car wreck, the plaintiff was diagnosed by Dr. Kevin Ethridge and Dr. Lawrence Bourgeois, with sprain of ligaments of cervical, thoracic,

lumbar spine, headache, dizziness, strain of muscle, fascia, and tendon of neck, back and neck pain, temoral nerve injury, muscle spasms, cervicalgia, rediculopaathy of cervical and lumbar region, cervicocranial syndrome. The doctor's opinion is based upon the doctor's experience as a chiropractor and the doctor's observation and treatment of Atorria Finley. The doctor's other opinions are contained in the medical records which are incorporated herein by reference. The doctor may testify to future pain and suffering, past pain and suffering, the need for future medical care, and the costs of the future medical care. More information is provided below.

In addition, because of this car wreck, the doctors and nurses at Wesley Medical Center diagnosed the following injuries: right wrist pain, right hand pain, muscle spasms. Their opinions are based upon their experiences as doctors and nurses and their observation and treatment of the plaintiff. More information is provided below.

In addition, because of this car wreck, the doctors and nurses at   diagnosed the following injuries: right wrist, right shoulder, head and back, and medication prescribed. More information is provided below.

The doctors are a treating physician/chiropractor for Atorria Finley. It is believed that the doctors will testify based on his years of education, training and experience as a physician. Therefore, their role is the examination, diagnosis, and treatment of Atorria Finley and that the cause of the injuries was this wreck. The doctor is expected to testify regarding one or more of the following: diagnosis of the patient's conditions, recommended or provide appropriate treatments, and monitor the patient's progress. The Doctor may also, as appropriate, counsel patients on the management of patients condition, as well as on dietary habits, genetic and familial risks and other aspects of a patient 's life relevant to preventing disease, maintaining health, or managing disease or injury. The Doctor may testify regarding consulting physicians who have treated or seen Atorria Finley who have been asked for recommendations for diagnosis and treatment or a second opinion, based on his or her more specialized knowledge and experience. The Doctor may rely, in whole or in part, on information developed by other medical practitioners contained in the patient 's medical records, such as medical history, laboratory tests, and x-rays. The doctor will testify based on activities as treating or more generally about medical and scientific knowledge and its application to the issues in a case. The doctor will also be applying medical expertise to a greater or lesser degree in assessing the significance of the patient's signs and symptoms and medical history, making a diagnosis, opining on proper treatment and prognosis, and the like. This may include occupational medicine, as it applies to Atorria Finley. The doctor will testify about the physical condition of Atorria Finley, diagnosis, treatment, causes of Atorria Finley's condition, and/or prognosis. The following is information utilized by the doctor in arriving at a diagnosis, determining a course of treatment, and exploring causation: the patient history (information derived directly from the patient), patient records, physical examination, comparison to other

patients and normal diagnostic tests, and diagnostic tests. The doctor is further expected to testify consistent with the records which show that Atorria Finley suffered an injury to the following areas: wrist, arm, neck, and back and the following treatment was rendered: intersegmental spinal traction, electrical muscle stimulation, vibratory massage, pettibon wobble chair exercises, cervical spinal adjustors, cervical traction, vibratory massage, and a tens unit was used. All of the records have been provided to the defendant and all medical records from all providers are incorporated herein by reference. The doctor may also testify as to the type, nature, and extent of the injuries sustained, the cause of those injuries which was this wreck, the treatment and medication prescribed for those injuries, and how those injuries affected Atorria Finley in terms of pain and suffering and disabilities, temporary and/or permanent, suffered as a result of the injuries due to this wreck and will testify about maximum medical improvement. The doctor may also testify as to the type, nature, and extent of the injuries sustained, the cause of those injuries which was the matter as described in the complaint, the treatment and medication prescribed for those injuries, and how those injuries affected Atorria Finley in terms of past, present, and future pain and suffering and disabilities, temporary and/or permanent, suffered as a result of the injuries due to this wreck. It is believed that the doctor will testify based on the doctor's years of education, training and experience. Therefore, the doctor's role is the examination, diagnosis, and treatment of Atorria Finley. The doctor is expected to testify regarding one or more of the following: a spinal model with pictures and/or video showing how the injuries from this affected the plaintiff, xrays showing how the injuries from this wreck affected the plaintiff and/or were cause, the use of the Essentials of Chiropractic Radiology by Dr. Terry Yochum and Dr. Lindsay Rowe and how that shows the injuries sustained by the plaintiff were due to this and/or a demonstrations with xrays and a cd and/or pictures and/or video of xrays showing how the plaintiff sustained injuries because of this, and/or that the plaintiff may develop arthritis and/or be more susceptible to arthritis and/or other medical conditions and/or injuries that have and/or may develop because of the injuries from this and may impair the plaintiff's ability to move around like the plaintiff could before this and perform normal daily activities and the plaintiff may have certain restrictions and the doctor may give an impairment rating. The doctor may use xrays, a mri, books, reports, studies, and other demonstrative exhibits, including, but not limited to: xrays, model of spine, pictures of spine, graphic illustrations of the spine and/or back and/or neck; video of spine, mri, and/or other documents.

All of these medical providers may rely on the following for their opinions: Atlas of Anatomy 2nd(2012) Gilroy, MacPherson, Ross, Schuenke Inkling; Atlas of Human Anatomy, Johannes, Sobotta; Atlas of Human Anatomy, Frank Netter; Atlas of Anatomy, Thieme; Gray’s Basic Anatomy 1st(2012) Drake Pageburst; Gray's Anatomy of the Human Body, Henry Gray; Grant's Method of Anatomy, John Grant; Imaging Atlas of Human Anatomy; Junqueira’s Basic Histology: Text and Atlas; Bates’ Guide to Physical Examination and History Taking; Schwartz’s Principles of

Surgery, Netter's Atlas, Atlas of Human Anatomy, (Netter Basic Science) by Frank H. Netter MD; Assessment and Treatment of Muscle Imbalance:The Janda Approach – Page, Frank, Lardner; Movement: Functional Movement Systems: Screening, Assessment, Corrective Strategies, Cook; Pathology and Intervention in Musculoskeletal Rehabilitation – Magee, Zachazewski, Quillen; Pathology and Intervention in Musculoskeletal Rehabilitation – Magee, Zachazewski, Quillen; Clinical Orthopedic Rehabilitation – Brotzman and Wilk; Sports Medicine (Orthopaedic Surgery Essentials Series) – Schepsis, Busconi; Therapeutic Exercise: Foundations and Techniques – Kisner & Colby; Author: Pagliarulo Title: Intro to Physical Therapy (P); Author: McConnell Title: The Nature of Disease: Pathology for Health Professions; Author: Jewell Title: Guide to Evidence Based Physical Therapist Practice; Author: Knight Title: Therapeutic Modalities: The Art of Science; Physical Examination of the Spine Extremities, Hoppenfield; Essential of Orthopedic Surgery, Springer. All of these medical providers may use pictures, xrays, mris, textbooks, medical literature, human anatomy figures, video, graphic illustrations, spinal anatomy figures, and other demonstrative exhibits in their testimony.

The treating emergency room physicians and nurses, Cora Lott, Carla Holder, Lisaa Gatwood at Wesley Medical Center, 5001 Hardy St, Hattiesburg, MS 39402, 16012963101. The basis for their opinions are their experience and background and education as medical providers and their treatment of the plaintiff. They are expected to testify consistent with their records which show that due to the injuries from this wreck the plaintiff was injured to the following body parts: right wrist, right arm, muscle spasms. The diagnosis was muscle spasms, pain, injuries from this wreck. The medication prescribed was Flexeril, Toradol. The treatment given to the plaintiff was pain medication.

All of these medical providers are expected to testify about the type, nature, and extent of the injuries sustained by the Plaintiff, the cause of these injuries was this wreck, the treatment prescribed for these injuries, and how these injuries affected the Plaintiff in terms of pain, suffering, and/or disabilities, temporary and/or permanent. That the substance of each expert's opinion in this regard should be consistent with those opinions they have expressed in their medical records and reports and as shown above. That the grounds for each expert's opinion will be based primarily upon their formal training and experience as licensed medical providers as well as the facts of the subject wreck and the treatment of the plaintiff, among other things.

Police Officer David Majos with the Hattiesburg Police Department, 300 Klondyke St, Hattiesburg, MS 39401, Phone: 601-544-7900, who is expected to testify consistent with the police report which shows the defendant caused this wreck by driving in violation of the driving laws, including, but not limited to, Section 63-3-805, and 63-3-807. This expert may also testify that the defendant caused this wreck by pulling out and causing this wreck and that his investigation of wrecks shows that inattention and

distraction and texting and driving causes wrecks and is further expected to testify as to the day of the wreck, the time of the wreck, the location of the wreck, his investigation of the wreck including the book or template used to fill out the police report, what he saw at the scene of the wreck, the diagram on the police report, distracted driving, texting and driving, the weather, what lane the drivers in this wreck were in, the direction all of the drivers in this wreck were going. He is expected to rely upon his training, experience, and education in forming and giving his opinions.

If you have an objection to this Designation and/or believe that it is not adequate and/or improper in any manner, you must contact the Plaintiff's attorney within 5 days of receipt so that the Court's assistance can be sought, otherwise, it will be assumed that it is sufficient and/or proper.

Respectfully submitted,

s/Jay Foster

Certificate of Service

I certify that I have electronically filed a true and correct copy of the above and foregoing which sent this to all counsel of record, Steven Savarese, 6483 Van Buren Street, Daphne, AL 36526 and Ed Taylor

So certified, October 1, 2021.

s/Jay Foster

Law Offices of Jay Foster, No. 9830
1019 Legion Lane
Ocean Springs, MS 39564
(228) 872-6000
(228) 875-6687 (fax)
Email: Jay@JayFosterLaw.com